UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

| | |
|---|---|
| APRIL MILLER, KAREN ANN ROBERTS, SHANTEL BURKE, STEPHEN NAPIER, JODY FERNANDEZ, KEVIN HOLLOWAY, L. AARON SKAGGS, and BARRY W. SPARTMAN, <br><br> AND <br><br> ALL OTHERS SIMILARLY SITUATED, <br><br>             Plaintiffs, <br><br> v. <br><br> KIM DAVIS, both individually and in her official capacity as Rowan County Clerk, and ROWAN COUNTY, KENTUCKY, <br><br>             Defendants. | Case No. _____ |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION**

The Named Plaintiffs seek a preliminary injunction barring Kim Davis, in her official capacity, from denying marriage licenses to them as a matter of policy. The challenged policy, as applied, directly and substantially burdens Plaintiffs' fundamental right to marriage under the Fourteenth Amendment and causes irreparable harm because it completely forecloses them from obtaining a valid marriage license in their county of residence.

**STATEMENT OF FACTS**

The eight Named Plaintiffs comprise four loving and committed couples who reside in Rowan County, Kentucky. Plaintiffs wish to obtain a marriage license in their

1

county of residence for the purpose of formalizing, through marriage, their respective commitments to each other. [Compl., ¶¶ 4-11; 16-27; 30.] Two of the Plaintiff couples are same-sex couples whose right to marriage was recently affirmed by the United States Supreme Court in the case of *Obergefell, et al. v. Hodges, et al.*, 576 U.S. __ (2015).. [*Id.* at ¶¶ 16-18; 25-27; 29.] The other Plaintiffs are two different-sex couples whose right to marriage has long been observed. [*Id.* at ¶¶ 15; 19-24.] As a result of their desire to marry, each of the Plaintiff couples contacted the office of the Rowan County Clerk to apply for a marriage license. [*Id.* at ¶¶ 16- 24.]

However, on June 29, 2015 — one business day after the *Obergefell* decision and before the Plaintiffs requested a marriage license — Defendant Davis adopted an official policy of refusing to issue *any* marriage licenses. [*Id.* at ¶ 15.] In an official statement to the media, Defendant Davis claimed that her "deep religious convictions" prevented her from issuing marriage licenses to same-sex couples. [*Id.* at ¶ 15; Compl. Exh. 2.] So, according to Defendant Davis, she adopted the policy of refusing to issue *any* marriage licenses so that she would not have to issue marriage licenses to same-sex couples but not discriminate against them. [*Id.*; Compl. Exh. 1, at 2.] Defendant Davis also stated, "Marriage is ordained by God to be a man and a woman." [*Id.*]

As a direct result of the challenged policy, each of the Plaintiff couples, despite being otherwise eligible to marry, were denied a marriage license by the Rowan County Clerk's office. [*Id.* at ¶¶ 17-18; 20-21; 23-24; 26-27.]

2

**ARGUMENT**

**THIS COURT SHOULD ISSUE A PRELIMINARY INJUNCTION TO PREVENT ABRIDGEMENT OF PLAINTIFFS' FUNDAMENTAL RIGHTS OF MARRIAGE.**

In evaluating requests to issue preliminary injunctive relief under Fed.R.Civ.P. 65(a), "district court[s] must consider: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of an injunction upon the public interest." *Abney v. Amgen, Inc.*, 443 F.3d 540, 546 (6th Cir. 2006) (internal quotations omitted) (quoting *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nasvhille & Davidson Co.*, 274 F.3d 377, 400 (6th Cir. 2001) *cert. denied*, 535 U.S. 1073 (2002)). These considerations "are factors to be balanced, not prerequisites that must be met." *Jones v. City of Monroe, MI*, 341 F.3d 474, 476 (6th Cir. 2003) (citing *In re Delorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985)).

Here, Plaintiffs satisfy all of the criteria for the issuance of a preliminary injunction: 1) they can establish a substantial likelihood of success on the merits; 2) an injunction is necessary to prevent immediate, ongoing and irreparable harm; 3) the issuance of an injunction will not harm the Defendant or others; and 4) the public interest strongly favors issuance of an injunction in this case because "it is always in the public interest to prevent the violation of a party's constitutional rights." *G&V Lounge, Inc. v. Michigan Liquor Control Com'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) (citing *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368 (1979)); *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1400 (6th Cir. 1987)).

A. **PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR FOURTEENTH AMENDMENT CLAIMS.**

In their Complaint, Plaintiffs assert as-applied claims alleging an immediate and ongoing violation of their right to marry. [Compl., ¶¶ 32-33; 43; 46.] "It is well established that the right to marry is a fundamental right protected by the Due Process Clause of the Fourteenth Amendment. *Wright v. MetroHealth Medical Center*, 58 F.3d 1130, 1134 (6th Cir. 1995) (citations omitted). And the Supreme Court "has long held the right to marry is protected by the Constitution." *Obergefell*, 572 U.S. at *11. For the reasons that follow, Plaintiffs have a substantial likelihood of prevailing on the merits of their as-applied claims under the Fourteenth Amendment either because the challenged policy is a direct and substantial burden on their fundamental right that is unsupported by a sufficiently important governmental interest, or because it is not rationally related to any legitimate governmental interest.

In examining whether (or not) a challenged government action violates an individual's substantive Due Process, the first step is to determine whether the right at issue is a "fundamental" right, *i.e.*, one that is either "deeply rooted in this Nation's history and tradition, or implicit in the concept of ordered liberty such that neither liberty nor justice would exist if they were sacrificed." *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007) (internal quotations and citations omitted). As noted above, there can be no reasonable dispute that the right asserted in this case — Plaintiffs' right to marry — is a "fundamental" right under the Fourteenth Amendment. *Obergfell, et al. v. Hodges, et al.*, 576 U.S. __ (2015). "The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness." *Loving*, 388 U.S. at 12;

*Meyer v. Nebraska*, 262 U.S. 390, 399 (1923); *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 541 (1942).

Because the policy of refusing to issue marriage licenses implicates Plaintiffs' fundamental right to marry, the next analytical step is to determine whether the burden it places on that right is "direct and substantial." *Montgomery*, 101 F.3d at 1124. If so, then it is constitutionally valid *only* if it is supported by "sufficiently important state interests and is closely tailored to effectuate only those interests." *Id*. (quoting *Zablocki*, 434 U.S. at 388). If it is not a direct and substantial burden, then it is subject to mere rational basis review because "not every state action which relates in any way to the incidents of or the prerequisites for marriage must be subjected to rigorous scrutiny." *Wright*, 58 F.3d at 1134.

Here, the challenged policy is a "direct and substantial interference" with the right to marry because it completely bars Plaintiffs (and all those who are similarly situated) from obtaining a marriage license in Rowan County. As the Sixth Circuit has held, a government-imposed burden upon the right to marry will be "direct and substantial" where "*a large portion of those affected by the rule are absolutely or largely prevented from marrying*, or where those affected by the rule are absolutely or largely prevented from marrying a large portion of the otherwise eligible population of spouses." *Vaughn v. Lawrenceburg Power System*, 269 F.3d 703, 710 (6th Cir. 2001) (emphasis added). And there can be no genuine dispute that the in-person requirement, as-applied, satisfies this standard because a valid marriage license is a prerequisite for marriage in Kentucky. KRS 402.080.

5

Defendant, however, will likely argue that the policy does not rise to the level of a direct and substantial burden because Plaintiffs may obtain marriage licenses so long as they are willing to travel to another Kentucky county to do so. While it is true that Plaintiffs may obtain marriage licenses outside Rowan County, that fact does not undermine the conclusion that the challenged policy is nonetheless a direct and substantial burden upon their right to marry. Traveling to a county other than one's county of residence is not a legal prerequisite for obtaining a marriage license in Kentucky, but it is for those who, like Plaintiffs, live in Rowan County unless the challenged policy is enjoined.[1]

Here, because the challenged policy, as-applied, "absolutely" prevents Plaintiffs from obtaining a valid marriage license in their county of residence, it constitutes a direct and substantial interference with their fundamental right to marry. Thus, it is subject to heightened scrutiny, *i.e.*, it must be "supported by sufficiently important state interests and [be] closely tailored to effectuate only those interests." *Montgomery*, 101 F.3d at 1124 (internal quotations and citation omitted). For the reasons outlined below, the challenged policy satisfies neither prong of this analysis.

No state interests are served by the policy at issue here, legitimate, compelling, or otherwise. It is contrary to the direct admonition of the Governor to comply with the *Obergefell* decision, and it also denies marriage licenses to different-sex couples. The only identifiable interests articulated by Defendant Davis are that the policy serves her personal religious views, in that the policy enables her to avoid issuing marriage licenses

---

[1] This argument also permits the absurd conclusion that as long as one out of Kentucky's one hundred twenty counties issues marriage licenses, the other one hundred nineteen can freely deny them.

to same-sex couples. But not only is that purported rationale constitutionally inadequate to justify the policy, it also blatantly and unapologetically disregards the rights of others. Moreover, even if there was some conceivable state interest served by the policy of refusing to issue marriage licenses to otherwise qualified applicants (which there is not), a policy that bars *all* individuals from obtaining a marriage license, such as the one here, cannot be considered closely tailored to achieve any such interest.

Further, Plaintiffs maintain that heightened scrutiny is appropriate in this case. *See Montgomery*, 101 F.3d at 1124 (direct and substantial interference with fundamental right to marry valid *only* if supported by "sufficiently important state interests and is closely tailored to effectuate only those interests.") (internal quotations and citation omitted). However, even if the policy is not subject to heightened scrutiny because it is not a direct and substantial interference with the right to marry, it nonetheless fails rational basis review because it is "an unreasonable means of achieving any legitimate governmental interest." *Wright*, 58 F.3d at 1136 (internal quotations and citation omitted). Specifically, the policy, as-applied, completely denies Plaintiffs the right to obtain a marriage license despite the fact that they are otherwise eligible to marry. Because Plaintiffs cannot, under any circumstances short of an injunction, obtain a valid marriage license in their county of residence, the policy has the effect of barring them from marrying. Only by securing a marriage license elsewhere may Plaintiffs marry. When viewed properly, this policy is at least as defective as the prison marriage regulation that failed rational basis review in *Turner v. Safley*, 482 U.S. 78 (1987).

In *Turner*, the Supreme Court considered the validity of a prison regulation that barred inmates from marrying absent prior approval from the prison superintendent who

granted such approval only for "compelling reasons." 482 U.S. at 82. The Court first concluded that prison regulations that burdened inmates' constitutional rights, including the right to marry, need only satisfy rational basis review, *i.e.*, be reasonably related to legitimate penological interests. *Id*. at 89. But even under that deferential standard, the Court nonetheless concluded that the prison marriage regulation violated inmates' right to marry because it represented "an exaggerated response" to the prison's legitimate security concerns. *Id*. a 97-98. As in *Turner*, the governmental regulation here imposes a dramatic, irrational, and unreasonable, restriction on the right of those seeking to marry.

In sum, the challenged policy barring any individual from obtaining a marriage license from the Rowan County Clerk constitutes a direct and substantial interference upon Plaintiffs' fundamental right to marry that is neither supported by a sufficiently important state interest nor is closely tailored to effectuate any such interest. Moreover, the policy is an unreasonable restriction unrelated to any legitimate state interests in the issuance of marriage licenses. Thus, there is a substantial likelihood that Plaintiffs will prevail on the merits of their Fourteenth Amendment claims seeking prospective injunctive relief.

**B.  AN INJUNCTION IS NECESSARY TO SAVE THE PLAINTIFFS FROM IRREPARABLE HARM.**

As explained more fully above, the policy deprives Plaintiffs of their fundamental rights under the Fourteenth Amendment.  Both the Supreme Court and the Sixth Circuit have held that the violation of protected freedoms constitute an irreparable injury sufficient to justify the grant of a preliminary injunction. *Connection Distributing*, 154 F.3d at 288 (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes

8

irreparably injury")); *Overstreet v. Lexington-Fayette Urban County Government,* 305 F.3d 566, 578 (6th Cir. 2002). Simply put, the violation of an individual's constitutional rights alone is sufficient to establish irreparable harm.

Moreover, the harm in this case is not merely speculative. The challenged policy is a blanket ban on the issuance of marriage licenses foreclosing Plaintiffs from obtaining a marriage license in Rowan County, their county of residence. Plaintiffs have already sought marriage licenses and were denied. Thus, failure to grant Plaintiffs the preliminary injunctive relief they seek will cause further irreparable harm, in that they will continue to be denied their fundamental right to marry.

**C. AN INJUNCTION WILL DO NO HARM AND WILL SERVE THE PUBLIC INTEREST.**

In contrast to the Plaintiffs' immediate and irreparable injury, neither Davis nor the public would suffer any injury from the issuance of a preliminary injunction. In fact, there are no governmental interests being served by Defendant's continued enforcement of the policy. Issuance of the injunction would actually serve the public interest because "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge*, 23 F.3d at 1079; *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995) (public "as a whole" has interest in protecting constitutional liberties).

**CONCLUSION**

Plaintiffs' request for preliminary injunctive relief should be granted because there is a substantial likelihood that they will prevail on the merits of their claims. The policy at issue: 1) constitutes a direct and substantial interference with their fundamental rights of marriage that is not closely tailored to promote a sufficiently important state

9

interest; and 2) is an unreasonable restriction on the right to marry that is not rationally related to any legitimate government interest. Thus, Plaintiffs' Motion for a Preliminary Injunction should be granted.

        Respectfully submitted,

        s/ William E. Sharp
        William E. Sharp
        Legal Director
        ACLU OF KENTUCKY
        315 Guthrie Street, Suite 300
        Louisville, KY 40202
        (502) 581-9746
        sharp@aclu-ky.org

        - and -

        Dan Canon
        Laura E. Landenwich
        Joe Dunman
        Clay Daniel Walton & Adams PLC
        462 South Fourth Street
        Suite 101
        Louisville, KY 40202
        (502) 561-2005
        dan@justiceky.com
        laura@justiceky.com
        joe@justiceky.com
        ACLU OF KENTUCKY Cooperating Attorneys

        *Counsel for Plaintiffs; on behalf of themselves and all others similarly situated*

## CERTIFICATE OF SERVICE

I certify that I sent this motion and accompanying memorandum via Certified Mail, postage prepaid, along with the Complaint and Summons to the following:

Kim Davis, Rowan County Clerk
600 West Main Street Room 102
Morehead, KY 40351

Walter Blevins, Rowan County Judge Exec.
600 West Main Street
Morehead, KY 40351

s/ William E. Sharp
*Counsel for Plaintiffs*