# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
### ASHLAND DIVISION

| | | |
|---|---|---|
| **APRIL MILLER, ET AL.,** | : | |
| | : | |
| **Plaintiffs,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **0:15-CV-00044-DLB** |
| | : | |
| **KIM DAVIS, ET AL.,** | : | **DISTRICT JUDGE** |
| | : | **DAVID L. BUNNING** |
| **Defendants.** | : | |
| | : | |

| | | |
|---|---|---|
| **KIM DAVIS,** | : | |
| | : | |
| **Third-Party Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **STEVEN L. BESHEAR, in his official** | : | |
| **capacity as Governor of Kentucky, and** | : | |
| **WAYNE ONKST, in his official capacity as** | : | |
| **State Librarian and Commissioner,** | : | |
| **Kentucky Department for Libraries and** | : | |
| **Archives,** | : | |
| | : | |
| **Third-Party Defendants.** | : | |
| | : | |

## VERIFIED THIRD-PARTY COMPLAINT OF DEFENDANT KIM DAVIS

Defendant and Third-Party Plaintiff, KIM DAVIS ("Davis"), for her third-party complaint pursuant to Rule 14, Fed. R. Civ. P., sues Third-Party Defendant STEVEN L. BESHEAR, in his official capacity as Governor of Kentucky ("Governor Beshear"), and Third-Party Defendant WAYNE ONKST, in his official capacity as State Librarian and Commissioner, Kentucky Department for Libraries and Archives ("Commissioner Onkst"), and alleges:

## INTRODUCTION

1.      The Commonwealth of Kentucky, acting through Governor Beshear, has deprived Davis of her religious conscience rights guaranteed by the United States and Kentucky Constitutions and laws, by insisting that Davis issue marriage licenses to same-sex couples contrary to her conscience, based on her sincerely held religious beliefs. Because of Governor Beshear's open declaration that Davis has no such rights, Governor Beshear has exposed Davis to the Plaintiffs' underlying lawsuit, in which the Plaintiffs claim a constitutional right to a Kentucky marriage license issued specifically by Davis. Governor Beshear is not only liable to Davis for Plaintiffs' claims, but is also obligated to effect Kentucky marriage licensing policies that uphold Davis's rights of religious conscience.

## JURISDICTION AND VENUE

2.      This action arises under Article VI and the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, Sections 1, 3, 5, and 8 of the Constitution of Kentucky, and the Kentucky Religious Freedom Restoration Act, Ky. Rev. Stat. §§ 446.350 (the Kentucky "RFRA").

3.      This Court has subject matter jurisdiction over Davis's federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has subject matter jurisdiction over Davis's state law claims pursuant 28 U.S.C. § 1367.

4.      This Court has jurisdiction to render declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

## PARTIES

5.      Davis is the County Clerk for Rowan County, Kentucky. She was elected to the office of County Clerk in November 2014, and officially took office January 1, 2015, for a four-

year term. Prior to taking office, Davis was a deputy clerk for her predecessor in office for nearly thirty years.

6.      Governor Beshear is the Governor of the Commonwealth of Kentucky. As the highest executive officer of the Commonwealth, Governor Beshear has responsibility for effecting Kentucky marriage law, and has final policymaking authority over the enforcement of Kentucky marriage laws.

7.      Commissioner Onkst is the State Librarian and Commissioner of the Kentucky Department for Libraries and Archives. The Kentucky Department for Libraries and Archives ("KDLA") is an executive branch department of Kentucky government "headed by a commissioner whose title shall be state librarian who shall be appointed by and serve at the pleasure of the Governor." Ky. Rev. Stat. § 171.130. Commissioner Onkst has responsibility for the design and provision of the official Kentucky marriage license form to be used by all county clerks in the issuance of marriage licenses, and has final policymaking authority over the design of the official Kentucky marriage license form to be used by all county clerks in the issuance of marriage licenses.

## GENERAL ALLEGATIONS

### Administration of Kentucky Marriage Policy before *Obergefell*

8.      The Commonwealth of Kentucky has a body of democratically-enacted law memorializing the millennia-old, natural definition of marriage as the union of one man and one woman. In 1998, the Kentucky legislature codified at Ky. Rev. Stat. § 402.005 the natural definition of marriage, previously entrenched in Kentucky common law, that "'marriage' refers only to the civil status, condition, or relation of one (1) man and one (1) woman united in law for life, for the discharge to each other and the community of the duties legally incumbent upon

those whose association is founded on the distinction of sex." In 2004, the Kentucky legislature proposed a constitutional amendment, which was subsequently enacted on the approval of seventy-four percent (74%) of the voters, memorializing that "[o]nly a marriage between one man and one woman shall be valid or recognized as a marriage in Kentucky" KY. CONST. § 233A.

9.      The Commonwealth also has a body of legislation governing the issuance of marriage licenses in Kentucky. Under these Kentucky marriage laws, individuals may obtain a Kentucky marriage license in any of Kentucky's 120 counties, Ky. Rev. Stat. § 402.080, some of which have multiple branch offices. Thus, in total, there are approximately 137 marriage licensing locations in Kentucky.

10.      Pursuant to Kentucky's marriage licensing scheme, "[e]ach county clerk shall use the form proscribed by the Department for Libraries and Archives when issuing a marriage license" which "shall be uniform throughout this state, and every license blank shall contain the identical words and figures provided in the form." Ky. Rev. Stat. §§ 402.100, 402.110. County clerks have no local discretion under Kentucky law to alter the composition or requirements of the KDLA-prescribed form.

11.      The KDLA form must include both a "marriage license" and a "marriage certificate." Ky. Rev. Stat. § 402.100. The marriage license section must include an "authorization statement of the county clerk issuing the license" and "[t]he date and place the license is issued, and the signature of the county clerk or deputy clerk issuing the license." Ky. Rev. Stat. § 402.100(1). The marriage certificate section must include "the name of the county clerk under whose authority the license was issued, and the county in which the license was issued" and "[a] signed statement by the county clerk or a deputy county clerk of the county in

which the marriage license was issued that the marriage license was recorded." Ky. Rev. Stat. § 402.100(2), (3). The KDLA-prescribed form specifically uses the word "marriage" at six different places on the form (and one reference to "join[ing] together in the state of matrimony"). (A true and correct copy of a completed, KDLA-prescribed form of marriage license used in Rowan County prior to June 30, 2015, with personal information redacted, is attached hereto as Exhibit A.[1])

12.     Thus, every marriage license must be issued and signed in the county clerk's name and by the county clerk's authority. In other words, no marriage license can be issued by a county clerk without her authorization and without her imprimatur.

13.     As an alternative to a marriage license issued by a county clerk, Kentucky marriage law provides for the issuance of a marriage license by a county judge/executive, the highest elected officer in a county, upon the absence of the clerk or vacancy in the clerk's office. *See* Ky. Rev. Stat. § 402.240. This alternative procedure does not require the use of the KDLA marriage license form; rather, it authorizes the county judge/executive to issue a marriage license by "a memorandum thereof," which is recorded by the clerk in the same manner as a KDLA form. *See id.*

14.     In February 2014, the Western District of Kentucky issued a decision holding Kentucky's definition of marriage unconstitutional.[2] In March 2014, Kentucky Attorney General Jack Conway, whose office had represented Kentucky in the case, tearfully proclaimed that after

---

[1]     The document attached as <u>Exhibit A</u> was admitted into evidence at the hearing on Plaintiffs' Motion for Preliminary Injunction (Doc. 2) as Defendant's Exhibit 2 ("Old version of marriage license from KDLA"). (Ex. and Witness List (Doc. 25).)

[2]     *See Bourke v. Beshear*, 996 F. Supp. 2d 542 (W.D. Ky. 2014) (decided February 12, 2014).

prayer and consultation with his wife he could not continue defending Kentucky's marriage laws as an "inescapable" matter of conscience.[3] Conway said,

> There are those who believe it's my mandatory duty, regardless of my personal opinion, to continue to defend this case through the appellate process, and I have heard from many of them. However, I came to the inescapable conclusion that, if I did so, I would be defending discrimination. . . .
>
> That I will not do. . . .
>
> . . . .
>
> . . . . **I can only say that I am doing what I think is right. In the final analysis, I had to make a decision that I could be proud of** – for me now, and my daughters' judgment in the future.[4]

15.    Within minutes of Conway's announcement, Governor Beshear announced the Commonwealth would hire private attorneys to pursue the appeal of the Western District's ruling, and to represent Kentucky in a companion Western District case.[5] Governor Beshear directed no adverse statements or actions towards Conway as a result of Conway's refusal to perform official duties due to his conscience, though Conway's refusal caused additional cost to the Commonwealth upwards of $200,000.00 for outside counsel. [6]

---

[3]    Beshear to hire $125-an-hour lawyer for gay marriage appeal after Conway bows out, Wave3 News, *available at* http://www.wave3.com/story/24886884/beshear-to-hire-125-an-hour-lawyer-for-gay-marriage-appeal-after-conway-bows-out (last accessed July 30, 2015) (quoting Plaintiffs' Counsel, Dan Canon, that Conway's conscientious objection to performing his duty to defend Kentucky's marriage laws gave him "hope.").

[4]    Read and watch Jack Conway's statement on same-sex marriage, WKYT.com, dated Mar. 4, 2014, *available at* http://www.wkyt.com/home/headlines/Read--watch-Attorney-General-Conways-same-sex-statement-248381361.html (last accessed July 30, 2015) (emphasis added).

[5]    *See supra*, n. 3. The Western District ruled against Kentucky in the second case, *see Love v. Beshear*, 989 F. Supp. 2d 536  (W.D. Ky. 2014). The Sixth Circuit reversed both district court decisions in *DeBoer v. Snyder*, 772 F.3d 388 (6th Cir. 2014), which was ultimately reversed by the Supreme Court in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015).

[6]    Ky. Pays $195K+ to defend gay-marriage ban, The Courier-Journal, dated May 20, 2015, *available at* http://www.courier-journal.com/story/news/local/2015/05/20/cost-gay-marriage-defense/27404461/ (last accessed July 30, 2015) (stating that Kentucky paid $195,400 to a

**Davis's Sincerely Held Religious Beliefs About Marriage**

16.     Davis is a professing Christian who is heavily involved in her local church, attending weekly Bible study and worship services there, and who leads a weekly Bible study for women at a local jail.

17.     As a Christian, Davis possesses a sincerely held religious belief and conviction, based upon the Bible which she believes to be the Word of God, that "marriage" is exclusively a union between one man and one woman. According to her beliefs, there is no arrangement of people other than one man and one woman that is, or can be called, "marriage."

18.     As county clerk, as a matter of Kentucky law, Davis authorizes, and signifies her authorization and approval by affixing her name to, each and every marriage license issued from her office. But Davis can neither authorize nor approve the "marriage" of a same-sex couple according to her conscience, because even calling the relationship of a same-sex couple "marriage" would violate her deeply and sincerely held religious beliefs. Nor can Davis allow her name to appear as the source of authority and approval for any marriage license issued to a same-sex couple because providing such approval would violate her sincere religious beliefs and convictions.

19.     Before taking office as County Clerk in January 2015, Davis swore an oath to support the constitutions and laws of the United States and the Commonwealth of Kentucky "so help me God." Davis understood (and understands) this oath to mean that, in upholding the federal and state constitutions and laws, she would not act in contradiction to the moral law of God, natural law, or her sincerely held religious beliefs and convictions. Davis also understood (and understands) the constitution and laws she swore to uphold to incorporate the constitutional

---

private firm through March 31, 2015 to defend Kentucky's marriage law after Conway refused to do so).

and other legal protections of all individuals' rights to live and work according to their consciences, as informed by their sincerely held religious beliefs and convictions, including without limitation such rights she holds in her own individual capacity.

20. Davis's sincerely held religious belief regarding the definition of "marriage" was perfectly aligned with the prevailing marriage policy in Kentucky at the time she took office, as provided in the Kentucky Constitution, Kentucky statutes, and controlling court decisions, and as effected by the Commonwealth through Governor Beshear and Commissioner Onkst.

21. On January 16, 2015, just two weeks after Davis took office, the United States Supreme Court announced it would review the then-controlling Sixth Circuit decision upholding Kentucky's natural definition of marriage.

22. On January 23, Davis wrote Kentucky legislators exhorting them to "get a bill on the floor to help protect clerks" who had a religious objection to issuing marriage licenses to same-sex couples. (A true and correct copy of the form of letter sent to legislators is attached hereto as Exhibit B.[7])

23. Davis does not have a religious objection to issuing, signing, or otherwise approving a marriage license for any man and woman who otherwise satisfy all of the legal requirements for marriage under Kentucky law, regardless of the identities, orientations, or practices of the applicants, including sexual identities, orientations, and practices. Furthermore, Davis's religious beliefs do not compel her to inquire of such applicants as to any aspects of their identities, orientations, or practices beyond the information required to complete the prescribed marriage license form.

---

[7] The document attached as Exhibit B was admitted into evidence at the hearing on Plaintiffs' Motion for Preliminary Injunction (Doc. 2) as Defendant's Exhibit 1 ("Letter to Senator Robertson from Kim Davis"). (Ex. and Witness List (Doc. 25).)

**Administration of Kentucky Marriage Policy after *Obergefell***

24.    On June 26, 2015, a five-to-four majority of the United States Supreme Court held that democratically-approved laws from Kentucky and three other states, defining marriage as the union of one man and one woman, were "invalid to the extent they exclude same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples." *Obergefell v. Hodges*, 135 S.Ct. 2584, 2605 (2015). According to the majority, the United States Constitution "does not permit the State to bar same-sex couples from marriage on the same terms as accorded to couples of the opposite sex." *Id.* at 2607.

25.    The same day, Governor Beshear sent a letter to all "Kentucky County Clerks," including Davis, informing them that "[e]ffective today, Kentucky will recognize as valid all same sex marriages performed in other states and in Kentucky." The letter stated that "Kentucky . . . must license and recognize the marriages of same-sex couples," and further instructed that "[n]ow that same-sex couples are entitled to the issuance of a marriage license, the Department of Libraries and Archives will be sending a gender-neutral form to you today, along with instructions for its use." (A true and correct copy of Governor Beshear's letter to county clerks is attached hereto as Exhibit C.[8])

26.    On Governor Beshear's instructions, the KDLA provided county clerks with a new marriage license form, reflecting changes from the prior approved form to accommodate same-sex couples.[9] Critically, however, the new form retained all references to "marriage," and all references to the name, signature, and authorization requirements of the county clerk. (A true

---

[8]    The document attached as Exhibit C was admitted into evidence at the hearing on Plaintiffs' Motion for Preliminary Injunction (Doc. 2) as Defendant's Exhibit 4 ("6/26/15 Letter from Governor"). (Ex. and Witness List (Doc. 25).).

[9]    The post-*Obergefell* marriage form eliminated references to "bride" and "groom" and replaced them with "first party" and "second party.

and correct copy of the new KDLA marriage license form is attached hereto as <u>Exhibit D</u>.[10])

Thus, Davis cannot issue a marriage license to a same-sex couple on the new form without

violating her conscience, as informed by her sincerely held religious beliefs.

27.    Following Governor Beshear's decree, county clerks across the Commonwealth

began issuing same-sex marriage licenses. Governor Beshear reiterated, "government officials in

Kentucky . . . must recognize same-sex marriages as valid and allow them to take place,"[11] and

confirmed that "[s]ame-sex couples are now being married in Kentucky and such marriages from

other states are now being recognized under Kentucky law."[12] In these same pronouncements,

Governor Beshear stated that the "overwhelming majority of county clerks" are "iss[uing]

marriage licenses regardless of gender" and only "two or three" county clerks (of 120) were

"refusing" to issue such licenses due to their "personal beliefs" and "personal feelings."

28.    In subsequent pronouncements, Governor Beshear has maintained that county

clerks must issue marriage licenses, including to same-sex couples, despite any clerk's "own

personal beliefs."[13] According to Governor Beshear, the only options available to county clerks

who oppose issuing marriage licenses to same-sex couples, even due to conscience or sincerely

held religious beliefs, are to either issue the licenses in violation of conscience, or resign.[14]

---

[10]    The document attached as <u>Exhibit D</u> was admitted into evidence at the hearing on
Plaintiffs' Motion for Preliminary Injunction (Doc. 2) as Defendant's Exhibit 3 ("New version of
marriage license from KDLA after S.Ct. 6/26/15 decision"). (Ex. and Witness List (Doc. 25).).

[11]    Press Release, Gov. Beshear Statement on Today's Meeting with Casey County Clerk,
dated July 9, 2015, *available at* http://migration.kentucky.gov/Newsroom /governor/20150707
statement.htm (last accessed July 29, 2015).

[12]    Press Release, Gov. Beshear: No special session needed, dated July 7, 2015, *available at*
http://migration.kentucky.gov/Newsroom/governor/20150707statement.htm  (last accessed  July
29, 2015);

[13]    Gov. Beshear Tells County Clerks to Fulfill Their Duties or Resign, WMKY.com, dated
July 21, 2015, *available at* http://wmky.org/post/gov-beshear-tells-county-clerks-fullfill-their-
duties-or-resign (last accessed July 29. 2015).

[14]    *See supra,* n. 13.

29.     On June 27, 2015, Davis discontinued issuing marriage licenses in Rowan County. This was not a "spur-of-the-moment decision" reached by Davis. Rather, after exhorting legislators to provide conscience protection for county clerks upon taking office, Davis prayed and fasted during the months leading up to *Obergefell* over how she would respond to such a Supreme Court decision. Though Davis's religious objection is limited to issuing licenses to same-sex couples, she suspended the issuance of all licenses to ensure that all individuals and couples in Rowan County were treated the same.

30.     On July 8, 2015, Davis sent a letter appealing to Governor Beshear to uphold her religious conscience rights, and to call a special session of the Kentucky General Assembly to legislatively address the conflict between her religious beliefs and Kentucky marriage policy as effected by Governor Beshear. (A true and correct copy of the letter is attached hereto as Exhibit E.[15]) Davis has received no response to her letter.

31.     During Davis's entire tenure in the Rowan County Clerk's Office, spanning nearly thirty years, neither Davis, any deputy clerk, nor Davis's predecessor in office ever asserted a religious objection to performing any other function of the clerk's office.

32.     The County Judge/Executive of Rowan County, Walter Blevins ("Judge Blevins"), would raise no religious objection to issuing marriage licenses to same-sex couples under the authority of Ky. Rev. Stat. § 402.240. However, Judge Blevins has refused to issue a marriage license to any of the Plaintiffs in the underlying action against Davis based on his belief that Davis's discontinuation of the issuance of all marriage licenses in Rowan County does not

---

[15]     The document attached as <u>Exhibit E</u> was admitted into evidence at the hearing on Plaintiffs' Motion for Preliminary Injunction (Doc. 2) as Defendant's Exhibit 5 ("7/8/15 Letter from Kim Davis to Governor"). (Ex. and Witness List (Doc. 25).).

count as the "absence" of Davis for purposes of the issuance of marriage licenses under Ky. Rev. Stat. § 402.40.

**Effect of Governor Beshear's Administration of Kentucky Marriage Policy
and the Need for Immediate Relief**

33.     Governor Beshear took it upon himself after *Obergefell* to set and announce new Kentucky marriage license policies, and command county clerks to abide by such policies.

34.     Governor Beshear's policies and directives are specifically targeting clerks like Davis who possess certain religious beliefs about marriage. This targeting is demonstrated by the exemption Governor Beshear granted to Attorney General Conway when he was unwilling to defend Kentucky's marriage laws—after "pray[ing] over this decision"—pursuant to Conway's own personal beliefs and feelings about "doing what I think is right" and "mak[ing] a decision that I could be proud of." (*See supra*, n.4.)

35.     Governor Beshear is unlawfully picking and choosing the conscience-based exemptions to marriage that he deems acceptable. For instance, when Attorney General Conway refused to defend Kentucky's marriage laws, Beshear did not admonish Conway that "Neither your oath nor the Supreme Court dictates what you must believe. But as elected officials, they do prescribe how we must act," but Governor Beshear did so direct county clerks like Davis. (Ex. C.) Beshear did not command Conway that "when you accepted this job and took that oath, it puts you on a different level," and "[y]ou have official duties now that the state law puts on you," but he did deliver this command to county clerks like Davis. (*See supra,* n.13.) Beshear did not publicly proclaim that Conway was "refusing to perform [his] duties" and failing to "follow[] the law and carry[] out [his] duty," and should instead "comply with the law regardless of [his] personal beliefs," but he did make this proclamation (repeatedly) about county clerks like Davis (*See supra,* nn. 11, 12.) Beshear did not instruct Conway that "if you are at that point to where

your personal convictions tell you that you simply cannot fulfill your duties that you were elected to do, than obviously the honorable course to take is to resign and let someone else step-in who feels that they can fulfill these duties," but he did issue this instruction to county clerks like Davis. (*See supra,* n.13.) Beshear did not ominously declare that "[t]he courts will deal appropriately with" Conway, but he did so declare as to the "two or three" county clerks who are not issuing marriage licenses. (*See supra,* n.12.)

36.     In no uncertain terms, Governor Beshear's policies and directives are intended to suppress religion—even worse, a particular religious belief. Thus, although Attorney General Conway was given a pass for his conscience about marriage without any threats of repercussion, clerks like Davis are being repeatedly told by their Governor to abandon their religiously-informed beliefs or resign. In doing so, Governor Beshear is forcing clerks like Davis to choose between following the precepts of her religion and forfeiting her position, on the one hand, and abandoning one of the precepts of her religion in order to keep her position, on the other hand.

37.     Citing Governor Beshear's policies and directives to all county clerks to issue licenses to same-sex couples irrespective of their sincerely held religious beliefs, the Plaintiffs in the underlying action allege that they are entitled to Kentucky marriage licenses issued specifically by Davis, and claim that Davis's refusal to issue marriage licenses violates their constitutional rights.

38.     Governor Beshear's targeted and discriminatory marriage policy pronouncements constitute government-imposed pressure on Davis to act contrary to her religious beliefs, and expose Davis to potential liability if she refuses to compromise her religious beliefs and violate her conscience.

39.     Davis needs immediate relief from Governor Beshear's unlawful policies before this Court can properly adjudicate the Plaintiffs' claims against Davis in the underlying action.

40.     At all relevant times, Governor Beshear and Commissioner Onkst acted under color of state law.

41.     All conditions precedent to the commencement and maintenance of this action have been satisfied, have occurred, or have been waived.

## COUNT I
### Third-Party Liability

42.     Davis realleges and incorporates herein by this reference the allegations of paragraphs 1 through 41 above.

43.     Plaintiffs' claims against Davis in the underlying action are based on Governor Beshear's unlawful policies and directives to Davis with respect to issuing Kentucky marriage licenses, including without limitation the failure of Governor Beshear to uphold and protect Davis's rights of religious conscience.

44.     Governor Beshear is liable to Davis for all of any relief obtained by Plaintiffs against Davis in the underlying action.

45.     If the Court determines Plaintiffs are entitled to a Kentucky marriage license issued in Rowan County, then Governor Beshear and Commissioner Onkst are liable to Davis to provide a means for issuance of marriage licenses to Plaintiffs which does not violate the religious conscience rights of Davis.

WHEREFORE, Davis prays for relief against Governor Beshear and Commissioner Onkst as hereinafter set forth in her prayer for relief.

## COUNT II
### Violation of Kentucky RFRA
### Third-Party Liability

46.     Davis realleges and incorporates herein by this reference the allegations of paragraphs 1 through 41 above.

47.     Davis's sincerely held religious beliefs prohibit her from issuing marriage licenses to same-sex couples. Davis's compliance with her religious beliefs is a religious exercise.

48.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, create government-imposed coercive pressure on Davis to change or violate her religious beliefs.

49.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, chill Davis's religious exercise.

50.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, expose Davis to liability to Plaintiffs and others.

51.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, impose a substantial burden on Davis's religious exercise.

52.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, further no compelling government interest.

53.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, are not narrowly tailored to any compelling government interest.

54.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, are not the least restrictive means of furthering any interest of Kentucky.

55.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, violate Davis's rights secured to her by the Kentucky RFRA.

56.     Given the foregoing violations of Davis's rights, if the Court determines Plaintiffs are entitled to a Kentucky marriage license issued in Rowan County, then Governor Beshear and Commissioner Onkst are liable to Davis to provide a means for issuance of marriage licenses to Plaintiffs which does not violate the rights of Davis secured to her by the Kentucky RFRA.

57.     Absent injunction and declaratory relief against Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, Davis has been and will continue to be harmed.

WHEREFORE, Davis prays for relief against Governor Beshear and Commissioner Onkst as hereinafter set forth in her prayer for relief.

**COUNT III**
**Violation of the First Amendment to the United States Constitution**
**Free Exercise Clause**
**Substantial Burden**
**Third-Party Liability**

58.     Davis realleges and incorporates herein by this reference the allegations of paragraphs 1 through 41 above.

59.     Davis's sincerely held religious beliefs prohibit her from issuing marriage licenses to same-sex couples. Davis's compliance with her religious beliefs is a religious exercise.

60.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, are not neutral.

61.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, are not generally applicable.

62.     Governor Beshear has targeted and singled out Davis for discriminatory treatment under Kentucky's marriage policies, in order to suppress the religious exercise of Davis and others.

63.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, create government-imposed coercive pressure on Davis to change or violate her religious beliefs.

64.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, chill Davis's religious exercise.

65.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, expose Davis to liability to Plaintiffs and others.

66.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, impose a substantial burden on Davis's religious exercise.

67.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, further no compelling government interest.

68.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, are not narrowly tailored to any compelling government interest.

69.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, are not the least restrictive means of furthering any interest of Kentucky.

70.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, violate Davis's rights secured to her by the Free Exercise Clause of the First Amendment to the United States Constitution and the Fourteenth Amendment to the United States Constitution.

71.     Given the foregoing violations of Davis's rights, if the Court determines Plaintiffs are entitled to a Kentucky marriage license issued in Rowan County, then Governor Beshear and Commissioner Onkst are liable to Davis to provide a means for issuance of marriage licenses to Plaintiffs which does not violate the rights of Davis secured to her by the Free Exercise Clause of

the First Amendment to the United States Constitution and the Fourteenth Amendment to the United States Constitution.

72.     Absent injunction and declaratory relief against Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, Davis has been and will continue to be harmed.

WHEREFORE, Davis prays for relief against Governor Beshear and Commissioner Onkst as hereinafter set forth in her prayer for relief.

**COUNT IV**
**Violation of the First Amendment to the United States Constitution**
**Free Exercise Clause**
**Intentional Discrimination**
**Third-Party Liability**

73.     Davis realleges and incorporates herein by this reference the allegations of paragraphs 1 through 41 above.

74.     Davis's sincerely held religious beliefs prohibit her from issuing marriage licenses to same-sex couples. Davis's compliance with her religious beliefs is a religious exercise.

75.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, make it impossible for Davis to comply with both her religious beliefs and Kentucky's marriage policies.

76.     Governor Beshear has targeted and singled out Davis for discriminatory treatment under Kentucky's marriage policies, in order to suppress the religious exercise of Davis and others.

77.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, violate Davis's rights secured to her by the Free Exercise Clause of the

First Amendment to the United States Constitution and the Fourteenth Amendment to the United States Constitution.

78.     Given the foregoing violations of Davis's rights, if the Court determines Plaintiffs are entitled to a Kentucky marriage license issued in Rowan County, then Governor Beshear and Commissioner Onkst are liable to Davis to provide a means for issuance of marriage licenses to Plaintiffs which does not violate the rights of Davis secured to her by the Free Exercise Clause of the First Amendment to the United States Constitution and the Fourteenth Amendment to the United States Constitution.

79.     Absent injunction and declaratory relief against Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, Davis has been and will continue to be harmed.

WHEREFORE, Davis prays for relief against Governor Beshear and Commissioner Onkst as hereinafter set forth in her prayer for relief.

<u>**COUNT V**</u>
**Religious Discrimination—**
**Violation of the First and Fourteenth Amendments to the United States Constitution**
**Free Exercise and Establishment Clauses; Due Process and Equal Protection**
**Third-Party Liability**

80.     Davis realleges and incorporates herein by this reference the allegations of paragraphs 1 through 41 above.

81.     Davis's sincerely held religious beliefs prohibit her from issuing marriage licenses to same-sex couples. Davis's compliance with her religious beliefs is a religious exercise.

82.     By design, Governor Beshear allows some religious and conscientious objections to compliance with Kentucky marriage laws but not others, resulting in discrimination among religious objectors.

83.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, vest Governor Beshear with unbridled discretion in deciding whether to allow exemptions from compliance with Kentucky marriage law to some persons.

84.     Religious liberty is a fundamental right.

85.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, protect some religious objectors, but not Davis.

86.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, violate Davis's rights secured to her by the Free Exercise and Establishment Clauses of the First Amendment to the United States Constitution and by the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.

87.     Given the foregoing violations of Davis's rights, if the Court determines Plaintiffs are entitled to a Kentucky marriage license issued in Rowan County, then Governor Beshear and Commissioner Onkst are liable to Davis to provide a means for issuance of marriage licenses to Plaintiffs which does not violate the rights of Davis secured to her by the Free Exercise and Establishment Clauses of the First Amendment to the United States Constitution and by the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.

88.     Absent injunction and declaratory relief against Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, Davis has been and will continue to be harmed.

WHEREFORE, Davis prays for relief against Governor Beshear and Commissioner Onkst as hereinafter set forth in her prayer for relief.

## COUNT VI
### Violation of the First Amendment to the United States Constitution
### Freedom of Speech
### Compelled Speech
### Third-Party Liability

89.     Davis realleges and incorporates herein by this reference the allegations of paragraphs 1 through 41 above.

90.     Davis believes and professes that issuing marriage licenses to same-sex couples violates her religious beliefs.

91.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, would compel Davis to cooperate in activities, through the issuance of marriage licenses under her name and approval, that are violations of Davis's religious beliefs.

92.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, would compel Davis to state her identification, authorization, and approval as "marriage" of same-sex relationships which cannot be "marriage" according to her religious beliefs.

93.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, are not narrowly tailored to a compelling governmental interest.

94.     Kentucky's actions, as effected by Governor Beshear and Commissioner Onkst, thus violate Davis's right to be free from compelled speech as secured to her by the First Amendment to the United States Constitution.

95.     Given the foregoing violations of Davis's rights, if the Court determines Plaintiffs are entitled to a Kentucky marriage license issued in Rowan County, then Governor Beshear and Commissioner Onkst are liable to Davis to provide a means for issuance of marriage licenses to Plaintiffs which does not violate the rights of Davis secured to her by the First Amendment to the United States Constitution.

96.     Absent injunction and declaratory relief against Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, Davis has been and will continue to be harmed.

WHEREFORE, Davis prays for relief against Governor Beshear and Commissioner Onkst as hereinafter set forth in her prayer for relief.

**COUNT VII**
**Violation of Article VI of the United States Constitution**
**Religious Test**
**Third-Party Liability**

97.     Davis realleges and incorporates herein by this reference the allegations of paragraphs 1 through 41 above.

98.     Davis's sincerely held religious beliefs prohibit her from issuing marriage licenses to same-sex couples. Davis's compliance with her religious beliefs is a religious exercise.

99.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, require persons with religious beliefs like those of Davis to renounce such beliefs as a condition to holding the office of county clerk, and thereby impose a religious test as a qualification to hold the office of county clerk.

100.    Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, violate Davis's rights secured to her by Article VI of the United States Constitution and the Fourteenth Amendment to the United States Constitution.

101.    Given the foregoing violations of Davis's rights, if the Court determines Plaintiffs are entitled to a Kentucky marriage license issued in Rowan County, then Governor Beshear and Commissioner Onkst are liable to Davis to provide a means for issuance of marriage licenses to Plaintiffs which does not violate the rights of Davis secured to her by Article VI of the United States Constitution and the Fourteenth Amendment to the United States Constitution.

102. Absent injunction and declaratory relief against Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, Davis has been and will continue to be harmed.

WHEREFORE, Davis prays for relief against Governor Beshear and Commissioner Onkst as hereinafter set forth in her prayer for relief.

**COUNT VIII**
**Violation of Sections 1 and 5 of the Kentucky Constitution**
**Religious Freedom and Rights of Conscience**
**Third-Party Liability**

103. Davis realleges and incorporates herein by this reference the allegations of paragraphs 1 through 41 above.

104. Davis's sincerely held religious beliefs prohibit her from issuing marriage licenses to same-sex couples. Davis's compliance with her religious beliefs is a religious exercise.

105. Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, are not neutral.

106. Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, are not generally applicable.

107. Governor Beshear has targeted and singled out Davis for discriminatory treatment under Kentucky's marriage policies, in order to suppress the religious exercise of Davis and others.

108. Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, create government-imposed coercive pressure on Davis to change or violate her religious beliefs.

109. Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, chill Davis's religious exercise.

110.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, expose Davis to liability to Plaintiffs and others.

111.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, impose a substantial burden on Davis's religious exercise.

112.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, further no compelling government interest.

113.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, are not narrowly tailored to any compelling government interest.

114.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, are not the least restrictive means of furthering any interest of Kentucky.

115.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, violate Davis's rights of religious freedom and conscience secured to her by Sections 1 and 5 of the Kentucky Constitution.

116.     Given the foregoing violations of Davis's rights, if the Court determines Plaintiffs are entitled to a Kentucky marriage license issued in Rowan County, then Governor Beshear and Commissioner Onkst are liable to Davis to provide a means for issuance of marriage licenses to Plaintiffs which does not violate the rights of Davis secured to her by Sections 1 and 5 of the Kentucky Constitution.

117.     Absent injunction and declaratory relief against Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, Davis has been and will continue to be harmed.

WHEREFORE, Davis prays for relief against Governor Beshear and Commissioner Onkst as hereinafter set forth in her prayer for relief.

## COUNT IX
### Violation of Sections 1 and 5 of the Kentucky Constitution
### Religious Discrimination
### Third-Party Liability

118.    Davis realleges and incorporates herein by this reference the allegations of paragraphs 1 through 41 above.

119.    Davis's sincerely held religious beliefs prohibit her from issuing marriage licenses to same-sex couples. Davis's compliance with her religious beliefs is a religious exercise.

120.    Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, make it impossible for Davis to comply with both her religious beliefs and Kentucky's marriage policies.

121.    Governor Beshear has targeted and singled out Davis for discriminatory treatment under Kentucky's marriage policies, in order to suppress the religious exercise of Davis and others.

122.    Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, violate Davis's rights against religious discrimination secured to her by Sections 1 and 5 of the Kentucky Constitution.

123.    Given the foregoing violations of Davis's rights, if the Court determines Plaintiffs are entitled to a Kentucky marriage license issued in Rowan County, then Governor Beshear and Commissioner Onkst are liable to Davis to provide a means for issuance of marriage licenses to Plaintiffs which does not violate the rights of Davis secured to her by Sections 1 and 5 of the Kentucky Constitution.

124.    Absent injunction and declaratory relief against Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, Davis has been and will continue to be harmed.

WHEREFORE, Davis prays for relief against Governor Beshear and Commissioner Onkst as hereinafter set forth in her prayer for relief.

**COUNT X**
**Religious Discrimination—**
**Violation of Sections 1, 3, and 5 of the Kentucky Constitution**
**Religious Preference; Equality**
**Third-Party Liability**

125.     Davis realleges and incorporates herein by this reference the allegations of paragraphs 1 through 41 above.

126.     Davis's sincerely held religious beliefs prohibit her from issuing marriage licenses to same-sex couples. Davis's compliance with her religious beliefs is a religious exercise.

127.     By design, Governor Beshear allows some religious and conscientious objections to compliance with Kentucky marriage laws but not others, resulting in discrimination among religious objectors.

128.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, vest Governor Beshear with unbridled discretion in deciding whether to allow exemptions from compliance with Kentucky marriage law to some persons.

129.     Religious liberty is a fundamental right.

130.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, protect some religious objectors, but not Davis.

131.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, violate Davis's rights to equality and against religious discrimination and religious preferences secured to her by Sections 1, 3, and 5 of the Kentucky Constitution.

132.     Given the foregoing violations of Davis's rights, if the Court determines Plaintiffs are entitled to a Kentucky marriage license issued in Rowan County, then Governor Beshear and Commissioner Onkst are liable to Davis to provide a means for issuance of marriage licenses to

Plaintiffs which does not violate the rights of Davis secured to her by Sections 1, 3, and 5 of the Kentucky Constitution.

133.    Absent injunction and declaratory relief against Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, Davis has been and will continue to be harmed.

WHEREFORE, Davis prays for relief against Governor Beshear and Commissioner Onkst as hereinafter set forth in her prayer for relief

**COUNT XI**
**Violation of the Sections 1 and 8 of the Kentucky Constitution**
**Freedom of Speech**
**Compelled Speech**
**Third-Party Liability**

134.    Davis realleges and incorporates herein by this reference the allegations of paragraphs 1 through 41 above.

135.    Davis believes and professes that issuing marriage licenses to same-sex couples violates her religious beliefs.

136.    Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, would compel Davis to cooperate in activities, through the issuance of marriage licenses under her name and approval, that are violations of Davis's religious beliefs.

137.    Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, would compel Davis to state her identification, authorization, and approval as "marriage" of same-sex relationships which cannot be "marriage" according to her religious beliefs.

138.    Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, are not narrowly tailored to a compelling governmental interest.

139.     Kentucky's actions, as effected by Governor Beshear and Commissioner Onkst, thus violate Davis's right to be free from compelled speech as secured to her by Sections 1 and 8 of the Kentucky Constitution.

140.     Given the foregoing violations of Davis's rights, if the Court determines Plaintiffs are entitled to a Kentucky marriage license issued in Rowan County, then Governor Beshear and Commissioner Onkst are liable to Davis to provide a means for issuance of marriage licenses to Plaintiffs which does not violate the rights of Davis secured to her by Sections 1 and 8 of the Kentucky Constitution.

141.     Absent injunction and declaratory relief against Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, Davis has been and will continue to be harmed.

WHEREFORE, Davis prays for relief against Governor Beshear and Commissioner Onkst as hereinafter set forth in her prayer for relief.

## COUNT XII
### Violation of Section 5 of the Kentucky Constitution
### Religious Test
### Third-Party Liability

142.     Davis realleges and incorporates herein by this reference the allegations of paragraphs 1 through 41 above.

143.     Davis's sincerely held religious beliefs prohibit her from issuing marriage licenses to same-sex couples. Davis's compliance with her religious beliefs is a religious exercise.

144.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, require persons with religious beliefs like those of Davis to renounce such beliefs as a condition to holding the office of county clerk, and thereby impose a religious test as a qualification to hold the office of county clerk.

145.     Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, violate Davis's rights secured to her by Section 5 of the Kentucky Constitution.

146.     Given the foregoing violations of Davis's rights, if the Court determines Plaintiffs are entitled to a Kentucky marriage license issued in Rowan County, then Governor Beshear and Commissioner Onkst are liable to Davis to provide a means for issuance of marriage licenses to Plaintiffs which does not violate the rights of Davis secured to her by Section 5 of the Kentucky Constitution.

147.     Absent injunction and declaratory relief against Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, Davis has been and will continue to be harmed.

WHEREFORE, Davis prays for relief against Governor Beshear and Commissioner Onkst as hereinafter set forth in her prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Davis respectfully requests that the Court:

a.   Declare that Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, violate the Kentucky RFRA;

b.   Declare that Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, violate the First Amendment and Fourteenth Amendment to the United States Constitution, and Article VI of the United States Constitution;

c.   Declare that Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, violate Sections 1, 3, 5, and 8 of the Kentucky Constitution;

d. Issue a preliminary and permanent injunction prohibiting enforcement of Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst, against Davis;

e. Impose against or transfer to Governor Beshear and Commissioner Onkst any relief obtained by Plaintiffs against Davis in the underlying action;

f. Award Davis the costs of this action and reasonable attorney's fees; and

g. Award such other and further relief as the Court deems just and proper.

## JURY DEMAND

Davis requests a trial by jury on all issues so triable.

Respectfully Submitted,

/s/ Roger K. Gannam
Roger K. Gannam (Fla. 240450)[†]
  rgannam@LC.org
  court@LC.org
Jonathan D. Christman (Pa. 306634)[†]
  jchristman@LC.org
LIBERTY COUNSEL
P.O. BOX 540774
Orlando, FL 32854-0774
(800) 671-1776 Telephone
(407) 875-0770 Facsimile
[†]Admitted *pro hac vice*

Attorneys for Defendant and
Third-Party Plaintiff, Kim Davis

## **VERIFICATION**

I, Kim Davis, state that I have read and reviewed the foregoing complaint and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed on: ___8/4/2015___

KIM DAVIS

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing was filed via the Court's CM/ECF system, which will effectuate service through the Court's transmission facilities by notice of electronic filing to all counsel or parties of record:

Daniel J. Canon
L. Joe Dunman
Laura E. Landenwich
CLAY DANIEL WALTON ADAMS, PLC
462 S. Fourth Street, Suite 101
Louisville, KY 40202
dan@justiceky.com
joe@justiceky.com
laura@justiceky.com

William Ellis Sharp
ACLU OF KENTUCKY
315 Guthrie Street, Suite 300
Louisville, KY 40202
sharp@aclu-ky.org

*Attorneys for Plaintiffs*

Jeffrey C. Mando
Claire Parsons
ADAMS, STEPNER, WOLTERMANN &
DUSING, PLLC
40 West Pike Street
Covington, KY 41011
jmando@aswdlaw.com
cparsons@aswdlaw.com

*Attorneys for Rowan County*

DATED: August 4, 2015

/s/ Roger K. Gannam
Roger K. Gannam
*Attorney for Defendant Kim Davis*