UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

| | |
|---|---|
| APRIL MILLER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KIM DAVIS, *et al.*,<br><br>Defendants. | Case No. 0:15-cv-00044-DLB<br><br>***Electronically filed*** |

**REPLY MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiffs seek preliminary injunctive relief to bar Defendant Davis, in her official capacity as the Rowan County Clerk, from enforcing that office's policy of refusing to issue marriage licenses to qualified applicants (including Plaintiffs). [RE #2; RE #2-1: Memo. In Support of Plaintiff's Motion for a Preliminary Injunction ("Pl. Memo.").] The policy — adopted by Davis one day after the *Obergefell* decision due to her religious objection to same-sex marriage — bars all couples, same-sex and opposite-sex, from obtaining marriage licenses from the Rowan County Clerk's office. [RE #26: July 20, 2015 Transcript ("7/20/15 Tr."), 62: 10-14; 62:15-17.] The policy provides no exceptions, even though one or more deputy clerks would, if permitted, accept and process marriage license applications for same-sex couples. [*Id*. at 49: 12-18.] Moreover, Davis intends to continue refusing to issue marriage licenses during her tenure as County Clerk. [*Id*. at 67: 17-20.]

In opposing Plaintiffs' preliminary injunction motion, Davis asserts that all of the relevant factors weigh in her favor. [RE #29: Defendant Davis' Response in Opposition to Plaintiffs' Motion for Preliminary Injunction ("Davis Memo.").] She argues that: 1) issuing the injunction would, for a variety of reasons, inflict "substantial and irreparable" harm upon her that outweighs any harm to Plaintiffs [*id*. at 8-29]; 2) Plaintiffs would not suffer irreparable harm absent the injunction because they may travel (and obtain their marriage licenses) elsewhere [*id*. at 29-30]; 3) Plaintiffs have not established a likelihood of success on the merits because the challenged policy is not a "direct and substantial" burden upon their right to marry, and because the policy furthers the "compelling" interest of protecting Davis' (and her clerks') "fundamental rights of conscience, religious freedom, and speech" [*id*. at 31-34]; and 4) the public interest is actually served by denying the preliminary injunction because doing so would protect her rights of conscience and give the political branches an opportunity to craft a legislative solution. [*Id*. at 34-37.] Plaintiffs now reply.

## I. PLAINTIFFS SEEK, AND THIS COURT IS AUTHORIZED TO ISSUE, PROSPECTIVE INJUNCTIVE RELIEF AGAINST DEFENDANT KIM DAVIS, IN HER OFFICIAL CAPACITY AS ROWAN COUNTY CLERK.

Before responding to Defendant Davis' arguments, Plaintiffs first address those issues identified by the Court in its Order. [RE #30 (ordering Plaintiffs to address: 1) whether Plaintiffs seek injunctive relief against Defendant Davis is in her individual and/or official capacity; and 2) the legal bases supporting injunctive relief against Defendant Davis in her official capacity).] Specifically, Plaintiffs, on behalf of themselves and the putative class, seek prospective injunctive relief against Defendant Davis, *in her official capacity as the Rowan County Clerk*, to enjoin future enforcement

of the challenged policy. [*See* RE #1: Complaint, ¶¶ 1, 16, 20, 23, 26, 30, 36-38, 41, 44-45.] Rowan County argues that Davis, in her official capacity, does not act on behalf of the County regarding the issuance (or non-issuance) of marriage licenses, but rather as a state official. [RE #28: Rowan Co. Response, 1-2, 4-7]. Thus, according to the County, a preliminary injunction against the County would be inappropriate. [*Id.* at 2, 7].

Plaintiffs agree that the question of whether Defendant Davis is a state or municipal actor with respect to marriage licensing is a legal question to be decided by the Court *prior* to submitting the case to the jury, and that the issue must be decided by reference to state law.[1] However, the resolution of that issue *does not* impact the Court's ability to grant the requested preliminary injunction because Plaintiffs seek prospective injunctive relief to bar Defendant Davis' enforcement of the challenged policy. Whether Davis, in her official capacity, is enjoined from enforcing a policy she adopted as a municipal official with final policymaking authority *or* as a state official, this Court may enjoin her from committing future violations of federal law that would result from her official-capacity enforcement of that policy.[2]

---

1 *McMillian v. Monroe County*, 520 U.S. 781 (1997); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) ("the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury.").

2 *Ex Parte Young*, 209 U.S. 123, 154 (1908) (exception to Eleventh Amendment immunity for actions against state officials, in their official capacities, to enjoin those officials from future violations of federal law); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) ("Local governing bodies ... can be sued directly under § 1983 for monetary, declaratory, or *injunctive relief* where ... the action that is alleged to be unconstitutional implements or executes" a custom or policy.); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("*Monell*'s language makes clear that it expressly envisioned other officials whose acts or edicts may fairly be said to represent official policy ... and whose decisions therefore may give rise to municipal liability under § 1983") (internal quotations and citation omitted).

Moreover, the resolution of whether Defendant Davis is a municipal or state actor is, at this stage of the litigation, premature. As explained above, this Court may enjoin Defendant Davis' enforcement of the challenged policy regardless of her official-capacity status. But deciding whether Defendant Davis is a state or municipal official *before* the parties have engaged in discovery or been afforded an opportunity to fully brief the issue would be unduly prejudicial to Plaintiffs' ability to fully litigate the issue.[3] So, even though the question of whether the Rowan County Clerk is a state or municipal official with respect to marriage licensing is critical to determining whether (or not) Rowan County is liable for the policy at issue here, resolution of that issue is not necessary at this early stage in order to enjoin Defendant Davis' future enforcement of that policy.

## II. PRELIMINARY INJUNCTIVE RELIEF IS APPROPRIATE.

### A. The Balance of Asserted Harms Weighs In Favor of Granting The Requested Injunction.

Defendant Davis' primary opposition to the motion relies upon her contention that, if granted, an injunction would result in irreparable harm to her. [RE #29: Davis Memo., 8-29.] In support of that claim, Davis argues, *inter alia*, that ordering her to comply with state law regarding the issuance of marriage licenses would violate her Free Exercise and speech rights under the U.S. and Kentucky Constitutions[4], and her rights

---

[3] *See*, *e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (U.S. 1986) ("[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant*, as long as the plaintiff has had a full opportunity to conduct discovery*.") (emphasis added).

[4] Because the protections afforded individuals' speech and free exercise rights under the Ky. Constitution are coextensive with those under the U.S. Constitution, Plaintiffs will respond to both arguments under the rubric and analysis of the federal provisions. *See McDonald v. Ethics Comm. of the Kentucky Judiciary*, 3 S.W.3d 740 (Ky.

under Kentucky's Religious Freedom Restoration Act ("RFRA"). [*Id.* at 9-14 (Ky. RFRA); 14-17 (Free Exercise); 17-20 (free speech).] However, Davis fundamentally misconstrues the relevant authority by largely ignoring the fact that, unlike the claims at issue in the weight of authority she cites, she asserts those harms as a public employee seeking to withhold governmental services from others due to her personal religious objection to their receiving those services. As is more fully explained below, Davis' asserted harms do not justify her erecting a direct and substantial burden upon individuals' fundamental right to marry, nor does it outweigh the irreparable harm the challenged policy inflicts upon Plaintiffs and the putative class. And further, the neutral and generally applicable requirements for County Clerks to issue marriage licenses do not impose a substantial burden upon religious belief that warrant heightened judicial scrutiny *even though* Davis' objection to complying with them may be sincerely felt and religiously-based.

**1. Plaintiffs Will Suffer Irreparable Harm Absent The Injunction.**

Defendant Davis' policy of refusing to issue licenses to qualified applicants directly and substantially burdens Plaintiffs' fundamental right to marry, in that it precludes them (and the proposed class) from obtaining marriage licenses in Rowan County even though such licenses are a legal prerequisite for marriage in Kentucky. KRS § 402.080. The ongoing constitutional violations resulting from this policy are manifest. Prior to *Obergefell*, the Rowan County Clerk's office issued approximately two hundred marriage licenses per year thus enabling roughly four hundred people, annually, to

---

1999), *as amended* (Nov. 15, 1999) (speech); *Gingerich, et al. v. Commonwealth*, 382 S.W.3d 835 (Ky. 2012) (free exercise).

exercise their fundamental right to marry. [RE #26: 7/20/15 Tr., 26:10-13 (212 licenses issued in 2014); *id.* at 26:20-22 (99 licenses issued in first half of 2015).] As a result of the policy at issue, no one is permitted to obtain a marriage license in Rowan County, including that county's residents (such as Plaintiffs). And for Plaintiffs and other Rowan county residents, the policy thus imposes a direct legal obstacle upon their right to marry by forcing them to choose between traveling to another county to obtain a license or forgo their right to marry. As Plaintiffs stated in support of their Motion for Preliminary Injunction, both the Supreme Court and the Sixth Circuit have held that the infringement of protected freedoms constitutes an irreparable injury sufficient to justify the grant of a preliminary injunction. [RE #2-1: Pl. Memo, 8-9]. "[W]hen reviewing a motion for a preliminary injunction, if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is *mandated*."[5]

Defendant Davis seeks to minimize the precedent against her position by arguing that there is no irreparable harm to Plaintiffs because "marriage licenses are readily available throughout Kentucky," including the seven counties neighboring Rowan County. [RE #29: Davis Memo, 29]. However, Davis has not (and cannot) point to any authority for the proposition that a violation of one's constitutional right does not constitute irreparable harm so long as the victim can go elsewhere to exercise that right. [*Id.* at 30.] By contrast, there is ample authority holding that the mere existence of

---

[5] *ACLU v. McCreary County*, 354 F.3d 438, 445 (6th Cir. 2003), *aff'd, McCreary County v. ACLU*, 545 U.S. 844 (2005) (emphasis added); *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001) ("In other words, the first factor of the four-factor preliminary injunction inquiry—whether the plaintiff shows a substantial likelihood of succeeding on the merits—should be addressed first insofar as a successful showing on the first factor mandates a successful showing on the second factor—whether the plaintiff will suffer irreparable harm.").

alternative means for the exercise of a constitutional right is insufficient to undermine the irreparable harm caused by a constitutional violation.[6]

### 2. The Administrative Acts Required To Issue Marriage Licenses To Same-Sex Couples Do Not Constitute A Substantial Burden For First Amendment or Kentucky RFRA Purposes.

Plaintiffs do not dispute that Davis opposes same-sex marriage due to her personal religious beliefs; nor with her claim that those beliefs are sincerely-held. However, Plaintiffs do contest (and courts are perfectly capable of deciding) that the administrative acts necessary for her office to issue marriage licenses, including marriage licenses to same-sex couples, do not impose a substantial burden upon her religious freedom.[7] For example, courts have frequently rejected free exercise claims on the basis that the government-compelled action did not impose a substantial burden upon the

---

[6] *See, e.g., Adland v. Russ*, 307 F.3d 471, 478 (6th Cir. 2002) ("An Establishment Clause plaintiff need not allege that he or she avoids, or will avoid, the area containing the challenged display."); *Obama for Am. v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012) (Ohio restricted early voting to members of the military. A preliminary injunction was affirmed against this "restriction on the fundamental right to vote" despite ability of non-military Ohio residents to vote on other days); *Spence v. State of Washington*, 418 U.S. 405, 426 n.4 (1974) ("[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.") (internal quotations and citation omitted).

[7] The requirements for County Clerks to issue marriage licenses are generally applicable; thus, they would be subject only to rational basis review against any claim by Davis that they unlawfully burden her free exercise rights under the U.S. and Kentucky Constitutions. *See Employment Div. v. Smith*, 494 U.S. 872, 882-84 (1990) and footnote 1, *supra*. Moreover, Davis' suggestion that strict scrutiny would apply because her free exercise claim involves hybrid rights is without merit. Davis has not presented "a colorable independent constitutional claim" under the Free Speech Clause that would support heightened scrutiny. *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 656 (10th Cir. 2006).

claimants' free exercise rights.[8] Here, as in those instances, the burden upon Defendant Davis, in her official capacity, to perform (or allow her subordinates to perform) the administrative tasks associated with issuing marriage licenses is not a substantial burden upon religious belief.[9]

However, even assuming that the requirements for issuing marriage licenses were found to impose a substantial burden upon Defendant Davis' religious beliefs, the analytical framework she suggests fails to take into account the greater latitude the government enjoys where, as here, the burden occurs in the course of public employment. "'[T]he government as employer ... has far broader powers than does the government as sovereign,' enjoying a 'freer hand in regulating the speech of its employees than it has in regulating the speech of the public at large.'"[10] It logically follows, then, that government-as-employer enjoys more latitude to impose incidental burdens upon employees' free exercise rights when those result from legitimate, job-related duties not

---

[8] *See, e.g., Jimmy Swaggart Ministries v. Bd. of Equalization of California*, 493 U.S. 378 (1990) (collection and payment of sales and use tax did not substantially burden free exercise rights); *Bowen v. Roy*, 476 U.S. 693 (1986) (requirement that applicants possess a social security number in order to qualify for federal aid programs not a substantial burden upon free exercise rights); *Tony and Susan Alamo Foundation v. Sec'y of Labor*, 471 U.S. 290 (1985) (application of labor laws to religious foundation's commercial activities did not substantially burden free exercise rights); *Bd. of Ed. of Central Sch. Dist. No. 1 v. Allen*, 392 U.S. 236 (1968) (no substantial burden on exercise of religion from non-coercive government action requiring free book loans to all public and private schools for elementary and secondary students).

[9] Nor do the neutral and generally applicable requirements for issuing marriage licenses violate the Religious Test Clause because they do not constitute "religious test" oaths of the type that clause was designed to eliminate. *See Am. Atheists, Inc. v. Shulman*, 21 F. Supp. 3d 856, 870-71 (E.D. Ky. 2014) (listing cases).

[10] *Draper v. Logan Cnty. Pub. Library*, 403 F. Supp. 2d 608, 622 (W.D. Ky. 2005) (quoting *Waters v. Churchill*, 511 U.S. 661, 671 (1994)).

specifically targeted at religious belief, such as here. So, even where the government imposes employment-related obligations that have the effect of substantially burdening public employees' religious beliefs, courts have frequently viewed those regulations more permissibly than if those same burdens were imposed in the government-as-sovereign context.[11]

For example, in *Draper*, the District Court examined this issue and noted that that the Sixth Circuit had not specifically adopted a test for examining free exercise claims arising in the governmental workplace.[12] However the court predicted that the Sixth Circuit would apply a *Pickering*-like standard of review, reasoning that the policy justifications for applying a less stringent standard of review in the public employment arena are every bit as compelling in the free exercise context as in the free speech context.[13]

> Government agencies are charged by law with doing particular tasks. Agencies hire employees to help do those tasks as effectively and efficiently as possible. **When someone who is paid a salary so that she will contribute to an agency's effective operation begins to do or say things that detract from the agency's effective operation, the government employer must have some power to restrain her.**
>
> …
>
> The government's interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest when it acts as sovereign to a significant one when it acts as employer. **The government cannot restrict the speech of the public at large just in the name of efficiency. But where the government is employing**

---

11 *Id.*

12 *Id.* at 622.

13 *Id.* (citing *Pickering v. Bd. of Educ. of Township High Sch. Dist. 205*, 391 U.S. 563 (1968)).

> **someone for the very purpose of effectively achieving its goals, such restrictions may well be appropriate.**[14]

The *Draper* court further noted that a *Pickering*-like balancing test has been used in several other public employment contexts,[15] leading to the conclusion that the government's burden in cases challenging its actions as an employer is categorically lowered across many different areas of constitutional jurisprudence that would ordinarily be subject to strict scrutiny review. This conclusion is also consistent with decisions rejecting free exercise claims by public employees in the law enforcement context.[16]

But, *even if* Kentucky's requirements for issuing marriage licenses were deemed to substantially burden Davis' religious beliefs *and* the Court applied strict scrutiny to those requirements, they would nonetheless satisfy that heightened review. First, Kentucky has compelling interests in ensuring that qualified individuals may exercise their fundamental right to marry *and* in the uniform issuance (and recording) of marriage

[14] *Id.* at 622-23 (emphasis added) (quoting *Waters*, 511 U.S. at 674–75).

[15] *Id*. at 623 (citing *Hatcher v. Bd. of Pub. Educ.*, 809 F.2d 1546, 1559 (11th Cir.1987) (right of expressive association), *Shahar v. Bowers*, 114 F.3d 1097, 1103 (11th Cir.1997) (en banc) (right to intimate association), *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1059 (2d Cir.1993) (right to petition), *Fyfe v. Curlee*, 902 F.2d 401, 405 (5th Cir.1990) (Fourteenth Amendment privacy rights); *Stough v. Crenshaw County Bd. of Educ.*, 744 F.2d 1479, 1481 (11th Cir.1984) (Fourteenth Amendment privacy rights)).

[16] *See, e.g.*, *Endres v. Ind. State Police*, 349 F.3d 922, 927 (7th Cir. 2003) (holding that refusal to reassign police officer who objected, on religious grounds opposing gambling as sinful, to his designation as a Gaming Commission agent, and subsequent termination of his employment for insubordination, did not "violate[] the free exercise clause of the first amendment, as *Smith* understands that clause").

licenses and marriage-related data.[17]

Moreover, the uniform system Kentucky has in place for ensuring that individuals satisfy the state's requirements for marriage would likewise satisfy the "least restrictive means" analysis because it ensures that all Kentuckians have equal access to the public officials responsible for issuing (and recording) those licenses free from discrimination. And, as the Supreme Court has recognized, the Free Exercise Clause does not justify exemptions that adversely impact others.[18]

---

[17] *See Braunfeld v. Brown*, 366 U.S. 599, 603 (1961) (state's interest in "improving the health, safety, morals and general well-being of [] citizens" warranted denying Jewish storeowners religious exemption from Sunday closing law); *United States v. Lee*, 455 U.S. 252, 260 (1982) ("broad public interest in maintaining a sound tax system); *Bob Jones Univ. v. U.S.*, 461 U.S. 574, 603-04 (1983) ("[G]overnment interest [in eradicating racial discrimination] substantially outweighs whatever burden denial of tax benefits places on petitioners' exercise of their religious beliefs."); *Roberts v. U.S. Jaycees*, 468 U.S. 609, 624 (a state's "commitment to eliminating discrimination" is a "goal . . . [that] plainly serves compelling state interests of the highest order"); KRS § 213.116 (mandating "collection, indexing, tabulation, and registration of data relating to marriages, divorces, and annulments" by Cabinet for health and Family Services).

[18] *See, e.g., Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (noting that in analyzing religious exemptions, "courts must take adequate account of the burdens a requested accommodation may impose on non-beneficiaries"); *Texas Monthly, Inc. v. Bullock*, 489 U.S. 1, 18 n.18 (1989) (invalidating sales-tax exemption for religious periodicals in part because exemption would have "burden[ed] non-beneficiaries by increasing their tax bills"); *Thornton v. Caldor*, 472 U.S. 703, 710 (1985) ("The First Amendment gives no one the right to insist that in pursuit of their own interests others must conform their conduct to his own religious necessities.") (internal quotation marks and citation omitted); *Sherbert v. Verner*, 374 U.S. 398, 409 (1963) (exempting claimant from state unemployment benefits policy but noting that "the recognition of the appellant's right to unemployment benefits under the state statute [does not] serve to abridge any other person's religious liberties."); *Barnette*, 319 U.S. at 630 (excusing students from reciting Pledge of Allegiance, but noting that "the refusal of these persons to participate in the ceremony does not interfere with or deny rights of others to do so").

**3. The Administrative Acts Do Not Unlawfully Implicate The Compelled Speech Doctrine.**

Defendant Davis also claims that performing the administrative tasks legally required to issue marriage licenses to same-sex couples — *i.e.*, having her name, as the Rowan County Clerk, appear on the license as the issuing authority — violates her right to free speech, in that it compels her to communicate a message of endorsement of same-sex marriage. [RE #29: Davis Memo., 17-20.] Davis acknowledges (as she must) that the administrative task of affixing her name, as the County Clerk, to marriage licenses "entails government speech to a certain degree." [*Id.* at 19.] However, she nonetheless maintains that doing so also necessarily implicates her private speech and that it communicates a message of her endorsement of same-sex marriage which she finds "objectionable and repulsive." [*Id.* at 20.]

But Davis errs in concluding that the speech necessary to perform the administrative tasks required to issue marriage licenses involve an element of her private speech. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."[19] As in *Garcetti*, the speech at issue here "owes its existence to a public employee's professional responsibilities" in the performance of her job duties. Thus, a restriction upon that speech "does not infringe any liberties the employee might have enjoyed as a private citizen. It

---

[19] *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

simply reflects the exercise of employer control over what the employer itself has commissioned or created."[20]

Moreover, the fact that Davis, as the County Clerk, must affix her name (or permit others to affix her name) to marriage licenses does not implicate the compelled speech doctrine because doing so does not communicate a message of her personal endorsement of the individuals who obtained the license, nor does it compel her "in effect 'to profess any statement of belief or to engage in any ceremony of assent'" to same sex marriage.[21] And, as the Supreme Court has held, "high school students can appreciate the difference between speech a school sponsors and speech the school permits because legally required to do so."[22] This distinction between government messages that are necessary for the delivery of governmental services versus the private speech of individuals who are employed as government officials is equally applicable here, and the residents of Rowan County are perfectly capable of distinguishing between the two. Thus, Davis' claim that the administrative task of affixing her name, as the County Clerk, to marriage licenses is akin to "forcing a student to pledge allegiance, or forcing a

---

[20] *Id.* at 421-22.

[21] *Troster v. Pennsylvania State Dep't of Corr.*, 65 F.3d 1086, 1091 (3d Cir. 1995) (rejecting claim by public employee that uniform requiring American flag patch ement that he display (quoting *West Virginia State Bd. of Education v. Barnette,* 319 U.S. 624, 634 (1943)).

[22] *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 65 (2006) (citing *Board of Ed. of Westside Community Schools (Dist. 66) v. Mergens*, 496 U.S. 226 (1990) (plurality)).

Jehovah's Witness to display the motto 'Live Free or Die,' [] trivializes the freedom protected in *Barnette* and *Wooley*" and should be rejected.[23]

**B. The Public Interest Favors Granting The Requested Injunction.**

Defendant Davis also argues that the public interest weighs in favor of denying the preliminary injunction because: 1) Plaintiffs "are not seriously interested in obtaining" marriage licenses; rather, they seek to "forc[e] Davis to violate her conscience" [RE #29: Davis Memo, 36]; and 2) it would afford the political branches an opportunity to craft a legislative response. [*Id.* at 36-37.] But these arguments, taken alone or together, do not undermine the conclusion that the public interest is served by granting the injunction because "[t]he public has an interest in ensuring that only constitutional laws are enforced."[24]

First, the accusation that Plaintiffs' expressed wishes to marry are disingenuous is unsupported by any relevant evidence. The fact that Plaintiffs choose not to seek their marriage licenses in counties other than where they live is immaterial to the sincerity of their desire to marry. And it is especially troubling (and confusing) that Davis' counsel would seek to cast aspersions on the sincerity of those Plaintiffs who are in committed, same-sex relationships by arguing that did not seek a marriage license until *after* Davis adopted her policy refusing to issue them one. [RE #29: Davis Memo., 36.] Of course, the Supreme Court issued its decision in *Obergefell* on June 26th, and Davis adopted her

---

23 *Id*. at 62.

24 *Bassett v. Snyder*, 951 F.Supp. 2d 939, 971 (E.D. Mich. 2013).

policy the following day on June 27th. For Plaintiffs Miller, Roberts, Spartman, and Skaggs, they were thus unable to legally obtain marriage licenses in Kentucky as same-sex couples prior to *Obergefell*. And then, one day later, they were precluded from doing so in their county of residence because of the challenged policy. Thus, Davis' argument that they are somehow disingenuous because they did not seek marriage licenses until after Davis adopted her policy is, in her own words, "objectionable and repulsive." [RE #29: Davis Memo, at 20.]

## CONCLUSION

For the foregoing reasons, as well as those contained in Plaintiffs' opening brief supporting the preliminary injunction motion, Plaintiffs respectfully move this Court for entry of a preliminary injunction barring Defendant, in her official capacity as Rowan County Clerk, from enforcing the policy of refusing to issue marriage licenses to otherwise qualified applicants.

Respectfully submitted,

s/ William E. Sharp

William E. Sharp
Legal Director
ACLU OF KENTUCKY
315 Guthrie Street, Suite 300
Louisville, KY 40202
(502) 581-9746
sharp@aclu-ky.org

*- and -*

Dan Canon
Laura E. Landenwich
Clay Daniel Walton & Adams PLC
462 South Fourth Street
Suite 101
Louisville, KY 40202
(502) 561-2005
dan@justiceky.com
laura@justiceky.com
ACLU OF KENTUCKY Cooperating Attorneys

*Counsel for Plaintiffs; on behalf of themselves and all others similarly situated*

**CERTIFICATE OF SERVICE**

I certify that on August 6, 2015, I filed this motion and accompanying memorandum with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Jeffrey C. Mando
Claire E. Parsons
Cecil Watkins
jmando@aswdlaw.com
cparsons@aswdlaw.com
cwatkins@prosecutors.ky.gov

*Counsel for Rowan County*

Anthony C. Donahue
Roger Gannam
Jonathan Christman
acdonahue@donahuelawgroup.com
rgannam@lc.org
jchristman@lc.org

*Counsel for Kim Davis*

s/ William E. Sharp
*Counsel for Plaintiffs*