UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

**CIVIL ACTION NO. 15-44-DLB**

**APRIL MILLER, et al.**                                               **PLAINTIFFS**

**vs.**                                               **ORDER**

**KIM DAVIS, both individually**
**and in her official capacity, et al.**                                **DEFENDANTS**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**I.    Introduction**

This matter is before the Court on Defendant Kim Davis' Motion to Stay (Doc. # 45) the Court's Memorandum Opinion and Order of August 12, 2015 (Doc. # 43), in which it enjoined her from enforcing her "no marriage licenses" policy against Plaintiffs. Davis argues that a stay is necessary to protect her constitutional rights while the Sixth Circuit Court of Appeals entertains her interlocutory appeal of the Court's decision (Doc. # 44). Plaintiffs having submitted a Response in Opposition to the Motion (Doc. # 46), and Davis having filed her Reply (Doc. # 51), this matter is now ripe for the Court's review. After considering the record, the controlling law, and the parties' arguments, the Court concludes that a stay pending appeal is not warranted. Defendant Kim Davis' Motion to Stay (Doc. # 45) is therefore **denied**.

However, in recognition of the constitutional issues involved, and realizing that emotions are running high on both sides of the debate, the Court finds it appropriate to

**temporarily stay this Order** pending review of Defendant Davis' Motion to Stay (Doc. # 45) by the Sixth Circuit Court of Appeals.

## II. Analysis

"While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(c); *see also* Fed. R. App. P. 8(a)(1) (providing that "[a] party must ordinarily move first in the district court for . . . an order suspending modifying, restoring, or granting an injunction while an appeal is pending). To determine whether a stay is warranted, district courts must consider the following four factors: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) (noting that "the factors to be considered are the same for both a preliminary injunction and a stay pending appeal").

A movant "need not always establish a high probability of success on the merits" to justify the granting of a stay. *Id.*

> The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay. Simply stated, more of one excuses less of the other. This relationship however, is not without its limits; the movant is always required to demonstrate more than the mere "possibility" of success on the merits. For example, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minium, "serious questions going to the merits."

*Id.* at 153-54 (internal citations omitted).

Courts generally look to three factors in evaluating the harm that will occur absent a stay: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided. *Id.* at 154. A movant must not only demonstrate that the harm alleged is "both certain and immediate, rather than speculative or theoretical," he or she "must provide some evidence that the harm has occurred in the past and is likely to occur again." *Id.*

In its Memorandum Opinion and Order, the Court held that Davis' "no marriage licenses" policy likely infringed upon Plaintiffs' fundamental right to marry, thus warranting injunctive relief. (Doc. # 43 at 28). The Court further found that Davis was unlikely to suffer a violation of her free exercise rights if an injunction was issued. (*Id.*). Although these findings suggest that Davis is unlikely to prevail on appeal, she insists that "[t]his case presents substantial legal matters of first impression for this (or any other) federal appeals court following the *Obergefell* decision from the United States Supreme Court." (Doc. # 45-1 at 10).

Davis cites to *United States v. Coffman* for the proposition that matters of first impression create serious questions going to the merits. *See* Civ. A. No. 5:09-181-KKC, 2010 WL 4683761 (E.D. Ky. Nov. 12, 2010). In that case, the Government moved the court to stay its previous order, which "requir[ed] the Government to remove *lis pendens* notices it placed on property listed in the superseding indictment as substitute assets, pending an appeal to the United States Court of Appeals for the Sixth Circuit." *Id.* at *1. Because the court was not aware of any precedent addressing "whether the Government has authority under Kentucky law to place *lis pendens* notices on a criminal defendant's substitute assets

3

prior to trial," it determined that the Government had more than a mere possibility of success on the merits on appeal. *Id.* at *2.

In this case, by contrast, the Court is not tasked with resolving an unsettled issue of state law. It is being asked to apply clearly established federal law, as enunciated in *Obergefell*. 135 S. Ct. 2584 (2015). Although the U.S. Supreme Court did not consider the more narrow issue before this Court–whether requiring a county clerk to issue marriage licenses to same-sex couples violates her free exercise rights–it was not silent as to the likely impact of its holding on religious freedom.

> The right to marry is fundamental as a matter of history and tradition, but rights come not from ancient sources alone. The rise, too, from a better informed understanding of how constitutional imperatives define a liberty that remains urgent in our own era. Many who deem same-sex marriage to be wrong reach that conclusion based on decent and honorable religious or philosophical premises, and neither they nor their beliefs are disparaged here. But when that sincere, personal opposition becomes enacted law and public policy, the necessary consequence is to put the imprimatur of the State itself on an exclusion that soon demeans or stigmatizes those whose own liberty is then denied. Under the Constitution, same-sex couples seek in marriage the same legal treatment as opposite-sex couples, and it would disparage their choice and diminish their personhood to deny them this right.

> \* \* \* \* \*

> [I]t must be emphasized that religions, and those who adhere to religious doctrines, may continue to advocate with utmost, sincere conviction that, by divine precepts, same-sex marriage should not be condoned. The First Amendment ensures that religious organizations and persons are given proper protection as they seek to teach the principles that are so fulfilling and so central to their lives and faiths, and to their own deep aspirations to continue the family structure they have long revered. The same is true of those who oppose same-sex marriage for other reasons. In turn, those who believe allowing same-sex marriage is proper or indeed essential, whether as a matter of religious conviction or secular belief, may engage those who disagree with their view in an open and searching debate. The Constitution, however, does not permit the State to bar same-sex couples from marriage on the same terms as accorded to couples of the opposite sex.

*Id.* at 2602-03, 2607. These passages strongly suggest that Davis' "religious convictions cannot excuse her from performing the duties that she took an oath to perform as Rowan County Clerk." (Doc. # 43 at 27-28). With this guidance at hand, the Court finds that Davis has not established a likelihood of success on the merits on appeal. This factor weighs against staying the case.

Davis next argues that she is highly likely to suffer irreparable harm absent a stay, which compensates for the low likelihood of her success on appeal. Specifically, Davis contends that she will incur "significant, irrevocable, and irreversible harm if she is forced to authorize and approve a [same-sex marriage] license against her religious conscience." (Doc. # 45-1 at 12). She also points out that "[n]o one, and not even a permanent injunction in her favor, can reverse that action if she is compelled to violate her conscience." (*Id.* at 13).

While Davis is correct in stating that a violation of her free exercise rights would constitute irreparable harm, she has failed to show that she is likely to suffer a violation of her free exercise rights in the first place. *See Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir .1998). As the Court pointed out in its Memorandum Opinion and Order, Davis is only being required to certify that couples meet the legal requirements to marry. She does not have to authorize or approve any unions on moral or religious grounds. Absent a likely constitutional violation, Davis is unlikely to suffer irreparable harm absent a stay.

The Court having found that Davis is unlikely to prevail on appeal or suffer irreparable harm absent a stay, it follows that Plaintiffs are likely to suffer harm if a stay is granted. The Court has already held that Plaintiffs are likely to succeed on the merits of

their claim and enjoined Davis from enforcing her "no marriage licenses" policy against them. If the Court decided to delay enforcement of its Order while Davis pursues an unpromising appeal, it would essentially give Plaintiffs a favorable legal ruling with no teeth and prolong the likely violation of their constitutional rights. Thus, this third factor also weighs against staying the Order.

Finally, the Court notes that it is in the public interest to prevent the violation of a party's constitutional rights. *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F. 3d 1071, 1079 (6th Cir. 1994). Because Davis' "no marriage licenses" policy likely infringes upon Plaintiffs' fundamental right to marry, and because Davis herself is unlikely to suffer a violation of her free exercise rights if compelled to issue marriage licenses, the Court concludes that the public interest is not served by granting a stay.

### III. Conclusion

District courts are directed to balance four factors when analyzing a motion to stay. In this case, all four factors weigh in favor of denying the requested relief. Accordingly, for the reasons set forth herein,

**IT IS ORDERED** that Defendant Kim Davis' Motion to Stay (Doc. # 45) be, and is, hereby **DENIED**.

**IT IS FURTHER ORDERED** that **this Order denying Kim Davis' Motion to Stay** be, and is, hereby **TEMPORARILY STAYED** pending review of Defendant Davis' Motion to Stay (Doc. # 45) by the Sixth Circuit Court of Appeals.

This 17th day of August, 2015.



Signed By:
*David L. Bunning* DB
United States District Judge

G:\DATA\ORDERS\Ashland Civil\2015\15-44 Order re Mtn to Stay.wpd