UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

| | |
|---|---|
| APRIL MILLER, *et al.*, | |
| Plaintiffs, | Case No. 0:15-cv-00044-DLB |
| v. | *Electronically filed* |
| KIM DAVIS, *et al.*, | |
| Defendants. | |

## PLAINTIFFS' MOTION TO HOLD DEFENDANT KIM DAVIS IN CONTEMPT OF COURT

Regrettably, Plaintiffs move the Court to hold Defendant Kim Davis in contempt of court for failing to comply with this Court's August 12, 2015, preliminary injunction ruling. In support of their motion, Plaintiffs state as follows:

### STATEMENT OF THE CASE

On June 27, 2015 — one day after the U.S. Supreme Court issued its decision in *Obergefell* — Rowan County Clerk Kim Davis decided that her office would no longer issue marriage licenses even though Kentucky law specifically imposes upon county clerks the obligation to do so.[1] She adopted the "no marriage license" policy solely because she opposes marriage for same-sex couples due to her personal religious beliefs

---

[1] KRS § 402.080 provides:

> No marriage shall be solemnized without a license therefor. The license shall be issued by the clerk of the county in which the female resides at the time, unless the female is eighteen (18) years of age or over or a widow, and the license is issued on her application in person or by writing signed by her, in which case it may be issued by any county clerk.

1

and thus feels that issuing marriage licenses to them (or allowing her subordinates to do so under her authority) would violate her beliefs. Davis decided to bar *all* qualified applicants from obtaining marriage licenses in Rowan County rather than "discriminate" only against same-sex couples. Following Davis' adoption of the "no marriage license" policy, Plaintiffs — two same-sex and two opposite-sex couples who reside in Rowan County, Kentucky, and who intend to marry — were denied marriage licenses by the Rowan County Clerk's office pursuant to that policy even though Plaintiffs are otherwise legally entitled to marry.

**Proceedings Below**

Plaintiffs, upon being denied marriage licenses in their county of residence, filed a putative class-action suit challenging the "no marriage license" policy under the First and Fourteenth Amendments. Plaintiffs asserted official-capacity claims against Davis seeking preliminary and permanent injunctive relief barring future enforcement of the challenged policy.

After an evidentiary hearing and full briefing by the parties, this Court entered a preliminary injunction on August 12, 2015, barring Davis, in her official capacity, from enforcing the "no marriage license" policy against Plaintiffs. [RE #43.] In doing so, the court found that the policy directly and significantly interferes with the right to marry by preventing Rowan County residents, including those for whom travel is difficult or impractical, from obtaining marriage licenses in their home county. [*Id*. at 11-12.] The Court also noted that a contrary ruling could lead other clerks across the state to adopt similar policies, thus amplifying the burden on marriage — a result made foreseeable by the fact that "57 of the state's 120 elected county clerks have asked Governor Beshear to

call a special session . . . to address religious concerns related to same-sex marriage licenses." [*Id*. at 12.] The district court ultimately held that Davis' "no marriage license" policy should be subjected to heightened review, concluding:

> It does not seem unreasonable for Plaintiffs, as Rowan County voters, to expect their elected official to perform her statutorily assigned duties. And yet, that is precisely what Davis is refusing to do. Much like the statues at issue in *Loving* [*v. Virginia*, 388 U.S. 1 (1968)] and *Zablocki* [*v. Redhail*, 434 U.S. 374 (1978)], Davis' "no marriage licenses" policy significantly discourages many Rowan County residents from exercising their right to marry and effectively disqualifies others from doing so.

[*Id*. at 14.]

Applying heightened review, the district court concluded not only that the "no marriage license" policy failed to serve a compelling governmental interest, but that it actually undermined the state's countervailing (and compelling) interests in preventing Establishment Clause violations and in upholding the rule of law. [*Id*. at 15.] Thus, the Court held that Plaintiffs were likely to succeed on the merits of their claims and would suffer irreparable harm absent the injunction. [*Id*. at 15-16.]

This Court also examined, and rejected, each of the purported harms Davis alleged would result if an injunction were granted. Specifically, the court found it unlikely that Davis would prevail on her free exercise claims because the claimed burden on her religious belief was caused by "Governor Beshear's post-*Obergefell* directive" requiring county clerks to issue marriage licenses to same-sex couples — a neutral requirement of general applicability that did not target religious belief. [*Id*. at 18; 21.] The Court also rejected Davis' free speech claim, reasoning that the "compelled speech" to which she objects — having to lend her "imprimatur and authority" to same-sex marriages — is likely government, as opposed to personal, speech and therefore not

3

subject to First Amendment protection. [*Id*. at 21; 22.] But the district court further found that even if Davis' official-capacity act of issuing marriage licenses involved an element of personal speech, Davis' claim would likely fail because the speech "is a product of her official duties" as County Clerk, not speech as a citizen on a matter of public concern. [*Id*. at 23; 24.]

Likewise, this Court rejected as unlikely to succeed Davis' arguments under the Religious Test Clause and Kentucky's Religious Freedom Restoration Act. [*Id*. at 25-26.] As to the former, the administrative tasks to which Davis objected simply did not rise to the level of a religious test oath: "The State is not requiring Davis to express a particular religious belief as a condition of public employment, nor is it forcing her to surrender her free exercise rights in order to perform her duties." [*Id*. at 26.] And as to the latter, the Court found it unlikely that Davis would satisfy the threshold requirement for invoking heightened scrutiny under Kentucky's RFRA — that she suffered a substantial burden upon her religious belief. This Court found the burden on Davis' religious beliefs "more slight" than substantial, in that the Governor's directive merely asked Davis "to signify that couples meet the legal requirements to marry"; did not restrict Davis' ability to "engag[e] in a variety of religious activities"; and did not compel her to condone, approve, or otherwise endorse same-sex marriage. [*Id*. at 27.]

Following entry of this Court's preliminary injunction ruling, Davis timely filed a notice of appeal, and she moved the Court to stay its ruling pending appeal. Though this Court denied Davis' stay motion, it stayed its denial of the motion pending review by the

4

Sixth Circuit. [RE #52.][2] Davis filed a request to stay the preliminary injunction with the Sixth Circuit Court of Appeals, but that request, too, was denied after full briefing by the parties. [*Miller, et al. v. Davis*, No. 15-5880 (6th Cir. Aug. 26, 2015).]

In rejecting Davis' stay request, the unanimous Sixth Circuit panel concluded that "it cannot be defensibly argued that the holder of the Rowan County Clerk's office, apart from who personally occupies that office, may decline to act in conformity with the United States Constitution as interpreted by a dispositive holding of the United States Supreme Court." The panel further concluded that "[t]here is thus little or no likelihood that [Davis] in her official capacity will prevail on appeal." [*Id*.]

Undeterred, Davis then filed an emergency application for a stay with the United States Supreme Court. But the Court, in a one line order, denied that request without asking for a response and without any apparent dissent. [*Davis v. Miller, et al.*, No. 15A250 (Aug. 31, 2015).

**Facts**

Following the U.S. Supreme Court's denial of Davis' emergency application for a stay of the preliminary injunction, Plaintiffs Miller and Roberts went to the Rowan County Clerk's office on September 1, 2015, for the purpose of obtaining their marriage license. Unfortunately, they were again denied by a deputy clerk who asserted that no marriage licenses would be issued "pending appeal" in this case. Despite Plaintiffs' attempts to point out that Davis' stay requests had been denied, the deputy clerk reiterated the refusal. Plaintiffs' additional request to speak with Kim Davis was denied,

---

[2] On August 19th, the Court amended its earlier ruling, clarifying that the temporary stay would expire on August 31st absent a contrary ruling from the Court of Appeals. [RE #55.]

5

and Plaintiffs Miller and Roberts left the Clerk's office. [See attached Exh. 1: Declaration of April Miller.]

### ARGUMENT

To prevail on a motion for contempt, a party must "produce clear and convincing evidence that shows that '[the opposing party] violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Electrical Workers Pension Trust Fund of Local Union # 58 v. Gary's Electric Service Co.,* 340 F.3d 373, 379 (6th Cir.2003) (quoting *N.L.R.B. v.. Cincinnati Bronze, Inc.,* 829 F.2d 585, 591 (6th Cir.1987). If the moving party establishes a prima facie case, the burden shifts to the opposing party to prove inability to comply with the court's order. *Electrical Workers,* 340 F.3d at 379. The opposing party must "show categorically and in detail why he or she is unable to comply with the court's order." *Rolex Watch U.S.A. v. Crowley,* 74 F.3d 716, 720 (6th Cir.1996). Unless the opposing party demonstrates that he took "all reasonable steps within [his] power to comply with the court's order, the Court should hold him in contempt." *Electrical Workers,* 340 F.3d at 379, quoting *Peppers v. Barry,* 873 F.2d 967, 969 (6th Cir.1989).

Here, Plaintiffs have established a prima facia case, in that they have shown by sufficient evidence that Defendant Davis, in refusing to grant Plaintiffs Miller and Roberts a marriage license following the U.S. Supreme Court's denial of her most recent (and final) attempt to stay the August 12, 2015, preliminary injunction, has, in fact, violated a definite and specific order of this Court. Because Davis cannot show either that she is unable to comply with the August 12, 2015, order or that she has taken all reasonable steps to comply, this Court is left with no choice but to hold her in contempt.

Plaintiffs do not seek to compel Davis' compliance through incarceration. Since Defendant Davis continues to collect compensation from the Commonwealth for duties she fails to perform, Plaintiffs urge the the Court to impose financial penalties sufficiently serious and increasingly onerous to compel Davis' immediate compliance without further delay.

Respectfully submitted,

s/ William E. Sharp
William E. Sharp
Legal Director
ACLU OF KENTUCKY
315 Guthrie Street, Suite 300
Louisville, KY 40202
(502) 581-9746
sharp@aclu-ky.org

- and -

Dan Canon
Laura E. Landenwich
Joe Dunman
Clay Daniel Walton & Adams PLC
462 South Fourth Street
Suite 101
Louisville, KY 40202
(502) 561-2005
dan@justiceky.com
laura@justiceky.com
joe@justiceky.com
ACLU OF KENTUCKY Cooperating Attorneys

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on September 1, 2015, I filed this motion and accompanying proposed order with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Jeffrey C. Mando
Claire E. Parsons
Cecil Watkins
jmando@aswdlaw.com
cparsons@aswdlaw.com
cwatkins@prosecutors.ky.gov

*Counsel for Rowan County*


Anthony C. Donahue
Roger Gannam
Jonathan Christman
acdonahue@donahuelawgroup.com
rgannam@lc.org
jchristman@lc.org

*Counsel for Kim Davis*

                                                 s/ William E. Sharp
                                                 *Counsel for Plaintiffs*