## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
## ASHLAND DIVISION

| | | |
|---|---|---|
| **APRIL MILLER, ET AL.,** | : | |
| | : | |
| **Plaintiffs,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **0:15-CV-00044-DLB** |
| | : | |
| **KIM DAVIS, ET AL.,** | : | **DISTRICT JUDGE** |
| | : | **DAVID L. BUNNING** |
| **Defendants.** | : | |
| | : | |
| **KIM DAVIS,** | : | |
| | : | |
| **Third-Party Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **STEVEN L. BESHEAR, in his official** | : | |
| **capacity as Governor of Kentucky, and** | : | |
| **WAYNE ONKST, in his official capacity** | : | |
| **as State Librarian and Commissioner,** | : | |
| **Kentucky Department for Libraries and** | : | |
| **Archives,** | : | |
| | : | |
| **Third-Party Defendants.** | : | |
| | : | |

### DEFENDANT/THIRD-PARTY PLAINTIFF KIM DAVIS' MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR INJUNCTION PENDING APPEAL

Roger K. Gannam
Jonathan D. Christman
LIBERTY COUNSEL
P.O. Box 540774
Orlando, Florida 32854
Tel: (800) 671-1776
Fax: (407) 875-0770
rgannam@lc.org
jchristman@lc.org

A.C. Donahue
DONAHUE LAW GROUP, P.S.C.
P.O. Box 659
Somerset, Kentucky 42502
Tel: (606) 677-2741
Fax: (606) 678-2977
ACDonahue@DonahueLawGroup.com

*Attorneys for Defendant/Third-Party Plaintiff Kim Davis*

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... ii

INTRODUCTION ......................................................................................................... 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................. 2

STANDARD OF REVIEW ........................................................................................... 6

ARGUMENT ................................................................................................................. 6

    A.  Davis Has A Strong Likelihood Of Succeeding On The Merits Of Her Claims Against Gov. Beshear And Commr. Onkst ..........................................................................6

        1.  Davis' Religious Beliefs Are Substantially Burdened By Gov. Beshear's SSM Mandate................................................................................................................ 8

        2.  Gov. Beshear's SSM Mandate Cannot Survive Strict Scrutiny Analysis.................. 12

        3.  Gov. Beshear's SSM Mandate Violates Davis' Free Speech Rights And Constitutes An Impermissible Religious Test For Holding Public Office In Kentucky............... 20

    B.  The Remaining Factors Favor Granting An Injunction Pending Appeal ........................ 21

CONCLUSION.............................................................................................................. 24

# TABLE OF AUTHORITIES

## Cases

### *Federal*

*ACLU v. Mercer County, Ky.*,
  432 F.3d 624 (6th Cir. 2005) ................................................15

*Baker v. Adams Cnty.*,
  310 F.3d 927 (6th Cir. 2002) ................................................6

*Borough of Duryea, Pa. v. Guarnieri*,
  131 S.Ct. 2488 (2011) ................................................14

*Burwell v. Hobby Lobby Stores, Inc.*,
  134 S.Ct. 2751 (2014) ................................................ *passim*

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981) ................................................5, 6

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993) ................................................12

*City of Boerne v. Flores*,
  521 U.S. 507 (1997) ................................................8, 12

*Connection Distributing Co. v. Reno*,
  154 F.3d 281 (6th Cir. 1998) ................................................21

*Dayton Area Visually Impaired Persons, Inc. v. Fisher*,
  70 F.3d 1474 (6th Cir. 1995) ................................................23

*Elrod v. Burns*,
  427 U.S. 347 (1976) ................................................6, 21

*Employment Div., Dep't of Human Resources of Oregon v. Smith*,
  494 U.S. 872 (1990) ................................................7

*Garcetti v. Ceballos*,
  547 U.S. 410 (2006) ................................................14

*Gillis v. U.S. Dep't of Health & Human Servs.*,
  759 F.2d 565 (6th Cir. 1985) ................................................5

*Girouard v. United States*,
    328 U.S. 61 (1946)..........................................................................................15, 21

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
    546 U.S. 418 (2006)........................................................................................12, 14

*Haight v. Thompson*,
    763 F.3d 554 (6th Cir. 2014) ....................................................... *passim*

*Hobbie v. Unemployment Appeals Comm'n of Fla.*,
    480 U.S. 136 (1987)...............................................................................................15

*Holt v. Hobbs*,
    135 S.Ct. 853 (2015).....................................................................................9, 11, 14

*Kikumura v. Hurley*,
    242 F.3d 950 (10th Cir. 2001) ...............................................................................21

*Lane v. Franks*,
    134 S.Ct. 2369 (2014) ...........................................................................................14

*McNeilly v. Land*,
    684 F.3d 611 (6th Cir. 2012) ................................................................................14

*Newsom v. Norris*,
    888 F.2d 371 (6th Cir. 1989) ................................................................................21

*O Centro Espirita Beneficente Uniao do Vegetal v. Ashcroft*,
    389 F.3d 973 (10th Cir. 2004) ...............................................................................40

*Obergefell v. Hodges*,
    135 S.Ct. 2584 (2015).................................................................................. *passim*

*Overstreet v. Lexington-Fayette Urban Cnty. Gov't*,
    305 F.3d 566 (6th Cir. 2002) ...................................................................................6

*Prater v. City of Burnside, Ky.*,
    289 F.3d 417 (6th Cir. 2002) ...................................................................................7

*Riley v. Nat'l Federation of Blind of N.C., Inc.*,
    487 U.S. 781 (1988)...............................................................................................20

*Sherbert v. Verner*,
    374 U.S. 398 (1963).................................................................................................9

*Slater v. Douglas County*,
    743 F. Supp. 2d 1188 (D. Or. 2010) ....................................................................14

*Stormans, Inc. v. Selecky*,
    844 F. Supp. 2d 1172 (W.D. Wash. 2012) ........................................................................15

*Thomas v. Collins*,
    323 U.S. 516 (1945) ..............................................................................................................13

*Thomas v. Review Bd. of Indiana Employment Security Div.*,
    450 U.S. 707 (1981) .......................................................................................................10, 11

*Torcaso v. Watkins*,
    367 U.S. 488 (1961) ..............................................................................................................21

*United States v. Playboy Entm't Group, Inc.*,
    529 U.S. 803 (2000) ..............................................................................................................12

*Wooley v. Maynard*,
    430 U.S. 705 (1976) .......................................................................................................20, 21

## **Constitutional Provisions**

### *State*

KY. CONST. § 1 ..................................................................................................................6, 20

KY. CONST. § 5 .......................................................................................................................6

KY. CONST. § 8 .....................................................................................................................20

### *Federal*

U.S. CONST. amend. I ...................................................................................................... *passim*

U.S. CONST. art. VI ..............................................................................................................21

## **Statutes**

### *State*

KY. REV. STAT. § 150.195 ....................................................................................................17

KY. REV. STAT. § 402.080 ....................................................................................................22

KY. REV. STAT. § 402.100 .........................................................................................9, 11, 20

KY. REV. STAT. § 402.240 ....................................................................................................18

KY. REV. STAT. § 446.010 ......................................................................................................7

KY. REV. STAT. § 446.030 ............................................................................................... 7

KY. REV. STAT. § 446.090 ............................................................................................... 7

KY. REV. STAT. § 446.140 ............................................................................................... 7

KY. REV. STAT. § 446.350 ....................................................................................... *passim*

N.C. GEN. STAT. § 51-5.5 .............................................................................................. 17

### *Federal*

8 U.S.C. § 1182(g) ......................................................................................................... 15

18 U.S.C. § 3597 ........................................................................................................... 15

28 U.S.C. § 1292(a) ..................................................................................................... 5, 6

42 U.S.C. § 2000bb(a)(5) .............................................................................................. 14

42 U.S.C. § 2000bb-1 ............................................................................................ 7, 12, 14

Defendant/Third-Party Plaintiff Kim Davis ("Davis"), by and through her undersigned counsel, respectfully submits this Memorandum of Law in Support of her Motion for Injunction Pending Appeal of this Court's August 25, 2015 order (D.E. 58).

## I.    **INTRODUCTION**

A same-sex "marriage" ("SSM") license issued on Davis' authorization and bearing her name and imprimatur substantially and irreparably burdens Davis' conscience and deeply-held, sincere religious beliefs, which dictate to Davis that such unions are not and cannot be "marriage." The specific prescribed marriage license form at issue uses the word "marriage" at six different places, requires Davis' name to be on the license at two different places (at least) for any license issued in Rowan County, Kentucky, and also requires her to authorize the "join[ing] together in the state of matrimony" a proposed union that she cannot approve. That searing act of personal validation would forever echo in her conscience—and, if it happened, there is no absolution or correction that any earthly court can provide to rectify it. But it is an act that can be easily avoided through the preliminary injunctive relief that Davis has sought against the Kentucky Governor, who issued the SSM Mandate directing all Kentucky County Clerks to authorize SSM licenses without exception, and the KDLA Commissioner, who oversees the state agency responsible for designing the prescribed marriage form.

An injunction pending appeal will halt the irreversible implications on Davis' conscience while the Sixth Court reviews Davis' appeal of her individual claims and the multiple less restrictive alternatives available that do not substantially burden Davis, and her religious beliefs about marriage that can be measured in millennia. Many of the same options proposed by Davis in her request for preliminary injunctive relief are being considered and promoted by leading Kentucky legislators, and the gubernatorial candidates, from both parties as statutory solutions to

1

the ongoing debate between SSM and religious liberty in Kentucky following the Supreme Court's decision in *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015), and the Kentucky Governor's immediate SSM Mandate in response thereto.

Irrespective of what "five lawyers" opined in *Obergefell v. Hodges*, 135 S.Ct. 2584, 2612, 2624 (2015) (Roberts, C.J., dissenting) about States' recognition of SSM—that decision neither overwrote the First Amendment or other critical religious liberty protections for persons nor compelled States to accomplish recognition of SSM by invading and trampling upon the conscience of individual county clerks. Coercing an individual county clerk (Davis) to authorize and personally approve SSM in violation of her fundamental religious liberty and speech rights, especially when that individual took office when Kentucky marriage law perfectly aligned with her deep religious convictions, is wrong. That is especially true here, where there are numerous less restrictive alternatives available by which individuals can obtain SSM licenses, without eradicating Davis from public service or rendering her conscience null and void. Religious liberty is neither absolutely surrendered at the entry door of public service nor waived upon taking an oath of office, and public servants maintain enumerated religious rights in the United States and Kentucky Constitutions and the Kentucky Religious Freedom Restoration Act. Granting an injunction pending appeal of this Court's August 25, 2015 order will ensure that Davis' individual rights are not forever irreversibly and substantially burdened.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On July 2, 2015, less than one week after the Supreme Court decided *Obergefell v. Hodges* and Gov. Beshear issued his directive ordering all county clerks to personally authorize SSM licenses (the "SSM Mandate"), Plaintiffs filed this lawsuit demanding that a particular person (Davis) in a particular county (Rowan County) authorize and approve their Kentucky marriage

licenses, despite widespread availability of licenses and Davis' undisputed religious conscience objection to SSM. *See* D.E. 1. Plaintiffs also filed a motion for preliminary injunction to bar Davis from "refusing to issue marriage licenses to any future marriage license applications submitted by the Named Plaintiffs." *See* D.E. 2-2. Evidentiary hearings on this motion were held in Ashland, Kentucky (60 miles from the Rowan County clerk's office), and in Covington, Kentucky (100 miles away), which were attended by multiple named Plaintiffs. *See* D.E. 21, 26.[1]

On August 4, 2015, and more than one week before this Court entered its injunction order against Davis, Davis filed a verified third-party Complaint against Gov. Beshear, the issuer of the SSM Mandate, and Commr. Onkst, who oversees the KDLA, the state agency responsible for designing Kentucky marriage license forms. *See* D.E. 34.[2] Three days later, and still before this Court entered its injunction order, Davis filed a motion for preliminary injunction to enjoin enforcement of Gov. Beshear's SSM Mandate and obtain an exemption "from having to authorize the issuance of Kentucky marriage licenses." *See* D.E. 39-7. Despite Davis' request, no preliminary injunction hearing was scheduled on that motion.[3]

Importantly, the grounds on which Davis sought preliminary injunctive relief against Gov. Beshear and Commr. Onkst are necessarily intertwined with the grounds on which she opposed Plaintiffs' request for preliminary injunction against her. *See* D.E. 29, 39-1. Notwithstanding, this

---

[1]     Davis was not served with Plaintiffs' Complaint until July 14, 2015, a full day after this Court held its first evidentiary hearing on Plaintiffs' motion for preliminary injunction. *See* D.E. 19. Davis' counsel objected and moved to terminate the hearing. Over objection, this Court permitted the injunction hearing to proceed without Davis having been served—what this Court deemed "road blocks to getting to the merits"—and also denied a request to certify that ruling for immediate interlocutory appeal. *See* D.E. 21, Hr'g Tr. (7/13/15), at 17:7-18:18, 20:2-7.

[2]     On August 4, 2015, in accordance with Federal Rule of Civil Procedure 12, Davis filed a motion to dismiss Plaintiffs' Complaint in its entirety. *See* D.E. 32. Among other things, Davis moved to dismiss the official capacity claims against her as duplicative of the Plaintiffs' claims against Defendant Rowan County.

[3]     In comparison, only four days after Plaintiffs filed their motion for preliminary injunction this Court scheduled a preliminary injunction hearing on Plaintiffs' motion, to occur only eleven (11) days after Plaintiffs filed their Complaint and, as noted above, before Davis was even served. *See* D.E. 5.

Court entered its August 12, 2015 injunction order while simultaneously acknowledging the "further develop[ment]" of Davis' religious conscience exemption request against Gov. Beshear. *See* D.E. 43 at 19, n. 9. Rather than considering Davis' and Plaintiffs' requests together and allowing Davis to develop a further evidentiary record on her own request for individual exemption and accommodation from Gov. Beshear's SSM Mandate, this Court granted Plaintiffs their preliminary injunctive relief against Davis.

On August 12, 2015, this Court granted Plaintiffs' motion for preliminary injunction and enjoined Davis "from applying her 'no marriage licenses' policy to future marriage license requests submitted by Plaintiffs." *See* D.E. 43 at 28 (hereinafter, the "Injunction"). This Court stated that "this civil action presents a conflict between two individual liberties held sacrosanct in American jurisprudence," thereby conceding that Davis' religious rights are, in fact, being both "threaten[ed]" and "infringe[d]" by Plaintiffs' demands for her approval of their proposed unions, and by Gov. Beshear's SSM Mandate to provide exactly that or resign. *Id.* at 2. Notwithstanding, without giving full consideration to Davis' own motion for injunctive relief and further development of an evidentiary record, this Court granted Plaintiffs' motion for preliminary injunction. This Court also rejected Davis' defensive claims against Plaintiffs under the Kentucky Religious Freedom Restoration Act ("Kentucky RFRA"), KY. REV. STAT. § 446.350, the Free Exercise Clause, the Free Speech Clause, and the Religious Test Clause of the United States Constitution, and similar Kentucky Constitution provisions. *See* D.E. 43 at 16-28. In rejecting Davis' religious liberty, conscience, and speech claims, this Court concluded that the Kentucky marriage license form "does not require the county clerk to condone or endorse same-sex marriage" and instead merely "asks the county clerk to certify that the information provided is

accurate and that the couple is qualified to marry under Kentucky law."[4] According to this Court, the burden on Davis' religious freedom is "more slight," and she "remains free to practice her Apostolic Christian beliefs" since she "may continue to attend church twice a week, participate in Bible Study and minister to female inmates at the Rowan County jail," and "believe that marriage is a union between one man and one woman." *Id.* at 27. But, according to this Court, "her religious convictions cannot excuse her" from authorizing SSM licenses. *See id.* at 27-28. Facing an order enjoining her to authorize Kentucky marriage licenses in derogation of her religious conscience, Davis filed an immediate notice of appeal of this August 12, 2015 injunction to the Sixth Circuit pursuant to 28 U.S.C. § 1292(a). *See* D.E. 44.[5]

On August 25, 2015, this Court entered an order, on its own motion, staying any briefing or consideration of Davis' motion to dismiss and motion for preliminary injunction against Gov. Beshear and Commr. Onkst "pending review of the Court's Memorandum Opinion and Order (Doc. # 43) by the United States Court of Appeals for the Sixth Circuit." D.E. 58. By staying consideration on Davis' motion for preliminary injunction pending resolution of her Sixth Circuit appeal of this Court's August 12, 2015 injunction order (which will not be fully briefed until late November on its current schedule, and likely not argued and decided until sometime in 2016), this Court effectively denied her request for preliminary injunction. That "practical denial" of immediate injunctive relief is immediately appealable under 28 U.S.C. § 1292(a). *Gillis v. U.S. Dep't of Health & Human Servs.*, 759 F.2d 565, 567 (6th Cir. 1985); *Carson v. Am. Brands, Inc.*,

---

[4]    *See* D.E. 43 at 22; *see also id.* at 25 ("[T]he act of issuing a marriage license to a same-sex couple merely signifies that the couple has met the *legal requirements* to marry. It is not a sign of moral or religious approval.") (emphasis in original); *id.* at 27 ("Davis is simply being asked to signify that couples meet the legal requirements to marry. The State is not asking her to condone same-sex unions on moral or religious grounds, nor is it restricting her from engaging in a variety of religious activities.").

[5]    That appeal has been docketed in the Sixth Circuit as *April Miller, et al. v. Kim Davis*, Case No. 15-5880 (6th Cir.).

450 U.S. 79, 84 (1981). On August 31, 2015, Davis filed a notice of appeal of this Court's August 25, 2015 order to the Sixth Circuit pursuant to 28 U.S.C. § 1292(a), and applicable precedent. *See* D.E. 66.[6] Davis now moves in this Court for an injunction pending her appeal.

## III.   STANDARD OF REVIEW

In granting an injunction pending appeal, a Sixth Circuit court "engages in the same analysis that it does in reviewing the grant or denial of a motion for a preliminary injunction." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 572 (6th Cir. 2002). The relevant factors are: "(1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction." *Id.* at 573; *see also Baker v. Adams Cnty.*, 310 F.3d 927, 928 (6th Cir. 2002). The denial of an injunction can "cause irreparable harm if the claim is based upon the violation of the plaintiff's constitutional rights." *Overstreet*, 305 F.3d at 578; *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

## IV.   ARGUMENT

### A.   Davis Has A Strong Likelihood Of Succeeding On The Merits Of Her Claims Against Gov. Beshear And Commr. Onkst.

Davis' inability to personally authorize and approve SSM licenses bearing her imprimatur against her religious conscience is protected by the United States and Kentucky Constitutions, along with the Kentucky RFRA. *See* U.S. CONST., amend I; KY. CONST., §§ 1, 5; KY. REV. STAT. § 446.350. The Kentucky RFRA, which was enacted by an overwhelming majority in 2013 over

---

[6]        That appeal has been docketed in the Sixth Circuit as *April Miller, et al. v. Kim Davis, et al.*, Case No. 15-5961 (6th Cir.).

Gov. Beshear's veto[7], protects a person's[8] "right to act *or refuse to act* in a manner motivated by a sincerely held religious belief," and this religious freedom right "may not be substantially burdened unless the government proves by clear and convincing evidence that it has a compelling governmental interest in infringing the specific act or refusal to act and has used the least restrictive means to further that interest." KY. REV. STAT. § 446.350 (emphasis added); *see also Prater v. City of Burnside, Ky.*, 289 F.3d 417, 427 (6th Cir. 2002) (Free Exercise Clause "protects not only the right to hold a particular religious belief, but also the right to engage in conduct motivated by that belief.").[9] As such, the Kentucky RFRA protects not only a person's beliefs but also a person's actions (or non-actions) based thereon, and subjugates to the strictest scrutiny any governmental action (be it legislative or regulatory scheme, or executive action) infringing religiously-motivated actions (or non-actions).[10]

The Kentucky RFRA is similar to (but goes even further in protecting religious liberties than) the federal Religious Freedom Restoration Act ("Federal RFRA"), 42 U.S.C. § 2000bb-1(a) & (b), which was enacted to "provide very broad protection for religious liberty," *Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751, 2760 (2014), and imposes "the most demanding test known to

---

[7]     The Kentucky Legislature overrode Gov. Beshear's veto by votes of 79-15 in the state House and 32-6 in the state Senate.

[8]     The Kentucky RFRA protects the religious freedom of all "persons" in Kentucky. While "person" is not defined in the Kentucky RFRA, it is defined in Kentucky's general definitions statute to include "individuals," and **publicly elected officials are not excluded**. *See* KY. REV. STAT. § 446.010(33).

[9]     Because Davis' free exercise claim is combined with a free speech claim, her free exercise claim is also subject to strict scrutiny. *See Employment Div., Dep't of Human Resources of Oregon v. Smith*, 494 U.S. 872, 881 (1990).

[10]     The Kentucky RFRA is housed under Chapter 446 of Kentucky's statutes, which is entitled "Construction of Statutes," and includes such other generally applicable provisions as "Definitions for Statutes Generally," "Computation of Time," "Severability," "Titles, Headings, and Notes," KY. REV. STAT. §§ 446.010, 446.030, 446.090, 446.140. Even more specifically, the Kentucky RFRA is included under a section of Chapter 446 reserved for "Rules of Codification." As such, Kentucky marriage law cannot be interpreted without also considering and applying the Kentucky RFRA. And, as recognized by Plaintiffs in the underlying action, Davis' purported obligations with respect to issuing marriage licenses are matters of Kentucky law. *See, e.g.*, D.E. 1, Compl., at ¶¶ 31-33; D.E. 2-1 at 6; D.E. 36, at 4-5, 11; D.E. 46 at 2; D.E. 67 at 1.

constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997). Thus, Gov. Beshear's SSM Mandate—the state action here—must survive strict scrutiny.

### 1.    Davis' Religious Beliefs Are Substantially Burdened By Gov. Beshear's SSM Mandate.

Supreme Court and Sixth Circuit precedent, along with post-*Obergefell* pending legislation in Kentucky and the undisputed evidentiary record on this appeal, support the conclusion that Davis' religious beliefs are substantially burdened by Gov. Beshear's SSM Mandate forcing her to authorize SSM licenses. As indicated above, the Kentucky RFRA protects a person's "right to act *or refuse to act* in a manner motivated by a sincerely held religious belief." KY. REV. STAT. § 446.350. As such, the Kentucky RFRA is not solely directed at what a person may believe—but also how those beliefs translate to actions (or non-actions). Davis indisputably holds sincere religious beliefs about marriage and her inability to issue SSM licenses is motivated by those convictions. *See* VTC, ¶¶ 17-18. In her belief, marriage is the sacred union of a man and a woman, only. VTC, ¶ 17. The prescribed marriage license form under Gov. Beshear's SSM Mandate provides no opportunity for the religious objector (Davis) not to participate in endorsement and approval of SSM. Davis provides the "authorization" or permission for the couple to marry, and is also required to put her name and imprimatur no less than two times on each and every marriage license she issues. *See* VTC, ¶ 11, and Ex. A. But Davis cannot authorize a union of two persons which, in her sincerely-held belief, is not marriage. *See* VTC, ¶¶ 17-18.

Gov. Beshear has flatly rejected Davis' request for religious exemption. In his view, Davis must either comply with his SSM Mandate, or resign from office. VTC, ¶¶ 28, 36. On Gov. Beshear's own initiative, the KDLA prepared a revised mandatory marriage form in response to his SSM Mandate, which was then circulated to county clerks for them to begin using immediately, without exception. *See* VTC, ¶¶ 25-26, and Ex. C. This form provided no opportunity for county

clerks (or deputy clerks for that matter) with religious objections to SSM **not** to participate in endorsement and approval of SSM. On this new form, as constructed by Gov. Beshear and Commr. Onkst, the "authorization" or permission to marry (even on licenses she does not personally sign) still unmistakably comes from Davis herself. *See* VTC, ¶ 12, and Ex. C. As in the old forms, the new KDLA-approved form requires Davis to put her imprimatur no less than two times on each and every marriage license issued in her county. *See* VTC, ¶¶ 11, 26, and Ex. C.[11] However, as indicated above, to authorize a SSM license bearing her imprimatur sears her conscience because she would be endorsing the proposed union and calling something "marriage" that is not marriage according to her beliefs. *See* VTC, ¶¶ 17-18.

Thus, Gov. Beshear is imposing a direct, severe, and substantial pressure on Davis by the SSM Mandate, forcing Davis "to choose between following the precepts of her religion and forfeiting benefits [her job], on the one hand, and abandoning one of the precepts of her religion in order to accept work [keep her job], on the other hand." *Sherbert v. Verner*, 374 U.S. 398, 404 (1963); *see also Holt v. Hobbs*, 135 S.Ct. 853, 862 (2015) (government places a "substantial burden" on religious exercise if policy requires person "to 'engage in conduct that seriously violates [her] religious beliefs" or "contravene that policy and . . . face serious disciplinary action"); *Haight v. Thompson*, 763 F.3d 554, 565 (6th Cir. 2014) (government places a "substantial burden" on religious belief when it "'place[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs,' or 'effectively bar[s]' his sincere faith-based conduct"). This Hobson's choice places undue pressure on Davis to choose between her job and her religion.

---

[11]    By legislative enactment predating *Obergefell*, this form included: (1) an "**authorization statement of the county clerk issuing the license**"; (2) "the **signature of the county clerk** or deputy clerk issuing the license"; (3) "**[a] signed statement by the county clerk** or a deputy county clerk of the county in which the marriage license was issued"; and (4) the "**the name of the county clerk under whose authority the license was issued**." KY. REV. STAT. § 402.100(1)-(3) (emphasis added). As county clerk, Davis is provided this form by the KDLA, and she has no local discretion in the composition and requirements of that prescribed form. *See* VTC, ¶¶ 7, 10.

In addition to his unmitigated "approve or resign" rule, Gov. Beshear has ominously declared that "the courts" will deal with county clerks who do not comply with his SSM Mandate. *See* VTC, ¶ 35. Moreover, immediately after issuance of the SSM Mandate, Atty. Gen. Conway even threatened possible legal action against county clerks who did not comply with the SSM Mandate, even seemingly inviting this very lawsuit against Davis: "Any clerk that refuses to issue marriage licenses is opening himself or herself to potential legal liability and sanctions. Any couple or person denied a license may seek remedy in federal court, but should consult with a private attorney about their particular situation."[12] Loss of job. Civil liability. Sanctions. Private lawsuits in federal court. Contempt motions. Davis is being threatened with all of the above by choosing to adhere to her sincere religious beliefs. Certainly, religious liberty protections, including the Kentucky RFRA, are designed to protect a person from such substantial burdens upon their religious freedom.[13]

It is not for this Court to question the reasonableness or scriptural accuracy of Davis' beliefs about marriage. *Hobby Lobby*, 134 S.Ct. at 2779 (citing *Thomas v. Review Bd. of Indiana Employment Security Div.*, 450 U.S. 707, 716 (1981)). Judges "are not arbiters of scriptural interpretation," and they are not tasked with determining who "more correctly" perceives their faith's commands. *Thomas*, 450 U.S. at 716. Moreover, it is not for this Court to determine whether

---

[12]     This statement attributed to Atty. Gen Conway was contemporaneously reported by multiple news sources. *See*, *e.g.*, Several county clerks defy same-sex marriage ruling, refuse to issue marriage licenses, Lexington Herald-Leader, June 29, 2015, *available at* http://www.kentucky.com/2015/06/29/3923157_some-kentucky-county-clerks-refusing html?rh=1 (last accessed Sept. 2, 2015); Steve Beshear and Jack Conway: On refusing marriage licenses, WTVQ.com, June 30, 2015, *available at* http://www.wtvq.com/story/d/story/steve-beshear-and-jack-conway-on-refusing-marriage/39801/_4cM2DBkQ0aBoIGpMeZz_A (last accessed Sept. 2, 2015).

[13]     A proposed Kentucky legislative act on what constitutes a substantial burden in the marriage license context post-*Obergefell* agrees with Davis. This bill would expressly protect clerks like Davis from having to issue SSM licenses, amending the Kentucky RFRA to state expressly that "[i]ssuing or recording" a SSM license can be considered a "substantial burden for which there is no compelling government interest, and that person shall additionally be immune from any civil or criminal liability for declining to solemnize such a marriage." *See* An Act Relating to Marriage, Ky. House Bill 101 (2016 Reg. Sess.).

Davis' religious beliefs are "mistaken" or "insubstantial." *Hobby Lobby*, 134 S.Ct. at 2779; *see also Haight*, 763 F.3d at 566 (First Amendment does not permit "government or courts to inquire into the centrality to a faith of certain religious practices—dignifying some, disapproving others.").[14] Instead, the "'narrow function' . . . in this context is to determine' whether the line drawn reflects 'an honest conviction.'" *Hobby Lobby*, 134 S.Ct. at 2779 (quoting *Thomas*, 450 U.S. at 716). There is no dispute that the requisite "honest conviction" exists here, and she is facing severe consequences of adhering to that conviction.

Importantly, Davis is not claiming a substantial burden on her religious freedom if *someone else* authorizes and approves a SSM license *devoid of her name*. For example, Davis is not claiming that her religious freedom is substantially burdened if she must complete an opt-out form to be exempted from issuing SSM licenses. Davis is also not claiming that a SSM license authorized by the Rowan County Judge/Executive and devoid of her name and authority substantially burdens her religious freedom. Davis is also not claiming that her religious freedom is substantially burdened if the license were issued by someone else in Rowan County (*e.g.*, a deputy clerk), so long as that license is not issued under her name or on her authority. But as it stands now, and through no fault of her own, no marriage license can be issued from the Rowan County clerk's office without Davis' authorization and without her name and imprimatur on the license. Davis is also not claiming that the mere administrative act of recording substantially burdens her religious freedom. But county clerks are not mere scriveners for a marriage. Instead, county clerks actually authorize the marriage license. *See* KY. REV. STAT. § 402.100(1)-(3).

---

[14]     Moreover, the substantial burden analysis under Supreme Court and Sixth Circuit precedent does not invite consideration of what other religious-based actions a claimant may still undertake. *See Holt*, 135 S.Ct. at 862 (finding that "substantial burden" inquiry under the analogous RLUIPA test "asks whether the government has substantially burdened exercise," not whether the claimant "is able to engage in other forms of religious exercise"); *Haight*, 763 F.3d at 566.

2.      **Gov. Beshear's SSM Mandate Cannot Survive Strict Scrutiny Analysis.**

To overcome this substantial burden on Davis' religious freedom, Gov. Beshear must demonstrate by clear and convincing evidence that Kentucky has (1) a compelling governmental interest in infringing Davis' religious conscience through the SSM Mandate and (2) it has used the least restrictive means to accomplish that interest. Under this strict scrutiny analysis, to be a compelling governmental interest, the SSM Mandate must further an interest "of the highest order," *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993), and, "[i]f a less restrictive means is available for the Government to achieve its goals, the Government **must** use it." *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 815 (2000) (emphasis added). Indeed, as noted above, RFRA statutes impose "the most demanding test known to constitutional law." *Boerne*, 521 U.S. at 534.

There is no compelling governmental interest in forcing Davis to violate her religious freedom. This inquiry "requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law '**to the person**'—the particular claimant whose sincere exercise of religions is being substantially burdened," *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430-31 (2006) (emphasis added) (quoting 42 U.S.C. § 2000bb-1(b)), and further requires courts "to 'loo[k] beyond broadly formulated interests' and to 'scrutiniz[e] the asserted harm of **granting specific exemptions to particular religious claimants**'—in other words, to look to the marginal interest in enforcing" the SSM Mandate in this case. *See Hobby Lobby*, 134 S.Ct. at 2779 (emphasis added) (quoting *O Centro*, 546 U.S. at 431). Here, to overcome the substantial burden on Davis' religious freedom, Gov. Beshear and Commr. Onkst must demonstrate a compelling government interest in infringing upon Davis' inability to authorize SSM licenses that is "beyond broadly formulated interests," and shows why granting a "specific exemption" to this "particular religious claimant," *O Centro*, 546 U.S. at 431,

12

will commit a "grave[] abuse[], endangering paramount interests." *Thomas v. Collins*, 323 U.S. 516, 530 (1945). Gov. Beshear cannot show that granting a specific exemption to Davis will endanger the Commonwealth of Kentucky, let alone Kentucky's marriage licensing scheme.

*Obergefell* does not require Davis' individual religious freedom to be violated. Immediately following *Obergefell*, Gov. Beshear, on his own initiative, decreed his SSM Mandate, which was neither expressly nor impliedly compelled by the Supreme Court's decision in *Obergefell*. The SSM Mandate leaves no room for individual county clerks' religious freedoms. But **in *Obergefell*, the Court unanimously agreed that First Amendment protections remain despite same-sex "marriage."** Specifically, dissenting justices in *Obergefell* recognized that "[m]any good and decent people oppose same-sex marriage as a tenet of faith, and their freedom to exercise religion" is specifically "spelled out" in the First Amendment of the Constitution. *Obergefell*, 135 S.Ct. at 2625 (Roberts, C.J., dissenting). Continuing, these Justices noted that "[r]espect for sincere religious conviction has led voters and legislators in every State that has adopted same-sex marriage democratically to include accommodations for religious practice." *Id.*; *see also id.* at 2638 (explaining the historical significance of "religious liberty") (Thomas, J., dissenting). **The majority opinion also recognized that religious freedoms continue unabated even as they redefined marriage**:

> Finally, it must be emphasized that religions, and those who adhere to religious doctrines, may continue to advocate with utmost, sincere conviction that, by divine precepts, same-sex marriage should not be condoned. The First Amendment ensures that religious organizations and **persons** are given proper protection as they seek to teach the principles that are so fulfilling and so central to their lives and faiths, and to their own deep aspirations to continue the family structure they have long revered.

*Obergefell*, 135 S.Ct. at 2607 (Kennedy, J., majority) (emphasis added). Gov. Beshear was thus under no compulsion to order each and every individual Kentucky County Clerk to authorize and

approve SSM marriage. Contrary to Gov. Beshear's suggestion that Davis must apply his SSM Mandate, Davis does not shed her personal convictions and individual rights at the entry door of public service. It is well-established law that a person's constitutional and statutory rights and liberties are not immediately eviscerated the moment they take their oath of office.[15]

Additionally, Gov. Beshear's claim that "like minded" exemptions require denial of Davis' exemption does not withstand scrutiny under precedent from the Supreme Court and Sixth Circuit. *See Haight*, 763 F.3d at 562 (rejecting prison warden's "like-minded" contention that if he grants one prisoner an accommodation he will then "have to grant others, having set a precedent with the 'first' accommodation"); *see also O Centro*, 546 U.S. at 436 (finding under RFRA that this kind of argument represents "the classic rejoinder of bureaucrats throughout history: If I make an exception for you, I'll have to make one for everybody, so no exceptions"); *Holt*, 135 S.Ct. at 866 (same under RLUIPA). But the Kentucky RFRA, like its federal counterpart, "operates by mandating consideration, under the compelling interest test, of exceptions to 'rule[s] of general applicability,'" and provides "'a workable test for striking sensible balances between religious liberty and competing prior governmental interests.'" *See O Centro*, 546 U.S. at 436 (citing 42 U.S.C. §§ 2000bb–1(a), 2000bb(a)(5)).

Moreover, providing accommodation for religious conviction is not antithetical for public employees or inconsistent with governmental mandates. *See, e.g.*, *Slater v. Douglas County*, 743 F. Supp. 2d 1188, 1192-95 (D. Or. 2010) (denying summary judgment to county defendant that

---

[15]   "Almost fifty years ago, this Court declared that citizens do not surrender their First Amendment rights by accepting public employment." *Lane v. Franks*, 134 S. Ct. 2369, 2374 (2014). Indeed, the Supreme Court has "made clear that public employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). Although a citizen entering government service must "by necessity" accept "certain limitations on his or her freedom," *id.* at 417, such person's constitutional rights are not circumscribed in their entirety. Instead, there are "some rights and freedoms so fundamental to liberty" that a citizen is "'not deprived of [these] fundamental rights by virtue of working for the government.'" *Borough of Duryea, Pa. v. Guarnieri*, 131 S.Ct. 2488, 2493-94 (2011) (citation omitted). Fundamental rights are implicated in this case, as this Court already acknowledged. *See, e.g.*, Hr'g Tr. (7/13/15), at 84:3-4, 85:20-22, 98:19-22, 99:19-21, 103:15-18, 104:8-9.

only proposed to reassign a county clerk employee who refused on religious grounds to issue same-sex domestic partnership registrations rather than accommodating her request). By way of further example, federal and state employees who have a "moral or religious" conviction against capital punishment are provided an exemption from "be[ing] in attendance at" or "participat[ing] in any prosecution or execution" performed under the Federal Death Penalty Act. 18 U.S.C. § 3597(b). In a similar fashion, medical providers (and other persons) with conscience-based objections to governmental mandates and programs related to providing abortions, abortion-related drugs, and abortion-related insurance coverage may also be exempted from generally applicable requirements. *See, e.g., Stormans, Inc. v. Selecky*, 844 F. Supp. 2d 1172, 1188-93 (W.D. Wash. 2012) (pharmacists with religious objection based upon sincerely held beliefs against providing certain abortion-related drugs did not have to comply with government's mandate to carry those drugs); *Hobby Lobby*, 134 S.Ct. at 2759 (holding that government mandate to force closely held corporations to provide health insurance coverage for methods of contraception that violated the sincerely-held religious beliefs of the companies' owners was an unlawful burden on religious exercise). Moreover, persons can be naturalized as citizens with conscience-based non-combatant objections, *Girouard v. United States*, 328 U.S. 61, 64-67 (1946), or religious-based objections to certain vaccinations, 8 U.S.C. § 1182(g).[16]

The foregoing examples illustrate that, in certain matters, the law already accounts for religious-based objections to generally applicable legal duties or mandates. In each of the foregoing areas (*i.e.*, abortion, capital punishment, non-combatant in wartime), there are well-established historical roots for the objection. For marriage, the nature of the objection is even more

---

[16]     *See also Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 144-45 (1987) ("[G]overnment may (and sometimes must) accommodate religious practices"); *ACLU v. Mercer County, Ky.*, 432 F.3d 624, 639 (6th Cir. 2005) ("Our Nation's history is replete with . . . accommodation of religion.")

firmly established in history because the "meaning of marriage" as a union between one man and one woman "has persisted in every culture," "has formed the basis of human society for millennia," and has singularly "prevailed in the United States throughout our history." *Obergefell*, 135 S. Ct. at 2612-13 (Roberts, C.J., dissenting); *see also id.* at 2641 ("For millennia, marriage was inextricably linked to the one thing that only an opposite-sex couple can do: procreate.") (Alito, J., dissenting). In fact, the majority in *Obergefell* conceded that the institution of marriage as exclusively a union between a man and a woman "has existed for millennia and across civilizations" and this view "long has been held—**and continues to be held—in good faith by reasonable and sincere people here and throughout the world**." *Obergefell*, 135 S. Ct. at 2594 (Kennedy, J., majority) (emphasis added). Thus, although the traditional view of marriage was discarded in *Obergefell*, that long-held view of marriage provides the historical underpinnings for a religious exemption and accommodation from the redefinition of marriage.

Accommodating a person's sincere religious beliefs and practices about marriage and ensuring that individual religious freedom is not substantially burdened promotes the religious pluralism and tolerance that have made this country distinctive, Gov. Beshear's view notwithstanding. *See Haight*, 763 F.3d at 562 ("Keep in mind that the idea behind offering statutory protection for faith-based practices is to make accommodations—exceptions—for individuals who believe they must do certain things because their faith requires it."). Of course, religious accommodations are not provided for each and every whim or scruple raised by a person, and merely stating a religious objection does not mean that any county clerk can deny a marriage license at any time for any reason. That is not this case. As noted above, Davis has served in the Rowan County clerk's office for thirty years, and, during this entire time period, this is the first instance in which she (or anyone else for that matter) has raised a religious objection to performing

a function in the county clerk's office. *See* VTC, ¶ 31. Plainly, this is not a situation where an accommodation of Davis' religious objections will swallow the general law on marriage and marriage licenses in Kentucky, because licenses are readily available in more than 130 marriage licensing locations spread across Kentucky. *See* VTC, ¶¶ 9, 27.

But even if the requisite showing of a compelling government interest showing can be made, the infringement upon Davis must still satisfy the "exceptionally demanding" least-restrictive-means standard. *See Hobby Lobby*, 134 S.Ct. at 2780. Gov. Beshear and Commr. Onkst cannot demonstrate that they "lack[] other means" of issuing marriage licenses to same-sex couples "without imposing a substantial burden" on Davis' "exercise of religion." *Id.* Not only that, the least-restrictive-means test may "require the Government to expend additional funds" to accommodate "religious beliefs." *Id.* at 2781.[17] Thus, even if proposed less restrictive alternatives require additional costs in applying Kentucky marriage law, such costs are specifically envisioned by the Kentucky RFRA to ensure that a person's religious freedom is protected.

In this matter, even if the "desired goal" is providing Plaintiffs with Kentucky marriage licenses **in Rowan County**[18], *see id.*, **numerous less restrictive means** are available to accomplish it without substantially burdening Davis' religious freedom and conscience, such as:

- Providing an opt-out or exemption to the Kentucky marriage licensing scheme (as exists for the Kentucky fish and wildlife licensing scheme), KY. REV. STAT. § 150.195, and as other states, such as North Carolina, have enacted, *see, e.g.*, N.C. GEN. STAT. § 51-5.5 (permitting recusal of officials from "issuing" lawful marriage licenses "based upon any sincerely held religious objection");

---

[17]     This is consistent with the Kentucky Legislative Research Commission's ("KYLRC") fiscal impact reports provided to Kentucky legislators prior to enacting the Kentucky RFRA. In those reports, the KYLRC noted that the least restrictive alternative requirements "may be minimal . . . or significant, for example, if it requires hiring additional staff or paying overtime for other staff to do a job that an employee declines to do because of religious beliefs." *See* Kentucky LRC, Local Mandate Fiscal Impact Estimates, Ky. House Bill 279 (2013 Reg. Sess.), dated Feb. 26, 2013 and Mar. 6, 2013.

[18]     Nothing in *Obergefell* suggests that Plaintiffs have a fundamental right to receive a marriage license from a particular clerk, in a particular county.

- Deputizing a neighboring county clerk (or some other person) to issue Kentucky marriage licenses in Rowan County;

- Modifying the prescribed Kentucky marriage license form to remove the multiple references to Davis' name, and thus to remove the personal nature of the authorization that Davis must provide on the current form[19];

- Deeming Davis "absent" for purposes of issuing SSM licenses, based upon her moral and religious inability to issue them, and allowing those licenses to be issued by the chief executive of Rowan County, as specifically authorized by Kentucky law, see KY. REV. STAT. § 402.240;

- Distributing Kentucky marriage licenses at the state-level through an online or other state-wide licensing scheme, such as through the Department of Vital Statistics[20]; or

- Legislatively addressing Kentucky's entire marriage licensing scheme post-*Obergefell*, whether immediately by calling a special legislative session or in three months in the next regular legislative session. The leading Kentucky legislators from both parties in both houses uniformly agree that Davis' religious beliefs should be protected[21], and both gubernatorial candidates in Kentucky have indicated an intent to address this issue in a way that supports county clerks' individual rights.[22]

---

[19]     The Kentucky County Clerks Association have made a similar proposal. *See* Ky. County Clerks Association will propose removing clerks' names from marriage licenses in upcoming session, CN2.COM, Aug. 26, 2015, *available at* http://mycn2.com/politics/kentucky-county-clerks-association-will-propose-removing-clerks-names-from-marriage-licenses-in-upcoming-session (last accessed Sept. 2, 2015). In fact, Atty. Gen. Conway, the democratic candidate for governor, has publicly stated that he is "fine" with that proposal. Jack Conway says he's fine with proposal to remove names of county clerks from marriage licenses, LEXINGTON HERALD-LEADER, Aug. 28, 2015, *available at* http://www.kentucky.com/2015/08/28/4009812_jack-conway-says-hes-fine-with.html?rh=1 (last accessed Sept. 2, 2015).

[20]     A bill for the next general session of the Kentucky legislature proposes to move marriage licensing and recording duties from county clerks to the state registrar of vital statistics. *See* An Act Related to Marriage and Making an Appropriation Therefor, Ky. House Bill 154 (2016 Reg. Sess.).

[21]     Senate President Robert Stivers (R-Manchester), Senate Minority Floor Leader Ray Jones (D-Pikeville), House Speaker Greg Stumbo (D-Prestonsburg), and House Minority Floor Leader Jeff Hoover (R-Jamestown) participated in a roundtable discussion on August 24, 2015, addressing several legislative issues, including the conflict between SSM and religious liberty. These legislators proposed different options in light of *Obergefell*—from having marriage licenses treated similar to land deeds and simply record a prior transaction, to having the Department of Vital Statistics issue marriage licenses rather than county clerks, to providing exemptions. A video of this roundtable discussion is available at http://www.ket.org/public-affairs/legislators-preview-election-2015/ (last accessed Sept. 2, 2015).

[22]     Gubernatorial candidates from both parties in Kentucky—to "protect[] religious freedoms" (Matt Bevin) or to "allow county clerks some flexibility" (Atty. Gen. Conway)—when the legislature returns to session in January 2016. *See* Bevin: Kentucky should stop issuing marriage licenses, WASHINGTON TIMES, July 10, 2015, *available at* http://www.washingtontimes.com/news/2015/jul/10/bevin-kentucky-should-stop-issuing-marriage-licens/ (last accessed Sept. 2, 2015).

All of the foregoing options, and others, are available to avoid substantially burdening Davis' personal religious freedom in the wake of the redefinition of marriage in *Obergefell*. But Gov. Beshear appears not to have evaluated, let alone even considered, any of the foregoing less restrictive alternatives before issuing his SSM Mandate. However, government's failure to actually "consider[] and reject[] alternatives more tailored" to its alleged interests "cannot withstand" the least restrictive means test. *Haight*, 763 F.3d at 564. Here, the ink was barely dry from the *Obergefell* decision when Gov. Beshear issued his SSM Mandate to all Kentucky County Clerks on June 26, 2015—the same day the *Obergefell* decision was announced. *See* VTC, ¶¶ 24-25, and Ex. C. Yet the entire Kentucky marriage licensing scheme is founded upon the millennia-old natural definition of marriage. Gov. Beshear could have (and still can) take steps that both recognize SSM and protect county clerks' religious conscience rights in response to the redefinition of marriage in *Obergefell*. In fact, Gov. Beshear recently stated that "I'm sure if they [the Kentucky legislature] want to make a change that they'll be able to come up with something . . . There's a number of different ways, I'm sure, if they want to change the way marriage licenses are issued, then they can do so."[23] This recent statement not only debunks the myth that Kentucky has a compelling government interest in forcing Davis to violate her conscience, but also, it serves as an admission that there are a number of available options for addressing marriage licenses in a way that alleviates the religious liberty concerns of Davis.

---

[23]     Capitol Conference Briefing dated August 2015 (quoting Gov. Beshear), video accessible online at http://mycn2.com/politics/kentucky-county-clerks-association-will-propose-removing-clerks-names-from-marriage-licenses-in-upcoming-session (last accessed Sept. 2, 2015).

> **3.**    **Gov. Beshear's SSM Mandate Violates Davis' Free Speech Rights And
> Constitutes An Impermissible Religious Test For Holding Public Office
> In Kentucky.**

The mandate commanding Davis **to affix her name** to SSM licenses also violates her

fundamental free speech rights protected by the United States and Kentucky Constitutions. U.S.

CONST. amend. I (government may not "abridg[e] the freedom of speech"); KY. CONST., § 1

(persons have an inalienable right of "freely communicating their thoughts and opinions"); *id.*, §

8 ("[e]very person may freely and fully speak"). The Free Speech Clause protects "both what to

say and what ***not*** to say," *Riley v. Nat'l Federation of Blind of N.C., Inc.*, 487 U.S. 781, 797 (1988)

(emphasis added), and states may not "force[] an individual, as part of [their] daily life" to "be an

instrument for fostering public adherence to an ideological point of view [he/she] finds

unacceptable." *Wooley v. Maynard*, 430 U.S. 705, 715 (1976).

The Kentucky marriage form uses the word "marriage" at six different places on the form

(not including the reference to "join[ing] together in the state of matrimony"), twice designates

Davis as the person authorizing the marriage license, and requires the stamping of her name ("KIM

DAVIS") and endorsement on the proposed union. *See* KY. REV. STAT. § 402.100(3); *see also*

VTC, Exs. A, D. Unlike other governmental licensing or registration schemes that Kentucky

provides (*e.g.*, driver's licenses, fishing and hunting licenses, motor vehicle registration, voter

registration), the issuance of a marriage license requires an individual person (the county clerk) to

authorize a particular relationship between persons against their religious convictions. As it

currently stands, her name and approval cannot be divorced from a SSM license. Thus, pursuant

to Gov. Beshear's SSM Mandate, Davis is being told to validate and affirm on the prescribed

KDLA form a view that violates her religious beliefs. *See Wooley*, 430 U.S. at 707. For Gov.

Beshear to state that Kentucky is issuing and recognizing SSM licenses is one thing. But

commanding Davis to be an "instrument" for a message, view, and proposed union that she finds

"morally objectionable" and "repugnant to [her] moral and religious beliefs" is altogether different, and violates not only her conscience, but also her free speech rights. *See Wooley*, 430 U.S. at 707.

Further, compelling Davis to authorize marriages against her sincerely held religious beliefs about marriage constitutes an improper religious test for holding (or maintaining) public office. U.S. CONST. art. VI ("no religious test" permitted as a "qualification" for office). Davis is being arm-twisted to either participate in the issuance of SSM licenses (her conscience be damned) or resign, since holding public office is her choice (her livelihood, qualifications, and public service be damned). But the fact "that a person is not compelled to hold office" is not an excuse for Gov. Beshear to impose constitutionally-forbidden, conscience-violating criteria for office. *See Torcaso v. Watkins*, 367 U.S. 488, 495-96 (1961). Like a non-combatant whose "religious scruples" prevent him from shouldering a rifle, Davis may still "faithfully and devotedly" serve her county without approving SSM licenses. *See Girouard*, 328 U.S. at 64.

### B. The Remaining Factors Favor Granting An Injunction Pending Appeal.

Once a probability of success on the merits of individual constitutional claims is shown, a finding of irreparable harm follows. *See McNeilly v. Land*, 684 F.3d 611, 620-21 (6th Cir. 2012). Davis faces significant, irrevocable, and irreversible harm if she is forced to authorize and approve even one SSM license with her name on it, against her religious conscience, for "it is well-settled that 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (citing *Elrod*, 427 U.S. at 373); *see also Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) (noting that "courts have held that a plaintiff satisfies the irreparable harm analysis by alleging a violation of RFRA"). If such rights "are not jealously safeguarded, persons will be deterred, even if imperceptibly, from exercising those rights in the future." *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989).

There is no adequate compensatory or other corrective relief that will be available at a later date (including a permanent injunction in her favor) if Davis is forced to violate her religious conscience now. It is comparable to forcing the religious objecting nurse to perform an abortion, the religious objecting company or non-profit to pay for abortions or abortion-related insurance coverage, the religious objecting non-combatant to fire on an enemy soldier, or the religious objecting state official to participate in or attend the execution of a convicted prisoner. Ordering Davis to authorize and approve a SSM license is ***the act*** that violates her conscience and substantially burdens her religious freedom – an act which cannot be undone. Importantly, Davis is not claiming a substantial burden on her religious freedom if ***someone else*** authorizes and approves a SSM license ***devoid of her name***.

Further, the harm to Davis is not speculative but imminent. The searing act of her conscience is authorizing a SSM license bearing her imprimatur; Plaintiffs insist on having no one other than Davis approve their proposed union; and this Court has ordered Davis to approve SSM licenses without giving full consideration to Davis' own request for injunctive relief (*see* D.E. 43). This impending harm to Davis' conscience outweighs any travel inconveniences on Plaintiffs, who can obtain (or could have already obtained) a marriage license from more than 130 licensing locations across Kentucky, irrespective of their county of residence, KY. REV. STAT. § 402.080, while Davis' appeal is pending. Such widespread availability is due to the undisputed fact that Kentucky County Clerks are, overwhelmingly, applying the SSM mandate from Gov. Beshear. Thus, Kentucky marriage licenses, including SSM licenses, are readily available across the Commonwealth of Kentucky in nearly all of its 120 counties. *See* VTC, ¶ 27; *see also* VTC, Ex. C, Beshear Letter. Because marriage licenses are readily available throughout Kentucky, and have been for more than sixty days as of the date of this filing, Plaintiffs will not suffer any irreparable

harm without **Davis'** personally signing, issuing, approving, and authorizing their proposed unions. Moreover, barring Gov. Beshear and Commr. Onskt from enforcing the SSM mandate against Davis would not substantially harm them.

Finally, the public has no interest in enforcement of the SSM Mandate to coerce Davis to violate her conscience and religious freedom. *See*, *e.g.*, *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995) (finding that the public has a "significant interest" in the "protection of First Amendment liberties"); *O Centro Espirita Beneficente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 1010 (10th Cir. 2004) ("[P]ursuant to RFRA, there is a strong public interest in the free exercise of religion even where that interest may conflict with [another legislative scheme]."). Moreover, granting an injunction pending appeal keeps the status quo in place while the appeal is pending and there is ongoing public debate in Kentucky between the SSM Mandate and religious liberty. This case presents substantial legal matters of first impression for this (or any other) federal appeals court following *Obergefell*. As this Court concluded in an earlier order, this case presents a constitutional "debate," "conflict," and "tension" between "two individual liberties held sacrosanct in American jurisprudence"—one enumerated and express (Davis' religious freedom), and the other unenumerated (right to marry). *See* D.E. 43 at 2, 16; D.E. 52 at 1 (reiterating the existence of a constitutional "debate"); *see also*, *e.g.*, D.E. 21, Hr'g Tr. (7/13/15), at 84:3-4, 85:20-22, 98:19-22, 99:19-21, 103:15-18, 104:8-9 (prior statements from district court acknowledging that Davis' fundamental rights are implicated in this case). To ensure Davis' fundamental and "sacrosanct" individual rights remain protected while the Sixth Circuit resolves the "conflict" acknowledged by this Court, an injunction pending appeal should be entered that provides Davis with an exemption "from having to authorize the issuance of Kentucky marriage licenses."

## V.     <u>CONCLUSION</u>

For all the foregoing reasons, and those set forth in Davis' prior briefing on her Motion for

Preliminary Injunction and incorporated by reference here (D.E. 39-1), Davis' Motion for

Injunction Pending Appeal should be granted.

DATED: September 2, 2015                                  Respectfully submitted:

   A.C. Donahue                                   <u>/s/ Jonathan D. Christman</u>
   Donahue Law Group, P.S.C.                      Roger K. Gannam
   P.O. Box 659                                   Jonathan D. Christman
   Somerset, Kentucky 42502                       Liberty Counsel
   Tel: (606) 677-2741                            P.O. Box 540774
   Fax: (606) 678-2977                            Orlando, Florida 32854
   ACDonahue@DonahueLawGroup.com                  Tel: (800) 671-1776
                                                  Fax: (407) 875-0770
                                                  rgannam@lc.org
                                                  jchristman@lc.org

                                                  *Attorneys for Defendant/Third-Party Plaintiff
                                                  Kim Davis*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was filed via the Court's ECF

filing system and therefore service will be effectuated by the Court's electronic notification system

upon the following counsel or parties of record:

Daniel J. Canon
L. Joe Dunman
Laura E. Landenwich
CLAY DANIEL WALTON ADAMS, PLC
462 S. Fourth Street, Suite 101
Louisville, KY 40202
dan@justiceky.com
joe@justiceky.com
laura@justiceky.com

William Ellis Sharp
ACLU OF KENTUCKY
315 Guthrie Street, Suite 300
Louisville, KY 40202
sharp@aclu-ky.org

*Attorneys for Plaintiffs*

Jeffrey C. Mando
Claire Parsons
ADAMS, STEPNER, WOLTERMANN &
DUSING, PLLC
40 West Pike Street
Covington, KY 41011
jmando@aswdlaw.com
cparsons@aswdlaw.com

*Attorneys for Rowan County*

William M. Lear, Jr.
Palmer G. Vance II
STOLL KEENON OGDEN PLLC
300 West Vine Street, Suite 2100
Lexington, KY 40507-1380
william.lear@skofirm.com
gene.vance@skofirm.com


DATED: September 2, 2015

/s/ Jonathan D. Christman
Jonathan D. Christman
*Attorney for Defendant/Third-Party Plaintiff*
*Kim Davis*