UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

| | |
|---|---|
| APRIL MILLER, et al. | ) |
| | ) CASE NO.0:15-cv-44 (DLB) |
| Plaintiffs | ) |
| v. | ) |
| KIM DAVIS, Individually and in her official capacity, et al. | ) |
| Defendants | ) |

### *AMICUS CURIAE* BRIEF OF THE KENTUCKY SENATE PRESIDENT, HON. ROBERT STIVERS

Comes the Hon. Robert Stivers, President of the Kentucky Senate, by counsel, and for his brief in support of the Defendants, respectfully submits the following to the Court:

A. Introduction

The Senate President takes the extraordinary step of filing this *amicus curiae* brief in order to bring to the Court's attention the dilemma faced by the County Clerks of the Commonwealth of Kentucky. No legislative guidance has been provided to assist in determining what provisions, if any, of KRS Chapter 402 (the Marriage Chapter) have survived the decision of the United States Supreme Court in *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015). To date, the arguments before this Court have focused on the tension between the *Obergefell* mandate that states must provide a mechanism for same sex marriages and the individual religious liberty

rights of the Defendant Kim Davis. Since *Obergefell*, the right to marriage asserted by the Plaintiffs is protected by the Equal Protection Clause of the 14th Amendment to the United States Constitution. Even *Obergefell* however, made it clear that its holding should not be viewed as repealing the constitutional freedoms given to all citizens to freely exercise their religious beliefs. *Obergefell, supra* at 2607. The resolution of the conflict of these rights is the primary issue before this Court. The individual parties have addressed this issue at length in previous submissions.

It is not the intent of the Movant to re-plow this ground. Instead, the Movant wishes to address the fact that *Obergefell* has in fact eliminated the statutory guidance to County Clerks with respect to the issuance of marriage licenses irrespective of religious beliefs. Without guidance from the General Assembly, all County Clerks, not just the defendant here, are left in the position of guessing what portion of the KRS remains in effect, a "guess" that has significant consequences. KRS Chapter 402 provides penalties for the issuance of a marriage license to persons prohibited from marrying under Chapter 402. Significantly, the statute does not contain a penalty for refusing to issue a license to parties that are permitted to marry.

Moreover, it is incumbent under the General Assembly to provide for the rights asserted by the Plaintiffs in a manner that is the least restrictive manner possible pursuant to the state's Religious Freedom Restoration Act, KRS Section 446.350. This mandate upon the Commonwealth should result in a more measured response in this case that would allow the General Assembly time to act through legislation, or, at a minimum, the opportunity for the Governor to act through Executive Order pursuant to KRS Chapter 12. The Movant would thus ask that this Court temper its response to the actions of the Defendant with consideration of the fact that, to date, the County Clerks have not had the benefit of a legislative response.

2

The issues before this Court require recognition that within the Constitution are limits on federal judicial power. This Court must preserve the delicate balance between its power and our dual –sovereign system of government. Federal Courts have consistently held that in issuing an injunction against state governmental officials, the Court must exercise its remedial discretion carefully. *See Winzler v. Toyota Motor Sales U.S.A. Inc.,* 681 F.3rd 1208, 1210 (10 Cir. 2012). The Supreme Court issued its opinion in *Obergefell* in late June of this year. The General Assembly will next meet in January. As this Court noted in its Memorandum Opinion and Order at 3, the Plaintiffs could in fact obtain a marriage license from seven counties that are less than an hour from the Rowan County seat of Morehead. Delaying imposition of sanctions on this Defendant to allow the General Assembly time to act, will exercise the Court's "remedial discretion carefully" – and thus preserve that delicate balance that is at the heart of our federalist system.

### B. Statutory Framework

The statutory framework for the issuance of marriage licenses in Kentucky is contained within KRS Chapter 402. Even a cursory examination of that chapter reveals that little, if any of that chapter survives the mandate of *Obergefell*. The initial section, KRS Section 402.005 defines marriage as refers to a "civil status, condition, or relation of one (1) man and one (1) woman." Clearly this definition has been overturned in its entirety by *Obergefell*. Thus, there no longer exists in Kentucky **ANY** statutory definition of marriage.

KRS 402.020(1)(d) expressly prohibits marriage between members of the same sex. Again, that provision has been judicially invalidated. Likewise KRS Section 402.045 dealing with the recognition of same-sex marriages from other jurisdictions cannot survive *Obergefell*.

The effect of *Obergefell* on other statutes is more subtle. KRS Section 402.080 provides the proper venue for the issuance of a marriage license. That statute states:

> No marriage shall be solemnized without a license therefor. The license shall be issued by the clerk of the county **in which the female resides** at the time, unless the female is eighteen (18) years of age or over or a widow, and the license is issued on her application in person or by writing signed by her, in which case it may be issued by any county clerk.

Emphasis supplied. Thus the two choices of venue are either the county of residence of the female, or another county in which the female makes an application. *Obergefell* clearly contemplates marriages that do not involve a female, as well as marriages that involve two females. It is unclear at this juncture what the proper venue for the issuance of a license for same sex marriages is after *Obergefell*.

This uncertainty creates an unacceptable risk for the issuing clerk. As noted above, KRS Chapter 402 provides significant penalties for issuing marriage licenses to those not entitled. Conversely it provides no penalty for refusal to issue a marriage license. KRS Section 402.990(6) states:

> Any clerk who knowingly issues a marriage license to any persons prohibited by this chapter from marrying **shall be guilty of a Class A misdemeanor** and **removed from office** by the judgment of the court in which he is convicted.

Emphasis supplied. A clerk is left with the Hobson's choice of risking criminal penalty and removal from office or risking that he or she will be the subject of a Federal Civil Rights action.

4

That clerk must make that choice with no guidance whatsoever from the Governor, the General Assembly, or the Attorney General.

### C. Religious Freedom Restoration Act

The parties have addressed the impact of KRS Section 446.350 and this Court has determined that it does not provide a defense to the Plaintiffs' claims. Movant would note, however, that facing the imposition of a contempt citation with possible attendant penalties is hardly a "slight burden" on the exercise of religion. What has not been addressed is the duty incumbent upon the General Assembly to craft a system for the issuance of marriage licenses that is the least restrictive possible with respect to individual religious liberties. This Court cannot redraft the statutes at issue here, but it can provide the General Assembly the opportunity to do so.

### D. Conclusion

*Obergefell* arguably has invalidated the entire statutory scheme that controls the issuance of marriage licenses in the Commonwealth of Kentucky. It is incumbent upon the General Assembly through legislation, or the Governor by Executive Order, to provide guidance to the defendant here. It is likewise incumbent upon the General Assembly to devise a statutory scheme that balances the constitutional rights of the Plaintiffs to be married with the mandate to do so in a manner that is the least restrictive possible with respect to the Constitutional right of the Defendant to freely exercise her religious beliefs. This Court can accomplish this by allowing the General Assembly time to fill the statutory void created by *Obergefell*.

Dated: September 2, 2015

Respectfully Submitted,

//David E. Fleenor//

Hon. David E. Fleenor
General Counsel
Hon. Vaughn Murphy
Deputy General Counsel
Office of the Senate President
Capitol Annex, Room 236
Frankfort, KY 40601
Telephone: (502) 564-3120
Facsimile: (502) 564-0456
Email: dave.fleenor@lrc.ky.gov
Counsel for Movant

**CERTIFICATE OF SERVICE**

I hereby certify that copies of the foregoing Motion were served via the electronic filing system on September 2, 2015, to all persons receiving electronic notifications in this case.

//David E. Fleenor//

David E. Fleenor, Esq.