UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND
CIVIL ACTION NO. 15-cv-044-DLB

APRIL MILLER, PH.D.; KAREN ANN ROBERTS;
SHANTEL BURKE; STEPHEN NAPIER;
JODY FERNANDEZ; KEVIN HOLLOWAY;
L. AARON SKAGGS; BARRY W. SPARTMAN;
and OTHERS SIMILARLY SITUATED                                    PLAINTIFFS

v.

KIM DAVIS, INDIVIDUALLY AND IN HER
OFFICIAL CAPACITY AS ROWAN
COUNTY CLERK; and ROWAN
COUNTY KENTUCKY                                                  DEFENDANTS

and                      **MEMORANDUM OF LAW IN SUPPORT OF**
                         **MOTION TO DISMISS THIRD-PARTY COMPLAINT**

KIM DAVIS                                              THIRD-PARTY PLAINTIFF

v.

STEVEN L. BESHEAR, IN HIS OFFICIAL
CAPACITY AS GOVERNOR OF KENTUCKY; and
WAYNE ONKST, IN HIS OFFICIAL CAPACITY
AS STATE LIBRARIAN AND COMMISSIONER
OF KENTUCKY DEPARTMENT FOR
LIBRARIES AND ARCHIVES                          THIRD-PARTY DEFENDANTS

                    ***      ***      ***      ***      ***

        Come the third-party defendants Steven L. Beshear, in his official capacity as

Governor of Kentucky, and Wayne Onkst, in his official capacity as State Librarian and

Commissioner of Kentucky Department for Libraries and Archives, (collectively "Third-

Party Defendants"), by counsel, and pursuant to Federal Rule of Civil Procedure

12(b)(6), respectfully tender this Memorandum of Law in support of their Motion to Dismiss the Third-Party Complaint (D.E. 34).

## I.     INTRODUCTION

The rule of law underpins every aspect of American civic life.  See e.g. Cooper v. Aaron, 358 U.S. 1 (1958).  Though citizens may understandably have differing views regarding same-sex marriage, it is now beyond dispute that same-sex couples are entitled to exercise the fundamental right of marriage.  See Obergefell v. Hodges, 135 S. Ct. 2584 (2015).  As with any final decision of the United States Supreme Court, all public officials must now accede to the law as decided in Obergefell.  Though this is an undeniable tenet of the rule of law, Defendant/Third-Party Plaintiff Kim Davis ("Davis"), as a constitutionally elected public official, has refused comply.  Instead, she has set up a straw man, alleging that "Governor Beshear took it upon himself after *Obergefell* to set and announce new Kentucky marriage license policies, and command county clerks to abide by such policies."  Third-Party Complaint at ¶ 33 (D.E. 34).  The facts as pleaded, however, demonstrate that Governor Beshear set no such "marriage license policies," as the process for obtaining a marriage license is statutory and remains unchanged. Moreover, Governor Beshear did not "command" county clerks to do anything nor does he possess such authority with respect to the issuance of marriage licenses.  The Third-Party Complaint is wholly devoid of legal merit.  It must be dismissed.

## II.     BACKGROUND

The Third-Party Complaint (D.E. 34) asserts two types of claims.  In Count I, Davis alleges that the Third-Party Defendants are liable to her "for all of any relief obtained by Plaintiffs against Davis in the underlying action" because of "Governor

Beshear's unlawful policies and directives to Davis with respect to issuing Kentucky marriage licenses." See Third-Party Complaint at ¶¶ 44, 43. In Counts II through XII, Davis alleges that "Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst" are unlawful for which she seeks declaratory and injunctive relief. See id. at ¶¶ 46-147.

The alleged "marriage policies" "effected by Governor Beshear and Commissioner Onkst" at issue are statements contained in a June 26, 2015 letter from Governor Beshear (hereinafter "Beshear Letter") to Kentucky's county clerks. See id. at ¶ 25 and Exh. C to D.E. 34 (Beshear Letter attached hereto as Exhibit 1).[1] The Beshear Letter correctly states that "the United States Supreme Court issued its decision regarding the constitutionality of states' bans on same-sex marriage" and "struck down those laws, finding that they were invalid under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution." Id. The Beshear Letter announces that, in accordance with the Obergefell v. Hodges, 135 S. Ct. 2584 (2015) decision, "Kentucky will recognize as valid all same sex marriages performed in other states and in Kentucky." Id. The Governor stated that "all executive branch agencies are already working to make any operational changes that will be necessary to implement the Supreme Court decision." Id. Further, the Beshear Letter states that "the Department of Libraries and Archives will be sending a gender-neutral form to you today, along with instructions for its use." Id. Notably, the Beshear Letter does not instruct Davis or any other county clerk to do anything. Id. In fact, the Governor notes

---

[1] The Beshear Letter is an exhibit to the Third-Party Complaint. See Exh. C. to D.E. 34. Third-Party Defendants have reattached it to this memorandum for ease of reference. Doing so does not convert this to a motion for summary judgment. See Fed. R. Civ. P. 10(c); Weiner v. Klais & Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997).

that county clerks "should consult with your county attorney on any particular aspects related to the implementation of the Supreme Court's decision." Id.

Davis' allegation that "Governor Beshear took it upon himself after *Obergefell* to set and announce new Kentucky marriage license policies, and command county clerks to abide by such policies" is demonstrably false. Id. at ¶ 33. The Beshear Letter does not command Davis to do anything. Rather, it is an acknowledgement of Obergefell, an explanation of the Commonwealth's actions to assist the county clerks with their statutory duties, and a reminder to the county clerks of their obligations as constitutional officers.

Davis' legal responsibilities resulting from the Obergefell decision are wholly unaffected by the issuance of the Beshear Letter. Indeed, Davis would be in exactly the same position she is today had the Beshear Letter never been transmitted. Davis' actual dispute is with the Supreme Court's decision in Obergefell, and she is utilizing the Beshear Letter as a basis to air her political grievances thinly veiled as legal arguments. Those legal arguments are without merit.

The Third-Party Defendants have not engaged in any actions that would subject them to liability to Davis. Accordingly, they are entitled to dismissal of the Third-Party Complaint in its entirety.

III.    ARGUMENT

A.    **The Third-Party Complaint Is Barred by the Eleventh Amendment and Must Be Dismissed.**

The Eleventh Amendment to the United States Constitution confers immunity upon the Third-Party Defendants for the claims asserted against them. The Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the

earliest possible stage in litigation." <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009). The state "has a right to an early determination of the issue because the essence of the immunity is the possessor's right not to be haled into court – a right that cannot be vindicated after trial." <u>Smith v. Reagan</u>, 841 F.2d 28, 30-31 (2d Cir. 1988) (citation omitted). The Court must decide the issue of immunity at the earliest possible opportunity in order "to lift the burdens of litigation from a defendant who should not be a party at all." <u>Id.</u> The Third-Party Defendants respectfully request that the Court address their immunity defense at the earliest possible opportunity and dismiss the claims against them.

### 1. Any Requested Relief Other than Injunctive (Including Count I and Claims for Indemnity) Must Be Dismissed

Davis' claims against Governor Beshear and Commissioner Onkst for any relief other than injunctive relief are barred by the Eleventh Amendment to the United States Constitution. The Eleventh Amendment provides that an "unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974). Davis asserts claims against the Third-Party Defendants solely in their official capacities. <u>See</u> Third-Party Complaint at 1 (D.E. 34). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989) (citation omitted). "As such, it is no different from a suit against the State itself." <u>Id.</u> Davis' claims against Governor Beshear and Commissioner Onkst are, therefore, claims against the Commonwealth. To the extent the Third-Party Complaint seeks relief other than injunctive relief, such claims are barred by the Eleventh Amendment and must be dismissed.

**2. Claims for Injunctive Relief (Including Counts II through XII) Do Not Meet the Limited Exception to Eleventh Amendment Immunity, and Must Also Be Dismissed.**

The Supreme Court has recognized a limited exception to Eleventh Amendment in suits against state officers for prospective injunctive relief. Ex Parte Young, 209 U.S. 123 (1908). But, "[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." Id. at 157. "A plaintiff must allege facts showing how a state official is connected to, or has responsibility for, the alleged constitutional violations." Top Flight Entertainment, Ltd. v. Schuette, 729 F.3d 623, 634 (6th Cir. 2013). "Courts have not read Young expansively." Children's Healthcare is a Legal Duty v. Deters, 92 F.3d 1412, 1415 (6th Cir. 1996) (citations omitted).

In order for the Ex Parte Young exception to apply, the official capacity suit must seek to enjoin actual or threatened action by a state official with authority to take such action. Id. at 1416 (finding a suit against the Ohio Attorney General is barred by the Eleventh Amendment in part because she was not the official charged with enforcing the challenged statute). "General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." Id. (citation omitted). "Holding that a state official's obligation to execute the laws is a sufficient connection to the enforcement of a challenged statute would extend Young beyond what the Supreme Court has intended and held." Id. "The mere fact that a governor is under a general duty to enforce state laws does not make him a proper

defendant in every action attacking the constitutionality of a state statute." Shell Oil Co. v. Noel, 608 F.2d 208, 211 (1st Cir. 1979). "Young does not reach state officials who lack a special relation to the particular statue and are not expressly directed to see to its enforcement." Russell v. Lundergan-Grimes, 784 F.3d 1037, 1047 (6th Cir. 2015) (citation omitted). "And it requires more than a bare connection to administering a statute." Id.

Davis' allegations notwithstanding, neither Governor Beshear nor Commissioner Onkst is responsible for setting or enforcing "Kentucky's marriage policies," and neither has authority to compel Davis to act. Davis herself concedes that marriage policies are set forth in Kentucky statute. See Third-Party Complaint at ¶¶ 9-11 (D.E. 34). Those statutes place the sole responsibility for issuing marriage licenses with the county clerks, who are separately elected constitutional officers, or their deputy clerks. KRS 402.080 ("[t]he license shall be issued by the clerk of the county . . ."); see also KRS 402.100, 402.110, 402.210, 402.230.[2] The Governor does not possess supervisory authority over other elected constitutional officers. See Brown v. Barkley, 628 S.W.2d 616, 618 (Ky. 1982). The Third-Party Defendants' limited involvement in the marriage licensing regime relates to the marriage license form. KRS 402.100 directs the Department for Libraries and Archives to prescribe the form used for marriage licenses and certificates and includes instruction for its content.

The Department for Libraries and Archives, under the authority of Commissioner Onkst and subject to the ultimate authority of Governor Beshear, updated the form in light of Obergefell v. Hodges, 135 S. Ct. 2584 (2015). Davis does not allege that the

---

[2] In the limited circumstance in which the county clerk is absent or his/her office vacant, then the county judge/executive may issue a marriage license. See KRS 402.240. Otherwise, Kentucky statute authorizes only county clerks and their deputies to issue marriage licenses.

updated marriage license form fails to comply with KRS 402.100 or that the form was otherwise incorrectly drafted. Updating the form was the proper exercise of executive authority in light of the change in the law resulting from <u>Obergefell</u>, just as issuing marriage licenses is the proper exercise of Davis' authority as an independent constitutional officer.

In reality, Davis' quarrel is not with Kentucky's "marriages policies" "effected by Governor Beshear and Commissioner Onkst" but rather with the <u>Obergefell</u> decision itself. A lawsuit against the Third-Party Defendants is not the appropriate mechanism by which Davis may lodge her displeasure with the United States Supreme Court. The Third-Party Defendants do not have the requisite "special relation" to Kentucky marriage statutes and are not "expressly directed to see to [their] enforcement" thus permitting a claim that falls within the <u>Ex Parte Young</u> exception to absolute immunity. <u>Russell</u>, 784 F.3d at 1047. Accordingly, the Third-Party Complaint is barred by the Eleventh Amendment and must be dismissed.

**B.      Davis Lacks Standing to Assert the Third-Party Complaint, and Therefore It Must Be Dismissed.**

Three elements are required for a plaintiff to have the constitutional minimum standing to assert a lawsuit in federal court:  1) the plaintiff must have sustained an injury-in-fact; 2) there must be a causal connection between the injury and defendant's conduct; and 3) the injury must be redressable by a favorable decision.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992).  Davis bears the burden of demonstrating standing.  <u>Id.</u> at 561.  Even if she could establish an injury-in-fact, Davis nonetheless lacks standing to assert the Third-Party Complaint  because there is no causal connection between the Third-Party Defendants' alleged conduct and Davis'

alleged injury and because the claim is not redressable. Therefore, the Third-Party Complaint must be dismissed.

The United States Constitution "requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976). Here, Davis claims that "Kentucky's marriage policies" "effected by Governor Beshear and Commissioner Onkst" violate certain of her constitutional rights because her religion dictates that she "cannot issue a marriage license to a same-sex couple." See Third-Party Complaint at ¶¶ 26, 46-147 (D.E. 34). As explained above, Governor Beshear and Commissioner Onkst do not have authority to dictate "marriage policy" that is binding upon county clerks such as Davis. See supra Argument A(2). Even if the Third-Party Defendants did have such authority, their pronouncement regarding "marriage policy" would not be the source of Davis' alleged injury. The United States Supreme Court has held that marriage is a fundamental right and that same-sex couples may not be deprived of that right. Obergefell v. Hodges, 135 S. Ct. 2584, 2604-05 (2015). The Beshear Letter is merely recognition of the changed circumstances following Obergefell.

Moreover, this Court has enjoined Davis from enforcing her "no marriage licenses" policy. See Memorandum Opinion and Order (D.E. 43). Thus, in addition to the United States Supreme Court's mandate, Davis is under a separate legal obligation to issue marriage licenses to qualified couples. But she is not being compelled to do so by any statements or "directives" of the Third-Party Defendants, nor could she be. Because there is no causal connection between Davis' claimed injury and Third-Party

Defendants' alleged conduct, this claim fails the second prong of the standing test and must be dismissed.

In addition to a causal connection, the claimed injury must be redressable. Lujan, 504 U.S. 560-61. That is, the plaintiff must show that his injury will be cured by a favorable decision on the claim. Simon, 426 U.S. at 42. If not, the issue is said to be moot. United States Parole Comm'n v. Garaghty, 445 U.S. 388, 396 (1980). The mootness doctrine ensures that "federal courts are presented with disputes they are capable of resolving." Id. at 397 (citation omitted). Here, the Third-Party Complaint is moot because success on the merits will not grant Davis the relief she seeks. If the Third-Party Defendants are enjoined from enforcing some alleged "marriage policy," Davis is still required to issue marriage licenses to all qualified couples pursuant to this Court's Memorandum Opinion and Order (D.E. 43) and Obergefell v. Hodges, 135 S. Ct. 2584 (2015). Said otherwise, prevailing on the Third-Party Complaint will not change Davis' alleged injury.[3] Because success on the Third-Party Complaint will not grant Davis the relief she seeks, the claims are moot and must be dismissed.

**C. The Third-Party Complaint Fails to State a Claim Upon Which Relief May Be Granted and Must Be Dismissed.**

Where, as here, a complaint fails to state a claim upon which relief may be granted, it must be dismissed. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a

---

[3] Davis argues in her latest motion for injunctive relief that the Third-Party Defendants should be enjoined to provide her an "exemption" from the Kentucky marriage licensing statutes. See Emergency Motion for Injunction Pending Appeal (D.E. 70). But as set out in greater detail in their response, the Third-Party Defendants do not have the authority to suspend statutes for a constitutional officer such as Davis – or anyone else for that matter. See Third-Party Defendants' Response to Motion for Emergency Injunction Pending Appeal at Argument C (D.E. 91). The duty to issue marriage licenses has been statutorily imposed on county clerks and their deputies, and the Third-Party Defendants cannot reassign that responsibility.

claim that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The complaint "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While facts must be accepted as true for purposes of a motion to dismiss, the Court cannot accept pleaded legal conclusions or legal conclusions couched as factual statements. Id. Similarly, the Court is "not required to draw plaintiff's inference" from the pleaded facts. Aldana v. Del Monte Fresh Produce, Inc., 416 F.3d 1242, 1248 (11th Cir. 2005).

This Court has already considered Davis' alleged constitutional injuries in the context of weighing the potential risk of harm to her in entering the preliminary injunction. See Memorandum Opinion and Order at 16-28 (D.E. 43). The Court concluded that an Order compelling Davis to issue marriage licenses to qualified couples does not cause her any cognizable constitutional injury. Id. The Sixth Circuit has agreed, finding that "it cannot defensibly be argued that the holder of the Rowan County Clerk's Office, apart from who personally occupies that office, may decline to act in conformity with the United States Constitution as interpreted by a dispositive holding of the United States Supreme Court. There is thus little or no likelihood that the Clerk in her official capacity will prevail on appeal." See Order of 8-26-2015 (Exhibit 2 to D.E. 63). The United States Supreme Court also denied Davis' request for a stay of the preliminary injunction. See Supreme Court Order of 8-31-2015 (available at http://www.supremecourt.gov/orders/courtorders/083115zr2_d18e.pdf). Examining the Third-Party Complaint reveals no reason for the Court to depart from its earlier conclusion or that of the Sixth Circuit Court of Appeals and United States Supreme

Court. The pleaded facts, if true, do not state a constitutional claim upon which relief can be granted. Therefore, the Third-Party Complaint must be dismissed.

1. **The Third-Party Complaint Fails to State an Actionable Free Exercise Claim (Counts II, III, IV, V, VIII, IX, and X).**

Davis alleges that "Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst" and set out in the Beshear Letter violate her right to free exercise of religion guaranteed by the First Amendment to the U.S. Constitution and Sections 1, 3, and 5 of the Kentucky Constitution. See Third-Party Complaint at Counts II, III, IV, V, VIII, IX, and X (D.E. 34). The facts alleged fail to state a plausible claim for violation of Davis' right to the free exercise of religion. Therefore, the Third-Party Complaint must be dismissed.

The right to free exercise of religion includes both the freedom to believe and the freedom to act. Cantwell v. Connecticut, 310 U.S. 296, 303 (1940). The freedom to believe is absolute, but the freedom to act is "subject to regulation for the protection of society." Id. The constitutional guarantee of free exercise of religion does not authorize religious conduct that interferes with the rights of others or is detrimental to the public. See Mosier v. Barren County Board of Health, 215 S.W.2d 967, 969 (Ky. 1948). The Supreme Court has made clear that "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." Garcetti v. Ceballos, 547 U.S. 410, 419 (2006) (citation omitted). Simply put, Kim Davis as a citizen has a greater right to free exercise than does Kim Davis as Rowan County Clerk.

In assessing a challenge to government action that interferes with the free exercise of religion, the Court must first determine whether the action is neutral and generally applicable on the one hand, or targets religion on the other hand.

Employment Division of Oregon Dep't of Human Resources v. Smith, 494 U.S. 872 (1990); Church v. the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520 (1993). Government action that targets religion must meet strict scrutiny, while action that is neutral and generally applicable need only pass a rational basis review. Id.; see also Seger v. Ky. High School Athletic Ass'n, 453 Fed. Appx. 630, 634 (6th Cir. 2011). The analysis under the Kentucky Constitution is identical, as the Kentucky Supreme Court has held that the Kentucky Constitution provides no greater free exercise than the First Amendment to the United States Constitution. Gingerich v. Commonwealth, 382 S.W.3d 835, 844 (Ky. 2012).

But first, there must be evidence of "government action." The Beshear Letter and the marriage license form do not constitute "government action" that could support Davis' claims of religious infringement. Accordingly, the inquiry ends there.

As explained above, Governor Beshear and Commissioner Onkst do not have authority over the issuance of marriage licenses, and they cannot compel an elected county clerk such as Davis to act in particular manner with respect to marriage licensing. Therefore, the "marriage policies" allegedly stated in the Beshear Letter do not constitute government action as to Davis. The federal courts and federal law – not the Third-Party Defendants – compel Davis to issue marriage licenses to qualified applicants. See Memorandum Opinion and Order (D.E. 43); Obergefell v. Hodges, 135 S. Ct. 2584 (2015). Indeed, even if the Beshear Letter had never been transmitted and the marriage license form had never been revised, Davis would nevertheless be legally bound to issue marriage licenses to all qualified couples regardless of their sexual orientation. Obergefell makes this clear: the Commonwealth cannot refuse a marriage

license to an otherwise qualified same-sex couple.  The Beshear Letter is not the cause of Davis' alleged injury.  Without government action on the part of the Third-Party Defendants, Davis has no claim against them for violation of her right of free exercise. See, e.g. Wilcher v. Akron, 498 F.3d 516 (6th Cir. 2007).

Even if the Beshear Letter did somehow constitute government action as applied to Davis, it is clearly neutral and generally applicable.  The Beshear Letter correctly announced that "the United States Supreme Court issued its decision regarding the constitutionality of states' bans on same-sex marriage" and "struck down those laws, finding that they were invalid under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution."  See Exhibit 1.  As directed by the Supreme Court, Governor Beshear stated that "Kentucky will **recognize** as valid all same sex marriages performed in other states and in Kentucky" that "all **executive branch agencies** are already working to make any operational changes that will be necessary to implement the Supreme Court decision."  Id. (emphasis added).  With regard to county clerks such as Davis, Governor Beshear simply stated that, as required by statute, "the Department of Libraries and Archives will be sending a gender-neutral form to you" and that clerks "should consult with [their] county attorney on any particular aspects related to the implementation of the Supreme Court's decision."  Id.[4]  This alleged "policy" neither facially nor practically targets religion[5] but instead explains the

---

[4] The only change made to the form was to replace "bride" and "groom" with "first party" and "second party," respectively.

[5] Davis' attempt to demonstrate that the Beshear Letter targets religion rests on nothing more than conclusory allegations.  Third-Party Complaint at ¶ 34 (D.E. 34).  Davis' allegation that Governor Beshear granted an "exemption" "to Attorney General Conway when he was unwilling to defend Kentucky's marriage laws" is nonsensical.  Id.  The Governor of Kentucky does not possess supervisory authority over the Attorney General.  See Brown v. Barkley, 628 S.W.2d 616, 618 (Ky. 1982).  Attorney General Conway's decision to stop defending Kentucky's same-sex marriage ban was an exercise of prosecutorial

Executive Branch's uniform response to a binding decision of the United States Supreme Court.

Having shown that the Beshear Letter is neutral and generally applicable, it easily passes rational basis examination. Government action subject to rational basis review is accorded a strong presumption of validity. <u>FCC v. Beach Communications</u>, 508 U.S. 307, 314 (1993). To pass, the action need only be "rationally related to furthering a legitimate state interest." <u>Seger</u>, 453 Fed. Appx. at 635. Davis bears "the burden to negative every conceivable basis which might support it." <u>Beach Communications</u>, 508 U.S. at 315. The government, on the other hand, "has no obligation to produce evidence to sustain the rationality" of the challenged action. <u>Heller v. Doe</u>, 509 U.S. 312, 320 (1993).

Here, the Beshear Letter unquestionably furthers the important government interest in the orderly and uniform application of the rule of law. <u>See, e.g.</u> <u>Papachristou v. Jacksonville</u>, 405 U.S. 156, 171 (1972) ("The rule of law, evenly applied . . . is the great mucilage that holds society together."); <u>Texas Monthly, Inc. v. Bullock</u>, 489 U.S. 1 (1989) (government has interest in uniform application of laws). As this Court has already expressly recognized, the Beshear Letter "also rationally relates to several narrow interests identified in <u>Obergefell</u>," such as "individual autonomy" and allowing "same sex-couples to take advantage of the many societal benefits [or marriage] and foster[ing] stability for their children." Memorandum Opinion and Order at 21 (D.E. 43). Because the Beshear Letter is rationally related to a legitimate state interest, Davis' free exercise of religion claims fail as a matter of law.

---

discretion with respect to an unsettled legal question, as this Court previously noted. <u>See</u> Memorandum Opinion and Order at 20 (D.E. 43). That legal question is no longer unsettled.

Davis asserts that KRS 446.350 is similar to the federal Religious Freedom Restoration Act ("RFRA") and therefore subjects all government action that affects the free exercise of religion to strict scrutiny. RFRAs were enacted in an attempt to prohibit government from burdening individuals' free exercise of religion. City of Boerne v. Flores, 521 U.S. 507, 515-16 (1997). However, interpreting statutes such as KRS 446.350 to apply to free exercise by public officials acting in their official capacities would run directly into the Establishment Clause, which prohibits governments from favoring or promoting one set of religious beliefs over another. Once again, Davis fails to appreciate the critical distinction between actions taken in her personal capacity and those in her official capacity as Rowan County Clerk.

In addition, even if KRS 446.350 were deemed to permit a constitutionally elected official to refuse to perform a public duty, it could only apply when the government action "substantially burden[s]" one's free exercise. Id. The Beshear Letter does not substantially burden Davis' free exercise because it does not compel her – and indeed could not compel her – to do anything. More fundamentally, the issuance of marriage licenses is one of Davis' statutory duties. See KRS Ch. 402. The statutes do not require Davis to condone, approve, or endorse any marriage. Rather, Davis must simply certify that the legal prerequisites for issuance of a license have been met. Id. This purely ministerial function does not implicate her religious beliefs – let alone substantially burden them – any more than any action taken by a government official implicates his/her religious beliefs. As this Court correctly stated, Davis is free to practice her religion in any manner she chooses when not acting under color of law. See Memorandum Opinion and Order at 27 (D.E. 43).

Contrary to Davis' position, the United States Supreme Court has "never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate." Smith, 494 U.S. at 878-79. The Constitution does not "support the proposition that a stance of conscientious opposition relieves an objector from any colliding duty fixed by a democratic government." Id. at 882 (citation omitted).

Davis fails to appreciate the distinction between actions taken in her official capacity as county clerk and those in her individual capacity as a citizen. "[T]here is no constitutional right to public office." Napolitano v. Ward, 317 F. Supp. 83, 85 (N.D. Ill. 1970). The Supreme Court has made clear that statements and actions taken by public employees pursuant to their official duties are not statements and actions by private citizens for First Amendment purposes. Garcetti, 547 U.S. at 421. The scope of a public employee's right to free exercise "must sometimes yield to the legitimate interest of the government employer." Marchi v. Board of Coop. Educ. Servs., 173 F.3d 469, 476 (2d Cir. 1999). This must be the rule, or else government officials would be free to shirk their legal obligations simply by citing religion. Indeed, if a government official were permitted to discharge her duties as dictated by religious preference as opposed to the rule of law, the government would violate the First Amendment Establishment Clause, which this Court observed has likely already occurred. See Memorandum Opinion and Order at 15 (D.E. 43). By refusing to issue marriage licenses on the basis of her personal religious beliefs, Davis has established those beliefs as the policy of the Rowan County Clerk and thereby herself violated the First Amendment. "The risk that governmental approval of some [religious beliefs] and disapproval of others will be

perceived as favoring one religion over another is an important risk that the Establishment Clause was designed to preclude." <u>Texas Monthly, Inc. v. Bullock</u>, 489 U.S. 1, 20 (1989).

Because Davis fails to state an actionable claim for violation of her right of free exercise, the Third-Party Complaint must be dismissed.

> **2.** **The Third-Party Complaint Fails to State an Actionable Free Speech Claim (Counts VI and XI).**

Davis alleges that "Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst" and set out in the Beshear Letter violate her right to free speech guaranteed by the First Amendment to the U.S. Constitution and Sections 1 and 8 of the Kentucky Constitution.[6] <u>See</u> Third-Party Complaint at Counts VI and XI (D.E. 34).  Those policies, Davis alleges, "would compel [her] to state her identification, authorization, and approval as 'marriage' of same-sex relationships which cannot be 'marriage' according to her religious beliefs."  Third-Party Complaint at ¶¶ 92, 137 (D.E. 34).  As set out above, the Third-Party Defendants do not possess authority over Davis with respect to issuance of marriage licenses and therefore cannot "compel" her to issue such licenses.  Even if the Beshear Letter could be read as compelling Davis to issue marriage licenses, the free speech claim would still fail as a matter of law.

The act of issuing a government-sanctioned license is not protected speech attributable to Davis.  Rather, it is a ministerial act statutorily required of the Rowan County Clerk.  The issuance of a marriage license simply certifies that the couple satisfies the legal prerequisites for marriage.  KRS 402.100.  To the extent the issuance

---

[6] "[F]ree speech and free expression protections under the Kentucky Constitution are consistent with those in the United States Constitution" and therefore utilize the same standards.  <u>Cam I, Inc. v. Louisville/Jefferson County Metro Gov't</u>, 2007 Ky. App. LEXIS 370 (Ky. App. 2007); <u>see also</u> <u>Gingerich</u>, 382 S.W.3d at 839.

of marriage licenses constitutes speech, it is attributable to the government and not Davis.  Walker v. Texas Sons of Confederate Veterans, Inc., 135 S. Ct. 2239, 2249 (2015) (statements on license plates likely convey that "the State has endorsed that message").  Marriage licenses are issued under the authority of the Rowan County Clerk and not Kim Davis as a citizen.  Because the issuance of marriage licenses is not speech attributable to Davis, her claimed violation of the right to free speech fails as a matter of law.

The Supreme Court has made clear the distinction that Davis completely fails to acknowledge and appreciate:  "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom."  Garcetti, 547 U.S. at 419 (citation omitted).  Indeed, "government has significantly greater leeway in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large."  Engquist v. Oregon Dep't of Agriculture, 553 U.S. 591, 599 (2008).  To determine whether a government official's right of free expression has been violated, the Court must consider two questions.  First, did the official speak "as a citizen on a matter of public concern?"  Garcetti, 547 U.S. at 418 (citing the test in Pickering v. Board of Education, 391 U.S. 563 (1968)).  If not, "the employee has no First Amendment cause of action."  Id.  If yes, the Court must then determine whether the government "had an adequate justification for treating the employee differently from any other member of the general public."  Id.

This Court has previously found that Davis' allegations fail the first prong of this analysis.  See Memorandum Opinion and Order at 24-25 (D.E. 43).  The act of issuing marriage licenses is not speech as a citizen on a matter of public concern.  As the Court

previously explained, ordinary citizens are not empowered to issue marriage licenses. "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." Garcetti, 547 U.S. at 421-22. Davis is empowered to issue licenses only because she is cloaked with the statutory requirement to do so. Such "speech" is a product of her official duties, and therefore is not entitled to First Amendment protection.

Because Davis fails to state an actionable claim for violation of her right of free expression, the Third-Party Complaint must be dismissed.

**3.  The Third-Party Complaint Fails to State an Actionable Religious Test Claim (Counts VII and XII).**

Davis alleges that "Kentucky's marriage policies, as effected by Governor Beshear and Commissioner Onkst" and set out in the Beshear Letter amount to a religious test in violation of the United States Constitution article VI and Section 5 of the Kentucky Constitution. See Third-Party Complaint at Counts VII and XII (D.E. 34). The facts alleged fail to state a plausible claim for imposition of a prohibited religious test. Therefore, the Third-Party Complaint must be dismissed.

Section 5 of the Kentucky Constitution does not expressly prohibit a "religious test" for holding public office. See Ky. Const. § 5. Rather, this provision generally provides for freedom of religious exercise. Id. The Kentucky Supreme Court has held that Section 5 provides no greater protection than the rights conveyed by the First Amendment to the United States Constitution. Gingerich v. Commonwealth, 382 S.W.3d 835, 844 (Ky. 2012). As explained above, Davis has failed to allege an actionable claim for violation of the right of free exercise of religion. See supra Argument C(1).

Article VI of the United States Constitution provides that "no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States." Const. art. VI. By its plain language, this clause applies only to offices created under federal law – not state officials such as Davis. Therefore, Davis has no actionable claim under this provision.

To the extent article VI does apply to Davis, her claim under it still fails. Davis' obligation to issue marriage licenses does not constitute any type of religious or moral approval. Rather, Davis is required to perform the ministerial function of ascertaining that a putative married couple meets the legal perquisites for marriage. See KRS 402.100. Simply stated, Davis' role is a legal one – not a moral or religious one. The issuance of a marriage license to couple entitled to marry does not convey any religious approval of the union, just as the recording of a deed does not convey any religious approval of the conveyance of property.

Because Davis fails to state an actionable claim for imposition of a prohibited religious test, the Third-Party Complaint must be dismissed.

## IV.     CONCLUSION

The Third-Party Complaint is barred by the Eleventh Amendment and fails for lack of standing. In addition, the facts as pleaded do not state a claim upon which relief may be granted. Accordingly, the Third-Party Complaint must be dismissed.

Respectfully submitted,

STOLL KEENON OGDEN PLLC
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507-1380
(859) 231-3000
(859) 253-1093 facsimile

By: /s/ Palmer G. Vance II
    William M. Lear, Jr.
    Palmer G. Vance II

COUNSEL FOR THIRD-PARTY
DEFENDANTS GOVERNOR
STEVEN L. BESHEAR AND
COMMISSIONER WAYNE ONKST
IN THEIR OFFICIAL CAPACITIES

## CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing with the Court's ECF system on the 8th day of September 2015, which simultaneously serves a copy to the following via electronic mail:

Daniel J. Canon
Laura E. Landenwich
Leonard Joe Dunman
CLAY DANIEL WALTON ADAMS, PLC
dan@dancanonlaw.com
laura@justiceky.com
joe@justiceky.com
COUNSEL FOR PLAINTIFFS

William Ellis Sharp
ACLU OF KENTUCKY
sharp@aclu-ky.org
COUNSEL FOR PLAINTIFFS

Anthony Charles Donahue
DONAHUE LAW GROUP, PSC
acdonahue@donahuelawgroup.com
COUNSEL FOR KIM DAVIS

Roger K. Gannam
Jonathan D. Christman
LIBERTY COUNSEL
rgannam@lc.org
jchristman@lc.org
COUNSEL FOR KIM DAVIS

Cecil R. Watkins
ROWAN COUNTY ATTORNEY
cwatkins@prosecutors.ky.gov
COUNSEL FOR DEFENDANT
ROWAN COUNTY KENTUCKY

Jeffrey C. Mando
Claire E. Parsons
ADAMS, STEPNER, WOLTERMANN & DUSING, PLLC
cparsons@aswdlaw.com
jmando@aswdlaw.com
COUNSEL FOR DEFENDANT
ROWAN COUNTY KENTUCKY

/s/ Palmer G. Vance II
COUNSEL FOR THIRD-PARTY
DEFENDANTS GOVERNOR
STEVEN L. BESHEAR AND
COMMISSIONER WAYNE ONKST
IN THEIR OFFICIAL CAPACITIES

119363.152876/4423379.16