UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

APRIL MILLER, *et al.*,

                      Plaintiffs,

v.

KIM DAVIS, *et al.*,

                      Defendants.

Case No. 0:15-cv-00044-DLB

*Electronically filed*

## MOTION TO ENFORCE SEPTEMBER 3 AND SEPTEMBER 8 ORDERS

    Plaintiffs, on behalf of themselves and the putative class, respectfully request that this Court enforce its September 3 [RE # 75][1] and September 8 [RE #89] Orders.

    Specifically, with regard to this Court's September 3 Order, Plaintiffs request that the Court direct the Rowan County Deputy Clerks to (1) issue marriage licenses in the same form and manner as those that were issued on or before September 8, 2015; (2) disregard any instruction or order from Defendant Kim Davis that would require them to issue any marriage license in a form or manner other than the form and manner of licenses that were issued on or before September 8, 2015; (3) continue to file status reports that address their compliance with the Court's Orders and detail any attempt by Davis to interfere with their issuance of marriage licenses in the same form or manner as those that were issued on or before September 8, 2015; and (4) re-issue, *nunc pro tunc*, any marriage licenses that have

---

[1] At a September 3, 2015, hearing, the Court notified the Deputy Clerks and their appointed counsel that compliance with its orders would require refusing to enforce the "no marriage licenses" policy and issuing marriage licenses to individuals legally entitled to receive them. [RE #78: 9/3/15 Hrg. Transcript, PAGE ID #1729-32.]

1

been issued since September 14, 2015, in the same form or manner as those that were issued on or before September 8, 2015.

Plaintiffs further request, with regard to the Court's September 8 Order, that this Court (1) expressly direct Defendant Davis to refrain from interfering with the Deputy Clerks' issuance of marriage licenses in the same form or manner as those that were issued on or before September 8, 2015, including but not limited to, taking any action that would cause further alteration to the marriage license forms or taking any action to penalize any Deputy Clerk for issuing marriage licenses in the same form or manner as those that were issued on or before September 8, 2015; and (2) provide Davis with notice that any violation of this Order will result in civil sanctions, including but not limited to (a) the placement of the Rowan County Clerk's Office into a receivership for the limited purposes of issuing marriage licenses, and (b) the imposition of civil monetary fines as appropriate and necessary to coerce Davis' compliance with this Court's Order.

## I.     THE ROWAN COUNTY CLERK'S OFFICE IS NOT IN COMPLIANCE WITH THIS COURT'S SEPTEMBER 3 AND SEPTEMBER 8 ORDERS.

The Court is by now well-acquainted with the facts giving rise to this action. After an evidentiary hearing and full briefing by the parties, this Court entered a preliminary injunction on August 12, 2015, barring Davis, in her official capacity, from enforcing her "no marriage license" policy against Plaintiffs. [RE #43.] In doing so, the Court examined, and rejected, each of the purported harms Davis alleged would result if an injunction were granted. The Court rejected Davis' free speech claim as well as her arguments under the Religious Test Clause and Kentucky's Religious Freedom Restoration Act. [*Id.* at 21-28.] Following entry of this Court's preliminary injunction, Davis sought to stay the injunction, and her stay requests were denied by this Court, the Sixth Circuit Court of Appeals, and

finally the U.S. Supreme Court. [RE #52; RE #55; *Miller, et al. v. Davis*, No. 15-5880 (6th Cir. Aug. 26, 2015); *Davis v. Miller*, *et al.*, No. 15A250, -- S.Ct. --, 2015 WL 5097125, at *1 (U.S. Aug. 31, 2015).]

Following the Supreme Court's denial of Davis' emergency application to stay the preliminary injunction, Plaintiffs Miller and Roberts went to the Rowan County Clerk's Office to obtain their marriage license. They were denied a license by the Clerk's Office, however, prompting Plaintiffs to file a motion for contempt seeking financial sanctions. [RE #67.] The Court ordered a hearing for September 3, 2015, at which the parties, along with the Rowan County Deputy Clerks, appeared. At that hearing, the Court modified the preliminary injunction to clarify that the Rowan County Clerk shall issue marriage licenses to all qualified individuals who apply, not just the named Plaintiffs. [*See* RE #74.] The Court also found Davis in contempt for her continued refusal to comply with the August 12 injunction, and the Court ordered her taken into custody until such time as she agreed to abide by the Court's order.

During the contempt hearing, the Court also took pains to ensure that its injunction would be enforced. Central to the near day-long discussion was the fact that the marriage licenses to be issued by the Clerk's Office must be issued under the authority of the Clerk's Office. Davis voiced repeated objections to having her name on the license. Indeed, both at the July 20, 2015, hearing on the motion for preliminary injunction and at the contempt hearing, Davis testified under oath that the computer software automatically populated her name on the licenses:

> Q. Who puts that information on the form, your name and your title as Rowan County Clerk?
>
> A. It populates from our software.

3

Q. Do you have any control over that?

A. No.

***   ***   ***

Q. And do you have the discretion to create a different kind of license that would not require your authorization for it to be issued?

A. No.

[RE #26: 7/20/15 Hrg. Transcript 38, 39; *see also* RE #78, PAGE ID #1624.]

This testimony is of critical importance now. At the contempt hearing, the feasibility of alternative licenses was discussed, with Davis' counsel asserting: "The governor can change that form, make it a state form with no personal authority, no Kim Davis name on it, available in a Rowan County Clerk's office, and this case would be over, Your Honor." [RE #78, PAGE ID #1647.] The Governor's counsel disagreed, noting that the marriage license requirements are "dictated by statute, and the governor cannot change the statute." [*Id.* at PAGE ID #1648.] The issue was fully vetted and the Court concluded:

> Well, the form says the clerk or deputy clerk. It does bear her name. And we're not going to plow that ground again. I previously found that really the clerk is performing a ministerial task verifying that the person is otherwise legally eligible to marry, and I'm not going to rehash that. The prior Court's order speaks for itself.

[*Id.* PAGE ID # 1689.]

After five of six Deputy Clerks "stated under oath that they would comply with the Court's Order and issue marriage licenses to all legally eligible couples," [RE #89, PAGE ID #1827], the Court then considered Davis' contention that licenses issued by the Deputy Clerks would not be valid. Plaintiffs were asked whether they objected to the Court's solution. Because KRS § 402.100 expressly authorizes deputy clerks to issue licenses on

4

behalf of the county clerk, Plaintiffs expressed no serious reservations about the proposed solution. The Court then directed, "[I]f I have individuals who've indicated they're willing to issue the licenses, and I order that to occur, *it will be on the form that was used.*" [RE #78, PAGE ID #1724 (emphasis added).] The Court also cautioned the Deputy Clerks not to engage in any "shenanigans." [*Id.* at PAGE ID #1732.]

During Davis' incarceration, Deputy Clerk Brian Mason began issuing marriage licenses out of the Rowan County Clerk's Office. The licenses were largely unaltered, but did remove Kim Davis' name and replaced it with "Rowan County." [*See* Status Report RE #84.] Three of the named Plaintiff couples obtained licenses during this period. [*Id.*]

On September 8, 2015, per the Court's Order, Plaintiffs filed a status update. [RE #84.] The status update described the marriage licenses issued to Plaintiffs and others. Pointing to those licenses, the Court lifted the contempt sanction against Davis, explaining that it was "satisfied that the Rowan County Clerk's Office is fulfilling its obligation to issue marriage licenses to all legally eligible couples, consistent with the U.S. Supreme Court's holding in *Obergefell* and this Court's August 12, 2015 Order." [RE #89, PAGE ID #1827.] In the Order directing Davis' release, the Court made clear that Davis was prohibited from interfering with the licenses then being issued by the Deputy Clerk:

> Defendant Davis shall not interfere in any way, directly or indirectly, with the efforts of her deputy clerks to issue marriage licenses to all legally eligible couples. If Defendant Davis should interfere in any way with their issuance, that will be considered a violation of this Order and appropriate sanctions will be considered.

*Id.*

Despite this clear directive, however, Davis immediately began interfering with the Deputy Clerk's issuance of marriage licenses upon returning to her office on September 14. Rather than standing aside while Deputy Clerk Mason issued the same marriage

5

licenses upon which this Court relied in its September 8 Order lifting the civil contempt finding and releasing her from custody, Davis "confiscated all the original forms, and provided a changed form which deletes all mentions of the County, fills in one of the blanks that would otherwise be the County with the Court's styling, deletes her name, deletes all of the deputy clerk references, and in place of deputy clerk types in the name of Brian Mason, and has him initial rather than sign." [RE #114: Notice filed by Brian Mason.]

Plaintiffs have obtained a copy of one of these altered licenses, a redacted copy of which is attached as Exhibit 1. As described in Mason's Notice filed with this Court, Davis made substantial and material alterations to the forms that include forcing Mason to issue the licenses as a "notary public" rather than a Deputy Clerk, eliminating any mention of the County, and changing the forms to state instead that they are issued "Pursuant to Federal Court Order #15-CV-44 DLB." *See* Ex. 1.

Davis' decision to significantly interfere with the marriage licenses being issued as of this Court's September 8 Order not only violates the Court's clear directive, but it also has resulted in material alterations to those licenses that render their validity questionable at best. The statutes governing the contents of marriage licenses direct that licenses be issued by county clerks using the forms prescribed by the Kentucky Department for Libraries and Archives, and that the contents of those forms be uniform throughout the state. *See* KRS § 402.100 ("Each county clerk shall use the form prescribed by the Department for Libraries and Archives when issuing a marriage license."); KRS § 402.110 (providing that the "form of marriage license prescribed in KRS 402.100 shall be uniform throughout this state"). Kentucky law also dictates the contents of the form, which must include an authorization statement of the county clerk, *id.* § 402.100(1)(a), "the date and

6

place the license is issued," *id.* § 402.100 (1)(c), and the "signature of the county clerk or deputy clerk issuing the license," *id.* The statute does not authorize notaries public to issue licenses, nor do notaries have that authority elsewhere under Kentucky law. *See* KRS § 423.010, *et seq*.

Because a valid license is a prerequisite to solemnization, *see* KRS § 402.080, and because Kentucky courts have yet to address whether defects in a license of this magnitude can void the marriage, any marriage performed pursuant to the licenses issued last week by Davis' office is potentially open to a future challenge to its validity. *See, e.g.*, *Pinkhasov v. Petocz,* 331 S.W.3d 285, 294 (Ky. Ct. App. 2011) ("[W]hile every presumption will be indulged to support finding a legally valid civil marriage, parties may not disregard statutorily mandated solemnities, and the strongest presumption must yield to uncontroverted evidence.")[2]

---

[2] The court further explained in *Pinkhasov*:

> [W]e *hold the General Assembly intended two essential requisites of a legally valid civil marriage which are inviolable. First, the parties intending to be married must obtain a marriage license from a county clerk.* Second, having obtained a marriage license, the parties intending to be married must solemnize their intent to be married before a person or society believed in good faith to possess authority to solemnize the marriage. *While functionaries, such as county clerks and marriage officiants, who contravene statutorily imposed duties relative to the licensing, establishment, and recording of a legally valid civil marriage may be exposed to penalties under KRS 402.990, conformity with the two foregoing requirements deduced from KRS 402.080 is entirely within the power, control, and responsibility of the parties intending to be legally married, and we hold strict compliance therewith is necessary for the establishment of a legally valid and binding civil marriage.*

331 S.W.3d at 294 (emphasis added).

7

## II. FURTHER ENFORCEMENT OF THE COURT'S SEPTEMBER 3 AND SEPTEMBER 8 ORDERS IS NECESSARY TO PROTECT THE RIGHTS OF PLAINTIFFS AND THE PUTATIVE CLASS.

The marriage licenses currently being issued by the Rowan County Clerk's Office do not conform to this Court's September 3 and September 8 Orders, which contemplated that Davis or the Deputy Clerks would issue marriage licenses in the usual form and manner and that Davis would not interfere with that process. Davis' conduct obstructing the Deputy Clerks' usual process has, at a minimum, created considerable uncertainty for marriage applicants regarding the legality of their licenses and subsequent marriages. Her intentional creation of such uncertainty surrounding the exercise of a fundamental right like marriage – an uncertainty not faced by couples in other counties – is a significant burden and injury that Plaintiffs and members of the putative class ought not bear. Nor should Plaintiffs and members of the putative class have to endure the humiliation and stigma associated with the receipt of marriage licenses that are effectively imprinted with Davis' opprobrium. The marriage licenses currently issued by the Rowan County Clerk's Office are so materially altered that they create a two-tier system of marriage licenses throughout state. The adulterated marriage licenses received by Rowan County couples will effectively feature a stamp of animus against the LGBT community, signaling that, in Rowan County, the government's position is that LGBT couples are second-class citizens unworthy of official recognition and authorization of their marriage licenses but for this Court's intervention and Order.

### A. The Court Should Direct the Deputy Clerks to Issue Marriage Licenses in the Same Form and Manner as Those Issued On or Before September 8, 2015.

To bring the Defendants into compliance with this Court's Orders and to restore the rights of Plaintiffs and the putative class, the Court should take steps to further enforce its

September 3 Order vis-à-vis the Deputy Clerks. As set forth above, Plaintiffs believe that compliance could be achieved by providing additional direction to the Deputy Clerks. First, the Court should expressly Order the Deputy Clerks to issue marriage licenses in the same form and manner as those that were issued on or before September 8, 2015. Deputy Clerk Mason, at least, has indicated both his willingness and desire to issue valid licenses, and has stated that he does not want to be issuing potentially invalid licenses. [RE #114.] Second, the Deputy Clerks should be ordered to disregard and refuse to obey any instruction or request from Defendant Kim Davis that would result in their issuance of marriage licenses in a form or manner other than the form and manner of licenses that were issued on or before September 8, 2015. Third, given Davis' ongoing defiance, the Court should order the Deputy Clerks to continue filing regular status reports detailing their compliance with the Court's Orders, [*see* RE #89, PAGE ID #1828], and any attempt by Davis to interfere with their issuance of marriage licenses in the same form or manner of those that were issued on or before September 8, 2015. Finally, to remedy the harm caused as a result of the materially altered marriage licenses issued, the Court should order the Deputy Clerks to re-issue – *nunc pro tunc* and in the same form or manner as those that were issued on or before September 8, 2015 – any marriage licenses that have been issued since September 14, 2015.

> B. **The Court Should Prohibit Defendant Davis From Taking Any Action That Would Interfere With, Inhibit, or Prevent the Deputy Clerks From Issuing Marriage Licenses in the Same Form and Manner as Those That Were Issued on or Before September 8, 2015.**

On September 8, this Court lifted the civil contempt sanction imposed on Davis but expressly directed her not to "interfere *in any way, directly or indirectly*, with the efforts of her deputy clerks to issue marriage licenses to all legally eligible couples." [RE # 89

9

(emphasis added).] Davis' material alteration of the marriage license forms so that they do not comport with the legal requirements for a valid license ran afoul of that Order. Indeed, even if the altered licenses were ultimately determined to be valid at some future point, as explained above, Davis' interference has caused substantial injury to Plaintiffs and members of the putative class by intentionally creating uncertainty surrounding their exercise of the fundamental right of marriage and establishing a two-tier system of marriage licenses through the issuance of licenses marked by her opprobrium.

Accordingly, Plaintiffs believe that, in further enforcement of its September 8 Order, the Court should direct Defendant Davis to refrain from interfering with the Deputy Clerks' issuance of marriage licenses in the same form or manner as those that were issued on or before September 8, 2015.  Specifically, the Court should prohibit Davis from taking any action to (1) cause any alteration to the marriage license forms as they were issued on or before September 8, or (2) penalize any Deputy Clerk for issuing marriage licenses in the same form or manner as they were issued on or before September 8.  In connection with the Order prohibiting interference, the Court should also instruct Davis to return any previously confiscated forms to the Deputy Clerks. And, in the event that those forms are not available, authorize the Deputy Clerks to immediately secure new forms from the appropriate agency.

Moreover, given Davis' repeated failure to comply with this Court's Orders, the Court should provide Davis with notice that any violation of this Order will result in civil sanctions, including both the placement of the Rowan County Clerk's Office into a receivership for the limited purposes of issuing marriage licenses and the imposition of coercive monetary fines to compel her compliance with the Court's Order.

When faced with state actors who persist in violations of federal law, courts have appointed receivers "to coerce public officials to comply with legal mandates in a number of factual settings, including public schools, housing, highways, nursing homes, and prisons." *Dixon v. Barry*, 967 F. Supp. 535, 550 (D.D.C. 1997). Because the imposition of a receivership is an equitable remedy, it is available only when there is no adequate legal remedy. *United States v. Bradley*, 644 F.3d 1213, 1310 (11th Cir. 2011). Thus, the primary consideration is "whether any other remedy is likely to be successful." *Dixon*, 967 F. Supp. at 550 (citing *Shaw v. Allen*, 771 F. Supp. 760, 762 (S.D.W.Va. 1990) ("When more traditional remedies, such as contempt proceedings or injunctions, are inadequate under the circumstances a court acting within its equitable powers is justified, particularly in aid of an outstanding injunction, in implementing less common remedies, such as a receivership, so as to achieve compliance with a constitutional mandate."); *Newman v. Alabama*, 466 F. Supp. 628, 635 (M.D. Ala. 1979) ("When the usual remedies are inadequate, a court is justified in resorting to a receivership, particularly when it acts in aid of an outstanding injunction.")).  Should Davis again violate this Court's order, she will have unfailingly demonstrated that the usual remedies for securing compliance are simply inadequate and that a receivership is an appropriate remedy pending her obedience, which may be induced via coercive civil monetary fines as appropriate and necessary.

## Conclusion

For the foregoing reasons, Plaintiffs respectfully request that this Court take the steps described above to enforce its September 3 and September 8 Orders and that Plaintiffs be awarded attorneys' fees incurred in the preparation of their motions to enforce the Court's Orders.

        Respectfully submitted,

| | |
|---|---|
| William E. Sharp<br>Legal Director<br>ACLU OF KENTUCKY<br>315 Guthrie Street, Suite 300<br>Louisville, KY 40202<br>(502) 581-9746<br>sharp@aclu-ky.org | s/ Heather L. Weaver<br>Daniel Mach*<br>Heather L. Weaver*<br>AMERICAN CIVIL LIBERTIES UNION<br>   FOUNDATION<br>915 15th Street NW<br>Washington, DC  20005<br>(202) 675-2330<br>dmach@aclu.org<br>hweaver@aclu.org |
| Daniel J. Canon<br>Laura E. Landenwich<br>L. Joe Dunman<br>CLAY DANIEL WALTON & ADAMS, PLC<br>462 South Fourth Street<br>Suite 101<br>Louisville, KY 40202<br>(502) 561-2005<br>ACLU OF KENTUCKY Cooperating<br>   Attorneys<br>dan@justiceky.com<br>laura@justiceky.com<br>joe@justiceky.com | Ria Tabacco Mar*<br>James D. Esseks*<br>AMERICAN CIVIL LIBERTIES UNION<br>   FOUNDATION<br>125 Broad Street<br>New York, NY 1004<br>(212) 549-2627<br>rmar@aclu.org<br>jesseks@aclu.org |
| * Admitted *pro hac vice* | *Counsel for Plaintiffs* |

## CERTIFICATE OF SERVICE

I certify that on September 21, 2015, I filed this motion and accompanying proposed order with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Jeffrey C. Mando
Claire E. Parsons
Cecil Watkins
jmando@aswdlaw.com
cparsons@aswdlaw.com
cwatkins@prosecutors.ky.gov

*Counsel for Rowan County*

Anthony C. Donahue
Roger Gannam
Jonathan Christman
Horatio G. Mihet
acdonahue@donahuelawgroup.com
rgannam@lc.org
jchristman@lc.org
hmihet@lc.org

*Counsel for Kim Davis*

William M. Lear, Jr.
Palmer G. Vance II
william.lear@skofirm.com
gene.vance@skofirm.com

*Counsel for Governor Beshear and Commissioner Onkst*

                                              s/ Heather L. Weaver
                                              *Counsel for Plaintiffs*