UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND
CIVIL ACTION NO. 15-cv-044-DLB

APRIL MILLER, PH.D., et al.                                            PLAINTIFFS

v.

KIM DAVIS, INDIVIDUALLY AND IN HER
OFFICIAL CAPACITY AS ROWAN
COUNTY CLERK, et al.                                                  DEFENDANTS

and          **REPLY MEMORANDUM IN FURTHER SUPPORT OF**
             **MOTION TO DISMISS THIRD-PARTY COMPLAINT**

KIM DAVIS                                               THIRD-PARTY PLAINTIFF

v.

STEVEN L. BESHEAR, IN HIS OFFICIAL
CAPACITY AS GOVERNOR OF KENTUCKY, et al.      THIRD-PARTY DEFENDANTS

***          ***          ***          ***          ***

Come the third-party defendants Steven L. Beshear, in his official capacity as Governor of Kentucky, and Wayne Onkst, in his official capacity as State Librarian and Commissioner of Kentucky Department for Libraries and Archives (collectively "Third-Party Defendants"), by counsel, and pursuant to Federal Rule of Civil Procedure 12(b),[1] respectfully tender this Reply Memorandum in further support of their Motion to Dismiss the Third-Party Complaint (D.E. 92).

## I.     INTRODUCTION

In her Response to the Motion to Dismiss ("Response") (D.E. 123), Davis reiterates the very same arguments she has repeatedly made, which are the very same

---

[1] Third-Party Defendants' arguments for dismissal because of Eleventh Amendment immunity and lack of standing are premised upon Federal Rule of Civil Procedure 12(b)(1), while dismissal arguments for failure to state a claim are based on Rule 12(b)(6).  Third-Party Defendants correctly set out the applicable standards for each argument.  See Motion to Dismiss Memorandum at 4-5, 10-11 (D.E. 92).

arguments this Court, the Sixth Circuit, and the Supreme Court have repeatedly rejected.[2]  The Third Party Complaint is nothing more than Davis' baseless attempt to conjure up a non-existent directive in an attempt to avoid compliance with the actual source of the requirement that the Office of the Rowan County Clerk issue marriage licenses—a final and binding decision of the United States Supreme Court.  This Court should once again deny Davis' meritless assault on the rule of law.  The Third-Party Complaint must be dismissed because it is barred by the Eleventh Amendment, lacks standing, and fails to state any actionable claim.

## II.   ARGUMENT

### A.   Davis' Arguments Are Premised Upon Fundamental Errors of Law and Fact.

Before turning to the specific grounds that compel dismissal of the Third-Party Complaint, it is necessary to correct several fundamental errors underlying Davis' argument.  That Davis stubbornly repeats these inaccuracies does not make them true.

The first Davis inaccuracy involves the statutory requirements for issuing marriage licenses.  First, "[e]ach county clerk shall use the form prescribed by the Department for Libraries and Archives ["KDLA"] when issuing a marriage license."  KRS 402.100.  The form is required to contain "[a]n authorization statement of the county clerk issuing the license for any person or religious society authorized to perform marriage ceremonies to unite in marriage the persons named."  Id. at (1)(a).  The form shall also include certain specified vital information and "the signature of the county

---

[2] See, e.g. Memorandum Opinion and Order (D.E. 43) (finding no likelihood of success on the merits of Davis' constitutional arguments); Sixth Circuit Order of 8-26-2015 (Exhibit 2 to D.E. 63) (finding "little or no likelihood that the Clerk in her official capacity will prevail on appeal"); Supreme Court Order of 8-31-2015 (denying Davis' request for a stay of preliminary injunction); Memorandum Order (D.E. 103) (finding that Davis is unlikely to succeed on her First Amendment claims against the Third-Party Defendants and finding that all other claims against them are barred by the Eleventh Amendment); Sixth Circuit Order of 9-15-2015 (attached as Exhibit 1) (finding that Davis is unlikely to succeed on her federal claims against the Third-Party Defendants and that the state claims are barred by the Eleventh Amendment).

clerk or deputy clerk issuing the license." Id. at (1)(a) and (1)(c).  The form must include a certificate with "[a] signed statement by the county clerk or a deputy county clerk . . . that the marriage certificate was recorded" after the marriage has been solemnized.  Id. at (2)(d).  It must also include "the name of the county clerk under whose authority the license was issued."  Id. at (3)(a).

The second Davis inaccuracy is that the statutory framework for the issuance of marriage licenses was obliterated by Obergefell v. Hodges, 135 S.Ct. 2584 (2015). That framework continues to exist today.  Obergefell simply held that qualified same-sex couples cannot be excluded from marriage.  "[T]he State laws challenged by Petitioners in these cases are now held invalid to the extent they exclude same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples."  Id. at 2605. Obergefell did not invalidate any state marriage licensing schemes – it simply held that however a state chooses to issue licenses, it must issue them on the same terms to same-sex couples.  The only Kentucky laws held invalid by Obergefell are KY.CONST. § 233A and the statutory provisions that purport to limit marriage to opposite-sex couples.

The third Davis inaccuracy is that the Third-Party Defendants can somehow relieve Davis of her statutory obligation to issue marriage licenses.  Again, Davis is simply wrong.  In Baker v. Fletcher, 204 S.W.3d 589, 593 (Ky. 2006), the Kentucky Supreme Court held that the Governor's attempt to suspend a statute through executive order was void ab initio.  Indeed, only the General Assembly may suspend a statute. KY.CONST. § 15.  The Kentucky statutory framework for issuing marriage licenses says what it says until and unless the legislature changes it.

Davis' fourth inaccuracy claims that the Third-Party Defendants have authority

over marriage licensing.  Again, that claim is not true.  Other than KDLA prescribing the license form, the Third-Party Defendants have no involvement whatsoever with issuing marriage licenses.  The General Assembly has chosen to place the sole authority to issue marriage licenses with the county clerks and their deputies.  "[W]hen the General Assembly has placed a function, power or duty in one place there is no authority in the Governor to move it elsewhere unless the General Assembly gives him that authority." Brown v. Barkley, 628 S.W.2d 616, 623 (Ky. 1982).  Following Obergefell, the KDLA made a single change to the marriage license form:  replacing "bride" and "groom" with "first party" and "second party."  Davis does not allege that the updated form fails to comply with KRS 402.100 or that the form was otherwise incorrectly drafted.

Davis' fifth inaccuracy is her contention that the Third-Party Defendants possess authority over her.  Davis has not cited a single authority in support of that position.  The Governor has no supervisory authority over elected constitutional officers.  See Brown, 628 S.W.2d 616; KY.CONST. § 99; see also Shipp v. Bradley, 275 S.W. 1, 7 (Ky. 1925) (elected county sheriffs are not state officials).  The county fiscal court sets the salary of county clerks, and vacancies in the office of county clerk are filled by the county judge/executive.  KRS 64.530, 63.220.  Davis' forlorn attempt to dismiss Brown by stating that the case involved statewide elected officials is completely incorrect.  A constitutional officer is a constitutional officer whether elected statewide or by county. The Governor has no supervisory authority over other constitutional officers except as expressly granted in the Constitution or by the legislature in conformity therewith, and this is just as true with respect to a County Clerk, the Commissioner of Agriculture, or

the Attorney General.[3]  The Third-Party Defendants do not oversee the county clerks.

Finally, Davis inaccurately attempts to distract from her failure to perform the statutory duties of her office by alleging that the June 26, 2015 letter from Governor Beshear ("Beshear Letter") to county clerks set "marriage policies."  Third-Party Complaint at ¶ 25 (D.E. 34).  Even a cursory reading reveals that the Beshear Letter does not create any policy enforceable upon county clerks.  See Exhibit 1 to D.E. 92.  It merely states that KDLA will prescribe a gender-neutral marriage license form, which it did by replacing the words "bride" and "groom."  Id.  And, as explained above, Davis does not allege that the form was revised in a way inconsistent with KRS 402.100.  With respect to their implementation of Obergefell, the Beshear Letter encourages county clerks to consult with their county attorney.  Id.[4]  Contrary to Davis' apparent position, not every word uttered by a state official constitutes state policy.

**B.     This Court Has Jurisdiction to Consider the Motion to Dismiss.**

Davis erroneously contends that because she attempted to appeal from the August 25, 2015 Order (D.E. 58) staying briefing on her Motion for Preliminary Injunction, this Court is without jurisdiction to consider the Motion to Dismiss.[5]  An

---

[3] Of course, Davis makes no effort to distinguish Brown in her irrelevant *ad hominem* attack on the exercise of prosecutorial discretion by the Attorney General.

[4] Davis misstates the Beshear Letter by taking quotes out of context and failing to provide the full citation in a way that manipulates the text.  See Response to Motion to Dismiss at 10 (D.E. 123).  She claims that "Gov. Beshear further ordered that Kentucky clerks 'must license and recognize the marriages of same-sex couples[.]'"  Id.  But what that sentence actually says is: "The Obergefell decision makes plain that the Constitution requires that Kentucky – and all states – must license and recognize the marriages of same-sex couples."  Exhibit 1 to D.E. 92.  This, of course, is a correct recitation of the Obergefell holding.

[5] The Order did not deny the requested injunction and therefore is not immediately appealable.  See Motion to Dismiss Appeal (attached as Exhibit 2 and incorporated herein by reference).  The Sixth Circuit passed a decision on the appealability issue to the merits panel because it "is intertwined with the merits of the appeal."  See Order (Exhibit 1).  An order "that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction and therefore is not appealable under § 1292(a)(1)."  Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 279 (1988).  The district court is not divested of jurisdiction where a party attempts to appeal from a non-appealable order.  United States v. Cannon, 715 F.2d 1228, 1231 (7th Cir. 1983).

interlocutory appeal deprives the district court of jurisdiction only as to those "matters forming the basis of the appeal." <u>Island Creek Coal Sales Co. v. Gainesville</u>, 764 F.2d 437, 439 (6th Cir. 1985).  "[I]n an appeal from an order granting or denying a preliminary injunction, a district court may nevertheless proceed to determine the action on the merits." <u>United States v. Price</u>, 688 F.2d 204, 215 (3d Cir. 1982); <u>accord</u> <u>Free Speech v. Fed. Election Comm'n</u>, 720 F.3d 788, 791-92 (10th Cir. 2013); <u>Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.</u>, 937 F. Supp. 2d 18, 26 (D. D.C. 2013).  Thus, Davis' attempted appeal of the August 25, 2015 Order – regardless of its defectiveness – does not divest this Court of jurisdiction to consider this dispositive motion.

**C.     The Third-Party Complaint Is Barred by the Eleventh Amendment.**

Davis does not dispute Third-Party Defendants' position that the Eleventh Amendment bars any request for relief (including indemnity under Count I) that seeks anything other than prospective injunctive relief.  <u>See</u> Motion to Dismiss Memorandum at Argument A(1) (D.E. 92); Response at 16 (D.E. 123).  Therefore, all claims for relief other than a prospective injunction must be dismissed as conceded.

Davis' claim for injunctive relief likewise fails under the Eleventh Amendment because it does not meet the narrow exception set out in <u>Ex Parte Young</u>, 209 U.S. 123 (1908).  In order for that exception to apply, the defendant official "must have some connection with the enforcement of the act." <u>Id.</u> at 157.  Here, Davis has utterly failed to "allege facts showing how [Third-Party Defendants are] connected to, or [have] responsibility for, the alleged constitutional violations." <u>Top Flight Entertainment, Ltd. v. Schuette</u>, 729 F.3d 623, 634 (6th Cir. 2013).  "<u>Young</u> does not reach state officials who lack a special relation to the particular statute and are not expressly directed to see to its enforcement." <u>Russell v. Lundergan-Grimes</u>, 784 F.3d 1037, 1047 (6th Cir. 2015)

(citation omitted).  "And it requires more than a bare connection to administering a statute."  Id.  "General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law."  Children's Healthcare is a Legal Duty v. Deters, 92 F.3d 1412, 1416 (6th Cir. 1996).

As explained above and in their opening memorandum, neither Governor Beshear nor Commissioner Onkst is responsible for setting or enforcing marriage licensing policy.  Rather, the marriage licensing regime is statutorily enacted by the General Assembly, which has placed exclusive authority for issuing licenses with the county clerks and their deputies.  The Third-Party Defendants do not supervise the county clerks or have authority to compel them to act.  Their sole connection to marriage licensing is KDLA's obligation to prescribe the license form, which here, was limited to removing the words "bride" and "groom."  Davis has not alleged and cannot show that the revised form was inconsistent with KRS 402.100 or otherwise unlawful. What Davis actually seeks is amendment of the marriage licensing statutes – relief the Third-Party Defendants cannot provide.  For the Third-Party Defendants to exercise such a power would be an incursion on Kentucky's "double-barreled, positive-negative" separation of powers.  See LRC v. Brown, 664 S.W.2d 907, 912 (Ky. 1984) (citing KY.CONST. §§ 27, 28).  Therefore, the claim for injunctive relief against the Third-Party Defendants must be dismissed.

In addition to the fact that none of Davis' claims fit within the Ex Parte Young exception, the Eleventh Amendment bars any federal court claim for enforcement of state constitutional provisions and state statutes, including KRS 446.350.  Pennhurst v. Halderman, 465 U.S. 89, 106 (1984).  Davis attempts to subvert this black-letter law by

elevating KRS 446.350, Kentucky's Religious Freedom Restoration Act ("RFRA"), to federal law. This attempt fails.

First, KRS 446.350 does not create a liberty interest giving rise to a procedural due process right. For such a right to exist, a statute must contain "explicitly mandatory language in connection with requiring specific substantive predicates." Gibson v. McMurray, 159 F.3d 230, 233 (6th Cir. 1998) (citation omitted). The statute must also "mandate[] a specific outcome if the substantive predicates are met." Id. Where those requisites are met, the claimant's liberty may not be deprived without due process of law. Underwood v. Luoma, 107 Fed. Appx. 543, 545 (6th Cir. 2004). Davis cites no authority for the proposition that KRS 446.350 creates any liberty interest. KRS 446.350 does not require any mandatory action on the part of a government actor with specific outcomes so as to create a procedural due process right.[6] Further, any liberty interest Davis might possibly have as a private citizen does not extend to her role as a governmental official. Even if KRS 446.350 were somehow to apply to Davis, it cannot apply in her official capacity as the Rowan County Clerk because accommodating her in the manner she suggests would amount to a violation of the Establishment Clause.

Second, 42 U.S.C. § 1988(a) does not apply. That statute provides that federal law generally governs claims pursuant to 42 U.S.C. § 1983, but state law may be borrowed for an issue on which the federal law is silent and not inconsistent. The statute is essentially a gap-filler to ensure there are remedies to enforce federal rights. Wilson v. Garcia, 471 U.S. 261, 269 (1985). "Congress surely did not intend to assign

---

[6] Instead, she relies upon cases in which criminal defendants and prisoners claimed a liberty interest as a result of a statute or regulation requiring a government actor to allow certain things such as a paperback dictionary, court-appointed expert, or certain mail items. See Response at 17 (D.E. 123). These authorities are inapplicable to a statute that purports simply to establish a standard of review. Moreover, the analysis in these prisoner cases was abrogated in part by Sandin v. Conner, 515 U.S. 472 (1995).

to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action." Id. The express terms of section 1988(a) prohibit a court from "replacing federal law with more favorable state law." Wilson v. Morgan, 477 F.3d 326, 332-33 (6th Cir. 2007). States cannot create federal constitutional rights actionable under section 1983. Harrill v. Blount County, 55 F.3d 1123, 1125-26 (6th Cir. 1995). Here, KRS 446.350 is plainly inconsistent with federal law because it purports to subject government action to scrutiny more rigorous than that required under federal law. The statute purports to require a government to show "by clear and convincing evidence" that its action furthers a "compelling governmental interest" in "the least restrictive means." KRS 446.350. However, federal law requires that such government action meet only rational basis review. See Employment Division of Oregon Dep't of Human Resources v. Smith, 494 U.S. 872 (1990). Therefore, because KRS 446.350 is inconsistent with federal law, it cannot be borrowed pursuant to 42 U.S.C. § 1988(a). Davis fails in her attempt to elevate KRS 446.350 into federal law.

**D.    The Third-Party Complaint Fails for Lack of Standing**

Standing is "perhaps the most important" of jurisdictional principles, as it ensures that the federal courts confine decisions to actual "cases or controversies" as defined in Article III of the Constitution. Allen v. Wright, 468 U.S. 737, 751 (1984). A claimant lacks standing where there is no causal connection between the injury and the defendant's conduct or where the injury is not redressable by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Davis has failed to meet her burden of demonstrating either prong.

9

The Beshear Letter did not cause Davis' alleged constitutional injury.  As explained above and in their opening memorandum, the Third-Party Defendants did not and cannot compel an elected constitutional officer such as Davis to act.  Davis has not cited a single authority to establish that Third-Party Defendants exercise authority over her.  In reality, Davis' injury as she has alleged it is traceable solely to the <u>Obergefell</u> decision, which held that marriage licenses must be issued to same-sex couples on the same terms as opposite-sex couples.  The Third-Party Defendants do not posses the authority to excuse Davis from complying with Supreme Court precedent or the statutory framework for issuing marriage licenses.

Davis asserts that Governor Beshear could have stated that "any marriage licenses will be issued on his authority (not the county clerks' authority)...."  <u>See</u> Response at 13 (D.E. 123).  This statement demonstrates the absurdity of Davis' argument.  Kentucky law is clear that "when the General Assembly has placed a function, power or duty in one place there is no authority in the Governor to move it elsewhere unless the General Assembly gives him that authority."  <u>Brown</u>, 628 S.W.2d at 623.  Davis' claim that she would be in a different position had the Beshear Letter not be issued is equally obtuse.  <u>See</u> Response at 14.  Had the Beshear Letter not been written, Davis would still have a statutory obligation to issue marriage licenses under the KRS Ch. 402 framework and, in light of <u>Obergefell</u>, she would have to do so for both same-sex and opposite-sex couples.  This would be the case regardless of whether KDLA changed the words "bride" and "groom" on the marriage license form.[7]

---

[7] Davis asserts that had the Beshear Letter not been issued, the plaintiffs "would have had to sue Gov. Beshear (not Davis)" to obtain their marriage licenses.  <u>See</u> Response at 14 (D.E. 123).  This incredible statement demonstrates Davis' stubborn disregard for the rule of law.  <u>Obergefell</u> held that the plaintiffs

In addition to a lack of causal connection, Davis lacks standing because her alleged injury is not redressable by a favorable decision and is moot. <u>Lujan</u>, 504 U.S. 560-61; <u>United States Parole Comm'n v. Garaghty</u>, 445 U.S. 388, 396-97 (1980). <u>Obergefell</u> makes clear that Davis has an obligation to issue marriage licenses to same-sex couples on identical terms as opposite-sex couples.  This Court has already so held and ordered Davis to do just that.  <u>See</u> Memorandum Opinion and Order (D.E. 43).  If Davis were successful in her claim against the Third-Party Defendants to enjoin the Beshear Letter, Davis would still be required by the U.S. Supreme Court and this Court's Order to issue marriage licenses to same-sex couples.  This reality highlights the fact that Davis' real quarrel is with <u>Obergefell</u> itself and not with any action or inaction on the part of the Third-Party Defendants.

**E.      The Third-Party Complaint Fails to State Actionable Claims.**

Even if Davis could demonstrate an exception to Eleventh Amendment immunity or establish standing, her claims would still fail on the merits.  A court must dismiss a complaint when it fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  While Davis correctly asserts that the Court construes the well-pleaded facts in a light most favorable to her, the Court does not accept as true legal conclusions or conclusions couched as factual statements.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  In addition to finding that well-pleaded facts do not give rise to an actionable claim, the Court decides legal questions on a motion to dismiss.  <u>Marshall County v. Shalala</u>, 988 F.2d 1221, 1226 (D.C. Cir. 1993).  As this Court and the Sixth Circuit have repeatedly held, Davis has not alleged actionable claims for violation of any

have a fundamental right to marriage.  Following <u>Obergefell</u>, they should not have been required to sue anyone in order to exercise that right.  Of course, Davis ensured that was not the case in Rowan County.

protected rights. Accordingly, the Third-Party Complaint must be dismissed.

**1.      Free Exercise Claim (Counts II, III, IV, V, VIII, IX, and X).**

Government action that is neutral and generally applicable need only meet rational basis review to survive a free exercise challenge.  Smith, 494 U.S. 872.  The Beshear Letter does not constitute government action as applied to Davis because the Third-Party Defendants possess no authority to direct or supervise Davis' actions.  The Third-Party Defendants have no role in the marriage licensing regime except to prescribe the license form, which Davis has not alleged is contrary to statute.  The Third-Party Defendants do not have the ability to rewrite the marriage licensing statutes or exempt Davis from complying with them.

Even if the Beshear Letter did constitute government action, it is clearly neutral and generally applicable and passes rational basis review.  The Beshear Letter simply announced the Obergerfell decision and stated the Executive Branch's (*i.e.* those executive agencies over which the Governor exercises control) intent to implement it.  The Beshear Letter also announced that KDLA would issue a revised marriage license form in light of the Obergefell holding.  This alleged "policy" neither facially nor practically targets religion but instead explains steps taken to comply with a binding decision of the United States Supreme Court.  Government action subject to rational basis review is accorded a strong presumption of validity.  FCC v. Beach Communications, 508 U.S. 307, 314 (1993).  To pass, the action need only be "rationally related to furthering a legitimate state interest."  Seger v. KHSAA, 453 Fed. Appx. 630, 635 (6th Cir. 2011).  The Beshear Letter unquestionably furthers the important government interest in the orderly and uniform application of the rule of law

and the numerous interests identified in the <u>Obgerfell</u> decision.  <u>See, e.g.</u> <u>Papachristou</u> <u>v. Jacksonville</u>, 405 U.S. 156, 171 (1972); Memorandum Opinion and Order at 21 (D.E. 43).  Therefore, Davis' free exercise claim fails as a matter of law.

Davis argues that KRS 446.350 subjects the Beshear Letter to strict scrutiny. But as explained above, the Eleventh Amendment bars this Court from enjoining a state official to comply with state law.   And the federal RFRA is not applicable to state government action.  <u>City of Boerne v. Flores</u>, 521 U.S. 507 (1997).  Moreover, KRS 446.350 does not apply to actions taken by public officials in their official capacity. When an official such as Davis acts in her official capacity to perform an obligation imposed by law, she is acting as the government.  <u>Cf.</u> <u>Kentucky v. Graham</u>, 473 U.S. 159 (1985); KRS 62.210 ("[t]he office of county clerk, rather than the individual holder of the office, shall be liable for acts or omissions of deputy clerks").  At issue here are marriage licenses issued by the Office of Rowan County Clerk and not Kim Davis individually, as Kim Davis individually has no authority to issue such licenses.  The Office of Rowan County Clerk does not have a right to free exercise of religion.  If government officials were permitted to exercise religion in their official capacity, such action would directly violate the Establishment Clause, which prohibits governments from favoring or promoting one set of religious beliefs over another.

Even if KRS 446.350 did apply, it is obvious that the Beshear Letter does not "substantially burden" the free exercise of religion because it does not compel Davis – and indeed could not compel her – to do anything.  Moreover, issuance of marriage licenses is one of Davis' statutory duties.  <u>See</u> KRS Ch. 402.  The statutes do not require Davis to condone, approve, or endorse any marriage.  Rather, the Office of

Rowan County Clerk must simply certify that the legal prerequisites for issuance of a license have been met.  Id.  This purely ministerial function does not implicate her individual religious beliefs – let alone substantially burden them – any more than any action taken by a government official implicates his/her religious beliefs.[8]

### 2.    Free Speech Claim (Counts VI and XI).

Davis wrongly asserts that the Beshear Letter violates her right to free speech by compelling her to express approval of same-sex marriage.  Third-Party Complaint at ¶¶ 92, 137 (D.E. 34).  As previously explained, the Beshear Letter does not compel Davis to do anything.  Rather, KRS Ch. 402 as informed by Obergefell requires Davis to issue marriage licenses to same-sex couples on the same terms as opposite-sex couples. Moreover, issuing a government-sanctioned license is not protected speech attributable to Davis.  Rather, it is a ministerial act statutorily required of the Office of Rowan County Clerk.  The issuance of a marriage license simply certifies that the couple satisfies the legal prerequisites for marriage.  KRS 402.100.  To the extent the issuance of marriage licenses constitutes speech, it is attributable to the government and not Davis.  See, e.g. Walker v. Texas Sons of Confederate Veterans, Inc., 135 S. Ct. 2239, 2249 (2015)

It is indisputable that "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom."  Garcetti v. Ceballos, 547 U.S. 410, 419 (2006).  To determine whether a government official has suffered a violation of her right of free expression, the Court considers whether the official spoke "as a citizen on a matter of public concern," and if yes, whether the government "had an adequate justification for treating the employee differently from any other member of the

---

[8] Even if the Beshear Letter did substantially burden Davis' free exercise, it would still pass strict scrutiny analysis.  See Plaintiffs' Response to Davis Motion for Injunction Pending Appeal at 11-14 (attached as Exhibit 3 and incorporated herein by reference).

general public." <u>Garcetti</u>, 547 U.S. at 418.  As the Court has previously concluded, Davis' allegations fail the first prong because the act of issuing marriage licenses is not speech as a citizen on a matter of public concern; indeed, ordinary citizens are not empowered to issue marriage licenses.  "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." <u>Garcetti</u>, 547 U.S. at 421-22.

### 3.    Religious Test Claim (Counts VII and XII).

Davis is wrong to allege that the Beshear Letter violates Article VI of the Constitution.  That provision provides that "no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States." Const. art. VI.  And while Davis is correct that both state- and federally-imposed religious tests fail under Article VI, the provision applies by its plain terms only to those offices created by federal law.  <u>See, e.g.</u> <u>U.S. Term Limits v. Thornton</u>, 514 U.S. 779, 903 (1995) (Thomas, J., dissenting).  It does not apply to the Office of the Rowan County Clerk.  But even if Article VI did apply to Davis, her claim still fails.  The statutory obligation to issue marriage licenses does not constitute any type of religious or moral approval.  Rather, Davis and her deputies are required to perform the ministerial function of ascertaining that a putative married couple meets the legal perquisites for marriage.  <u>See</u> KRS 402.100.  Simply stated, Davis' role is a legal one – not a moral or religious one.

### III.    CONCLUSION

For the reasons set out above and in their opening memorandum, the Third-Party Defendants respectfully request entry of an Order dismissing the Third-Party Complaint with prejudice.

Respectfully submitted,

STOLL KEENON OGDEN PLLC
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507-1380
(859) 231-3000
(859) 253-1093 facsimile

By:  /s/ Palmer G. Vance II
      William M. Lear, Jr.
      Palmer G. Vance II

COUNSEL FOR THIRD-PARTY
DEFENDANTS GOVERNOR
STEVEN L. BESHEAR AND
COMMISSIONER WAYNE ONKST
IN THEIR OFFICIAL CAPACITIES

## CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing with the Court's ECF system on the 29th day of September 2015, which simultaneously serves a copy to the following via electronic mail:

Daniel J. Canon
Laura E. Landenwich
Leonard Joe Dunman
CLAY DANIEL WALTON ADAMS, PLC
dan@dancanonlaw.com
laura@justiceky.com
joe@justiceky.com
COUNSEL FOR PLAINTIFFS

William Ellis Sharp
ACLU OF KENTUCKY
sharp@aclu-ky.org
COUNSEL FOR PLAINTIFFS

James D. Esseks
Ria Tabacco Mar
Daniel Mach
Heather Weaver
AMERICAN CIVIL LIBERTIES UNION
jesseks@aclu.org

rmar@aclu.org
dmach@aclu.org
hweaver@aclu.org
COUNSEL FOR PLAINTIFFS

Mathew D. Staver
Horatio G. Mihet
Roger K. Gannam
Jonathan D. Christman
LIBERTY COUNSEL
court@lc.org
hmihet@lc.org
rgannam@lc.org
jchristman@lc.org
COUNSEL FOR KIM DAVIS

Anthony Charles Donahue
DONAHUE LAW GROUP, PSC
acdonahue@donahuelawgroup.com
COUNSEL FOR KIM DAVIS

Cecil R. Watkins
ROWAN COUNTY ATTORNEY
cwatkins@prosecutors.ky.gov
COUNSEL FOR DEFENDANT
ROWAN COUNTY KENTUCKY

Jeffrey C. Mando
Claire E. Parsons
ADAMS, STEPNER, WOLTERMANN & DUSING, PLLC
cparsons@aswdlaw.com
jmando@aswdlaw.com
COUNSEL FOR DEFENDANT
ROWAN COUNTY KENTUCKY

/s/ Palmer G. Vance II
COUNSEL FOR THIRD-PARTY
DEFENDANTS GOVERNOR
STEVEN L. BESHEAR AND
COMMISSIONER WAYNE ONKST
IN THEIR OFFICIAL CAPACITIES

119363.152876/4430775.14