UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION

| | | |
|---|---|---|
| APRIL MILLER, et al., | : | |
| | : | CIVIL ACTION |
| **Plaintiffs,** | : | |
| | : | 0:15-CV-00044-DLB-EBA |
| v. | : | |
| | : | DISTRICT JUDGE |
| KIM DAVIS, et al., | : | DAVID L. BUNNING |
| | : | |
| **Defendants.** | : | MAGISTRATE JUDGE |
| | : | EDWARD B. ATKINS |

| | |
|---|---|
| KIM DAVIS, | : |
| | : |
| **Third-Party Plaintiff,** | : |
| | : |
| v. | : |
| | : |
| MATTHEW G. BEVIN, et al., | : |
| | : |
| **Third-Party Defendants.** | : |

**DEFENDANT/THIRD-PARTY PLAINTIFF KIM DAVIS'
RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

Defendant/Third-Party Plaintiff, KIM DAVIS ("Davis"), responds in opposition to Plaintiffs' Motion for Award of Attorneys' Fees and Costs (Doc. 183, the "Fee Motion").

## INTRODUCTION

Plaintiffs are not prevailing parties under 42 U.S.C. § 1988, and thus are not entitled to an award of attorney's fees and nontaxable expenses. Plaintiffs fall far short of satisfying the applicable prevailing party standard in the Sixth Circuit. Furthermore, conferring prevailing party status on Plaintiffs would contradict and frustrate the purpose of the vacatur awarded to Davis by the Sixth Circuit upon the mooting of Davis' appeals.  Plaintiffs' Fee Motion should be denied.

## RELEVANT BACKGROUND

This Court is well-versed in the background facts and procedural history of this case. Accordingly, Davis includes here only matters relevant to deciding the issues presented by Plaintiffs' Fee Motion.

### A. *Obergefell* and the Kentucky Marriage Licensing Scheme.

Prior to *Obergefell*, Kentucky constitutionally and statutorily defined marriage as the union between one man and one woman. Ky. Const. § 233A; Ky. Rev. Stat. § 402.005. The statutory marriage license form included a license to marry under the name and authority of the county clerk. (Doc. 34, Verified Third-Party Complaint ("VTC"), at PgID 748-749.)

On June 26, 2015, moments after the Supreme Court announced its decision in *Obergefell*, former Governor Steven Beshear ("Gov. Beshear") issued a directive to all Kentucky county clerks (hereinafter, the "SSM Mandate") to "recognize as valid all same sex marriages performed in other states and in Kentucky." (Doc. 1-3 at PgID 26.) In this SSM Mandate, Gov. Beshear further commanded, "Kentucky . . . must license and recognize the marriages of same-sex couples," and ordered the creation and distribution of new marriage license forms to accommodate same-sex couples. (*Id.*)  The new form retained the requirement to issue the license under the name and authority of the county clerk. (Doc. 34, VTC, at PgID 753-754; *see also* Doc. 34-1, Pre-*Obergefell* Marriage License, at PgID 778; Doc. 34-4, Post-*Obergefell* Marriage License, at PgID 784.)

### B. Davis' Sincerely-Held Religious Beliefs about Marriage.

Davis has served as the elected county clerk for Rowan County, Kentucky since January 2015. (Doc. 26, Prelim. Inj. Hr'g (July 20, 2015), Davis Testimony, at PgID 240; Doc. 34, VTC, at PgID 746-747.) Davis is a professing Christian who possesses a sincerely-held religious belief that marriage is a union between one man and one woman, only. (Doc. 26, Prelim. Inj. Hr'g (July

20, 2015), Davis Testimony, at PgID 245-248; Doc. 34, VTC, at PgID 746-47, 751.) Davis cannot authorize the marriage of same-sex couples because it violates her core religious beliefs:  In her sincere belief, the endorsement of her name and authorization equates to approval and agreement. (Doc. 26, Prelim. Inj. Hr'g (July 20, 2015), Davis Testimony, PgID 254-258, 277-278, 283, 291, 296; Doc. 34, VTC, at PgID 751.)

On June 27, 2015, following the SSM Mandate, Davis obeyed her conscience and discontinued authorizing marriage licenses. (Doc. 26, Prelim. Inj. Hr'g (July 20, 2015), Davis Testimony, at PgID 249; Doc. 34, VTC, at PgID 755.) Expressly to avoid disparate treatment of any couple and to ensure that all individuals and couples were treated the same, Davis withdrew her authorization to issue any marriage license in her name to any couple – same-sex or different-sex. (Doc. 26, Prelim. Inj. Hr'g (July 20, 2015), Davis Testimony, at PgID 259, 278, 283, 286; Doc. 34, VTC, at PgID 755.)

Davis sent a letter appealing to Gov. Beshear to uphold her religious conscience rights, and to call a special session of the Kentucky General Assembly to legislatively address the conflict between her religious beliefs and the SSM Mandate, but received no response. (Doc. 34, VTC, at PgID 755; *see also* Doc. 34-5, Ltr. to Gov. Beshear, at PgID 788.)

C.    **The Lawsuit against Davis.**

On July 2, 2015, less than one week after Gov. Beshear issued his SSM Mandate, the eight Plaintiffs (four couples; two same-sex and two different-sex) filed this lawsuit alleging federal constitutional claims and demanding the issuance of marriage licenses to them in Rowan County, under Kim Davis' name and authority. (Doc. 1, Compl., at PgID 1-2.) Plaintiffs filed the action on behalf of themselves and "a putative class of individuals who are qualified to marry and who intend to seek a marriage license from the Rowan County Clerk." (*Id.*) On behalf of themselves, Plaintiffs

3

sought preliminary and permanent injunctive relief compelling Davis to issue them marriage licenses, compensatory and punitive damages from Davis, and damages from Rowan County. (*Id.*) On behalf of the putative class, Plaintiffs sought a declaration that Davis' discontinuance of marriage licenses violated their constitutional rights, and preliminary and permanent injunctive relief barring Davis' actions. (*Id.*)

"Named Plaintiffs" moved to preliminarily enjoin Davis "from enforcing the challenged policy of refusing to issue marriage licenses against them," (Doc. 2, Pls.' Mot. Prelim. Inj., at PgID 34), and sought to enjoin Davis in her official capacity "from enforcing the policy of refusing to issue marriage licenses to any future marriage license applications submitted by the Named Plaintiffs." (Doc. 2-2, Proposed Prelim. Inj. Order, at PgID 48). Evidentiary hearings on Plaintiffs' motion for preliminary injunction were held in Ashland and Covington. (Doc. 21, Prelim. Inj. Hr'g (July 13, 2015); Doc. 26, Prelim. Inj. Hr'g (July 20, 2015).). Plaintiffs' evidence was limited exclusively to the claims of the named Plaintiffs, all of whom claimed residence in Rowan County.[1] (*Id.*)

Davis filed a verified third-party complaint on August 4, 2015 against Gov. Beshear, the issuer of the SSM Mandate. (Doc. 34, VTC, at PgID 745-776.) Davis also filed a motion for preliminary injunction to enjoin enforcement of the SSM Mandate and obtain an exemption "from having to authorize the issuance of Kentucky marriage licenses." (Doc. 39-7, Proposed Prelim. Inj. Order, at PgID 1129-1130.)

---

[1] Plaintiffs Shantel Burke and Stephen Napier did not testify.

**D.**     **The Preliminary Injunction against Davis.**

The district court, recognizing that "this civil action presents a conflict between two individual liberties held sacrosanct in American jurisprudence," granted Plaintiffs' motion for preliminary injunctive relief against Davis by Order dated August 12, 2015. (Doc. 43, Mem. Op. Order ("Preliminary Injunction"), at PgID 1146-1173.) The Preliminary Injunction enjoined Davis in her official capacity "from applying her 'no marriage licenses' policy to future marriage license requests submitted by Plaintiffs." (*Id.* at PgID 1173.)

Plaintiffs filed a motion on September 1, 2015 to "clarify" the Preliminary Injunction to apply to future marriage license requests from other eligible individuals. (Doc. 68, Pls.' Mot. "Clarify" Prelim. Inj., at PgID 1488-1495.) The district court granted the expansion of the Preliminary Injunction. (Doc. 78, Contempt Hr'g (Sept. 3, 2015), at PgID 1580-1581; *see also* Doc. 74, Order Expanding Prelim. Inj., at PgID 1557.) Davis appealed the August 12 and September 3 Preliminary Injunction orders. (Doc. 44, Not. Appeal, PgID 1174-1206; Doc. 82, Not. Appeal, PgID 1785-90.)

**E.**     **Davis' Incarceration and Post-Release Accommodation from SSM Mandate.**

Plaintiffs moved to hold Davis in contempt for violating the Preliminary Injunction by failing to authorize a marriage license to one Plaintiff couple. On September 3, 2015, the district court held a contempt proceeding in Ashland, and committed Davis to federal custody after holding her in contempt for violating the Preliminary Injunction. (Doc. 78, Contempt Hr'g (Sept. 3, 2015), at PgID 1651-1662.) The condition for Davis' release was her compliance with the Preliminary Injunction. (*Id.* at PgID 1661-1662; *see also* Doc. 75, Contempt Order, at PgID 1559.)

The district court then questioned Davis' deputy clerks as to whether each of them would issue marriage licenses without Davis' authorization. (Doc. 78, Contempt Hr'g (Sept. 3, 2015),

5

PgID 1667-1736.) The deputy clerks who testified stated that they would issue the licenses rather than face jail time, notwithstanding the religious objections stated by some of the deputy clerks. (*Id.*) The district court did not determine whether the marriage licenses the deputies agreed to issue without Davis' authorization were valid under Kentucky law. (*Id.* at PgID 1724 (explaining licenses "may not be valid under Kentucky law"), 1728 ("I'm not saying it is or it isn't. I haven't looked into the point. I'm trying to get compliance with my order."), 1731-32.) Davis appealed the Contempt Order. (Doc. 83, Not. Appeal, PgID 1791-97.)

On September 8, 2015, the sixth day of Davis' incarceration, Plaintiffs filed a status report showing the Court that six of eight Plaintiffs had received marriage licenses from the deputy clerks.[2] (Doc. 84, Status Report, PgID 1798-1800.) With Davis in jail, not having given her authorization to issue licenses, the deputy clerks altered the marriage licenses to replace the name "KIM DAVIS" with "ROWAN COUNTY." (Doc. 84-1, Plaintiffs' Marriage Licenses, PgID 1801-1804.)

Following the status report, the district court lifted its prior contempt sanction and ordered Davis released, stating that the Court was "satisfied that the Rowan County Clerk's Office is fulfilling its obligation to issue marriage licenses" under the Preliminary Injunction, and that the

---

[2]  The status report showed that three of the four Plaintiff couples had received marriage licenses. The lone exceptions were Plaintiffs Burke and Napier who did not testify at the Preliminary Injunction hearings, and apparently lost interest in a Rowan County marriage license. They did not join the other Plaintiffs in seeking a license from Rowan County while Davis was incarcerated, and they have not sought a license in Rowan County since. (Doc. 46, Pls.' Resp. Mot. Stay Prelim. Inj., at PgID 1235 n.1; Doc. 84, Status Report, at PgID 1798; Doc. 113-3 at PgID 2247; Decl. Kim Davis (Oct. 27, 2016), attached hereto as Exhibit A, at 1.) Plaintiffs Fernandez and Holloway likewise appear disinterested in a Rowan County marriage license. Although they obtained a license while Davis was incarcerated (Doc. 84, Status Report, at PgID 1798), they did not get married on that license, and have not sought a license since. (Decl. Kim Davis (Oct. 27, 2016), attached hereto as Exhibit A, at 1.)

deputy clerks "have complied with the Court's Order," despite the "alterations" to the marriage licenses. (Doc. 89, Order (Sept. 8, 2015), at PgID 1827-1828.) The release order further commanded that "Davis shall not interfere in any way, directly or indirectly, with the efforts of her deputy clerks to issue marriage licenses" to "all legally eligible couples" on pain of new sanctions. (*Id.* at PgID 1828.) The order also required the deputy clerks to file status reports with the district court every fourteen days. (*Id.* at PgID 1828.)

On September 14, 2015, Davis returned to work at the Rowan County clerk's office. On that day, she provided a public statement regarding the issuance of marriage licenses in Rowan County. Davis explained that she would not interfere with her deputy clerks' issuance of marriage licenses, but the licenses would be further modified to accommodate her sincerely-held religious beliefs by clarifying the omission of her name and authority. Immediately that same day, the Kentucky Governor and Kentucky Attorney General both inspected the new licenses and publicly stated that they were valid and will be recognized as valid by Kentucky. (Doc. 132, Resp. Pls.' Mot. Reopen Class Cert., at PgID 2456, 2458-2465; Doc. 133, Resp. Pls.' Mot. Enforce, at PgID 2484, 2487-2495.) From her return to work until the incoming Governor Matt Bevin issued his Executive Order 2015-048 Relating to the Commonwealth's Marriage License (*see infra* at 9) these licenses deemed valid by the highest elected officials in Kentucky were issued in Rowan County by deputy clerks to lawfully eligible couples without any interference or interruption. (Doc. 114, 116-119, 122, 125-129, 131, Deputy Clerk Status Reports.[3])

   **F.    Plaintiffs' Motion to "Enforce" the Preliminary Injunction.**

---

[3] This Court, apparently satisfied with the Rowan County Clerk's Office's compliance with the Court's orders, substantially decreased the reporting requirements for deputy clerks from every fourteen days to every thirty days. (Doc. 130, Order (Oct. 6, 2015), at PgID 2446.)

Plaintiffs filed a motion to "enforce" the Preliminary Injunction on September 21, 2015. (Doc. 120, Pls.' Mot. to Enforce, PgID 2312-2328.) In their motion, Plaintiffs insisted the Rowan County Clerk's Office was not in compliance with the Preliminary Injunction. (*Id.* at PgID 2313.) Plaintiffs alleged that Davis had "obstruct[ed]" and "significantly interfere[d]" with the process for issuing marriage licenses in Rowan County upon her return to the office on September 14, 2015. (*Id.* at PgID 2316-2317, 2319.) Plaintiffs still further alleged that Davis has "so materially altered" marriage licenses that "they create a two-tier system of marriage licenses throughout the state," and these so-called "adulterated marriage licenses received by Rowan County couples will effectively feature a stamp of animus against the LGBT community," absent intervention by the Court. (*Id.* at PgID 2319.)

Plaintiffs asked the Court to "expressly direct Defendant Davis to refrain from interfering with the Deputy Clerk's issuance of marriage licenses in the same form or manner as those that were issued on or before September 8, 2015" and to provide notice to Davis that "any violation of this Order will result in civil sanctions, including but not limited to (a) the placement of the Rowan County Clerk's Office into a receivership for the limited purposes of issuing marriage licenses, and (b) the imposition of civil monetary fines as appropriate and necessary to coerce Davis' compliance with this Court's Order."[4] (*Id.* at PgID 2313; *see also id.* at PgID 2321.)

---

[4] With respect to the deputy clerks, Plaintiffs asked this Court to direct them to "issue marriage licenses in the same form and manner as those that were issued on or before September 8, 2015," to "disregard any instruction or order from Defendant Kim Davis that would require them to issue any marriage license in a form or manner other than the form and manner of licenses that were issued on or before September 8, 2015," to continue to file status reports, and to "re-issue, *nunc pro tunc*, any marriage licenses that have been issued since September 14, 2015, in the same form or manner as those that were issued on or before September 8, 2015." (*Id.* at PgID 2312-2313; *see also id.* at PgID 2320.)

The Court denied Plaintiffs' motion to "enforce" the injunctions in an Order dated February 9, 2016, without ordering Davis to reissue licenses in the form demanded by Plaintiffs. (Doc. 161, Order (Feb. 9, 2016), at PgID 2657-59.)

### G.   The Executive Order.

On December 22, 2015, Gov. Bevin issued Executive Order 2015-048 Relating to the Commonwealth's Marriage License Form (the "Executive Order"), which states, *inter alia*, that "the issuance of marriage licenses on the form currently prescribed by [the SSM Mandate] creates a substantial burden on the freedom of religion of some County Clerks and employees of their offices because the current form bears the name of the issuing County Clerk, and some County Clerks and their employees sincerely believe that the presence of their name on the form implies their personal endorsement of, and participation in, same-sex marriage, which conflicts with their sincerely held religious beliefs," that "KRS 446.350 requires use of the least restrictive means available to carry out compelling governmental interests, and there are less restrictive means available to further the governmental interest of issuing marriage licenses to all applicants who qualify than the form that is currently being used," that "there is no compelling governmental interest, particularly under the heightened 'clear and convincing evidence' standard required by KRS 446.350, necessitating that the name and signature of County Clerks be present on the marriage license form used in the Commonwealth," that the Commonwealth "can readily prescribe a different form that reasonably accommodates the interests protected by KRS 446.350" and does not substantially burden the "free exercise of religion" by County Clerks and their employees "who hold sincerely-held religious beliefs that conflict with same-sex marriage," and, pursuant to the authority vested in Gov. Bevin by Section 69 of the Kentucky Constitution and the Kentucky Religious Freedom Restoration Act, orders and directs that the Commonwealth "shall forthwith

create, prescribe and publish to all County Clerks in the Commonwealth a marriage license form substantially identical to the form attached hereto, henceforth to be used by the offices of all County Clerks in the Commonwealth." [5] (Doc. 156-1, Executive Order, at PgID 2601-04.)

### H.    SB 216.

On July 14, 2016, Kentucky Senate Bill 216 ("SB 216") took effect, permanently modifying Kentucky law regarding the issuance and authorization of marriage licenses beyond the Executive Order.[6] Specifically, SB 216 expressly modified the Kentucky marriage licensing scheme to remove entirely a County Clerk's name, personal identifiers, and authorization from any license, thereby providing through a permanent change in the law the very religious accommodation Davis sought from the beginning of this litigation.

### I.    Dismissal of the Litigation.

The enactment and implementation of SB 216—which was passed unanimously by the Kentucky Legislature and signed by Gov. Bevin—rendered Davis' appeal from this Court's Preliminary Injunction moot. Accordingly, the Sixth Circuit dismissed the appeal, vacated the Preliminary Injunction, and remanded the case to this Court. (Doc. 179, Order (6th Cir. July 13, 2016), PgID 2698-99; Doc. 18, Mandate (6th Cir. Aug. 4, 2016), PgID 2703.) This Court subsequently vacated its Preliminary Injunction orders (Doc. 181, Order (Aug. 18, 2016)), and

---

[5]  At the September 3, 2015 contempt hearing, this Court expressed hope for a legislative or executive accommodation of the kind granted by Gov. Bevin in the Executive Order: "I recognize, and I mentioned this when we first came out earlier this morning, that the legislative and executive branches do have the ability to make changes. And those changes may be beneficial to everyone. Hopefully, changes are made." *See* Doc. 78, Contempt Hr'g Tr. (9/3/15), PgID 1658:5-9. "If legislative **or executive remedies** . . . come to fruition, as I stated, better for everyone." *Id.* at PgID 1659:3-5 (emphasis added).

[6]  SB 216 was signed into law on April 13, 2016 and amends Ky. Rev. Stat. §§ 402.100, 110. *See* 2016 Kentucky Laws Ch. 132 (SB 216), General Assembly Reg. Sess. (Ky. 2016) (copy attached to this Motion as Exhibit "1").

additionally dismissed Plaintiffs' remaining claims, comprising Plaintiffs' individual claims for permanent injunctive relief and compensatory and punitive damages, and putative class claims for declaratory and permanent injunctive relief. (Doc. 182, Order (*In Re: Ashland Civil Actions*, Aug. 18, 2016), PgID 2708-2710.) Plaintiffs did not appeal that dismissal, and their time to appeal has expired.

### J.     Plaintiffs' Status

Four of the eight Plaintiffs are legally married. (Doc. 183-1, Mem. Supp. Pls. Mot. Award Attorneys' Fees and Costs ("Fee Memorandum"), at PgID 2722 n.4.) The other four, however, have never legally married on a marriage license issued in Rowan County. Plaintiffs Burke and Napier, who did not testify at the Preliminary Injunction hearings, did not attempt to join the other Plaintiffs in seeking a license from Rowan County while Davis was incarcerated, and have not sought a license in Rowan County since. (Doc. 46, Pls.' Resp. Mot. Stay Prelim. Inj., at PgID 1235 n.1; Doc. 84, Status Report, at PgID 1798; Doc. 113-3 at PgID 2247; Decl. Kim Davis (Oct. 27, 2016), attached hereto as <u>Exhibit A</u>, at 1.) Plaintiffs Fernandez and Holloway obtained a marriage license in Rowan County while Davis was incarcerated (Doc. 84, Status Report, at PgID 1798), but they did not get married on that license, and have not sought a license since. (Decl. Kim Davis (Oct. 27, 2016), attached hereto as <u>Exhibit A</u>, at 1.)

11

## ARGUMENT

I.  **THE FEE MOTION SHOULD BE DENIED BECAUSE PLAINTIFFS ARE NOT PREVAILING PARTIES UNDER 42 U.S.C. § 1988.**

   **A. The Preliminary Injunction does not confer prevailing party status on Plaintiffs.**

   **1.  The Sixth Circuit announced the prevailing party standard applicable to this case in *McQueary v. Conway*.**

Under the "American Rule," "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Svc. Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975). And Congress has not "extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted." *Id.* at 260. However, an exception to the American Rule is codified in The Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988, which gives federal district courts the discretion to award attorney's fees to "the prevailing party" in civil rights litigation brought under 42 U.S.C. § 1983. *Sole v. Wyner*, 551 U.S. 74, 77 (2007). "Prevailing party" is a "legal term of art." *Buckhannon Bd. and Care Home v. W. Va. Dep't of Health and Human Resources*, 532 U.S. 598, 603 (2001).

"The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989). Thus, Supreme Court precedent establishes that "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Buckhannon*, 532 U.S. at 604 (quoting *Texas State Teachers*, 489 U.S. at 792-93). But, "[p]revailing party status . . . does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case." *Sole*, 551 U.S. at 83.

12

The Sixth Circuit has provided guidance for cases, such as the instant case, where a plaintiff obtains preliminary injunctive relief against a defendant, but no final judgment, in *McQueary v. Conway*, 614 F.3d 591 (6th Cir. 2010) (hereinafter, "*McQueary I*"). The *McQueary* plaintiff challenged new Kentucky laws criminalizing certain conduct by protesters at funerals, on the grounds that the laws violated his free-speech rights under the First and Fourteenth Amendments.[7] 614 F.3d at 595-96. The plaintiff was a Kentucky resident who had previously protested at military funerals, and wanted to engage in the criminalized conduct at future protests. *Id.* The plaintiff asked the district court to declare the new laws unconstitutional on their face, and to enjoin their enforcement against his future protests. *Id.* at 596.

The district court preliminarily enjoined enforcement of the challenged laws. *Id.* But six months later, before any final disposition of the plaintiff's claims, the Kentucky General Assembly repealed the laws, and the district court dismissed the lawsuit as moot. *Id.* In the dismissal order, the district court also denied the plaintiff's request for prevailing party attorney's fees. *Id.* On appeal, the Sixth Circuit undertook to answer a question expressly left unanswered by the Supreme Court: "'whether, in the absence of a final decision on the merits . . . , success in gaining a preliminary injunction may sometimes warrant an award of counsel fees.'" *Id.* at 597 (quoting *Sole*, 551 U.S. at 86).

Recognizing that *Sole* "established that the 'court-ordered change in the legal relationship' between a plaintiff and a defendant must be 'enduring' and irrevocable," the *McQueary I* court held, "**when a claimant wins a preliminary injunction and nothing more, that usually will not**

---

[7] The new laws were "designed to discourage protests by the Westboro Baptist Church, whose members have become known for staging anti-homosexual protests at military funerals . . . ." *McQueary I*¸ 614 F.3d at 595.

**suffice to obtain fees under § 1988**." 614 F.3d at 604 (emphasis added). Only "occasional exceptions" to the rule may be applied, after "a contextual and case-specific inquiry [for] the district court to undertake in the first instance." *Id.* "In the aftermath of *Buckhannon* and *Sole,* however, we can say that the 'preliminary' nature of the relief—together with the requirement that a prevailing-party victory must create a lasting change in the legal relationship between the parties and not merely 'catalyze' the defendant to voluntary action—**will generally counsel against fees in the context of preliminary injunctions**." *Id.* at 601 (emphasis added).

The *McQueary I* court provided only limited examples of preliminary relief that can confer prevailing party status, such as "fact patterns in which the claimant receives everything it asked for in the lawsuit, and all that moots the case is court-ordered success and the passage of time." *Id.* at 599. The court further illustrated these limited circumstances:

> When protesters seek an injunction to exercise their First Amendment rights at a specific time and place—say to demonstrate at a Saturday parade—a preliminary injunction will give them all the court-ordered relief they need and the end of the parade will moot the case. In what way are such claimants not prevailing parties? We think they are. *See Young v. City of Chicago,* 202 F.3d 1000, 1000 (7th Cir. 2000) (awarding fees to protestors who obtained a preliminary injunction to protest at the 1996 Democratic National Convention, which was the only relief sought). The same is true of a government employee who seeks to exclude an unconstitutionally obtained report from an administrative hearing and obtains a preliminary injunction that irrevocably excludes the report. *See Watson v. County of Riverside,* 300 F.3d 1092, 1095–96 (9th Cir. 2002). So also for a plaintiff who seeks to delay enforcement of a statute until a certain event occurs—say a scheduled public referendum—and the preliminary injunction brings about that result. *Cf. Thomas v. Nat'l Sci. Found.,* 330 F.3d 486, 493 (D.C. Cir. 2003).
>
> Not all preliminary injunctions, as these examples show, have merely a catalytic effect. The defendants in these cases did not voluntarily change their conduct. An immediately enforceable preliminary injunction compelled them to. **And in each instance, the plaintiffs obtained all of the relief they requested once the**

> **preliminary injunction served its purpose.** *See N. Cheyenne Tribe*
> *v. Jackson,* 433 F.3d 1083, 1086 (8th Cir.2006); *Watson,* 300 F.3d
> at 1096.

*Id.* (emphasis added).

Having announced the rule, and guidelines for applying the limited, "occasional" exceptions to it, the *McQueary I* court reversed the district court's denial of prevailing party fees and remanded the case to the district court for further proceedings in light of the rule announced. *Id.* at 604-05. On remand, the *McQueary* district court rehearsed the standards set forth by the Sixth Circuit:

> As discussed, in its opinion, the Sixth Circuit stated that, as a general rule, preliminary—injunction winners are not entitled to attorney's fees under § 1988. However, in rejecting a *per se* rule that would deny prevailing-party status to every preliminary-injunction winner, the court indicated that there should be an exception where the preliminary-injunction winner "receives everything it asked for in the lawsuit, and all that moots the case is court-ordered success and the passage of time." *Id.* at 599. For example, "[w]hen protesters seek an injunction to exercise their First Amendment rights at a specific time and place—say to demonstrate at a Saturday parade— a preliminary injunction will get them all the court-ordered relief they need and the end of the parade will moot the case." *Id.*

*McQueary v. Conway*, No. 06-CV-24-KKC, 2012 WL 3149344, at *2 (E.D. Ky. Aug. 1, 2012) (hereinafter, "*McQueary Remand*").

Applying the *McQueary I* standards, the district court held that the plaintiff was not the prevailing party. *Id.* at *3. The plaintiff had not sought a preliminary injunction "to protest at a specific funeral or at a specific time and place." *Id.* at *2. Rather, the plaintiff sought a permanent injunction to enjoin enforcement of the challenged policies at all future funerals, and a preliminary injunction to enjoin enforcement of the challenged policies "only while his claim for permanent relief was pending." *Id.* Thus, the district court reasoned,

the Plaintiff's claim for permanent relief did not become moot when a particular event occurred. Instead, the Plaintiff's claim for permanent injunctive relief became moot because the Defendant voluntarily repealed the challenged provisions. The Defendant's voluntary conduct, however, cannot serve as the basis for an award of attorney's fees.

Nor did the Plaintiff's claim for relief become moot because the preliminary injunction granted him all the relief he sought and there was nothing more this Court could do for him. The Plaintiff sought a permanent injunction that would permanently enjoin the state from enforcing the challenged provisions. The Court never granted him that relief.

*Id.* (citation omitted).

Further reviewing the case examples discussed in *McQueary I*, the district court concluded:

In cases like *Watson* and *Young,* where a plaintiff is granted preliminary injunctive relief that enjoins the government from acting at a particular time and place, the preliminary relief becomes, in effect, permanent relief after the event occurs. After the passage of the event, the preliminary injunction can no longer be meaningfully revoked. In contrast, preliminary injunctive relief like that granted by the Court in this case that enjoins the defendant only while the case is pending is truly temporary and revocable. Such relief cannot confer prevailing-party status because it is not "'enduring' and irrevocable." *McQueary,* 614 F.3d at 597 (citing *Sole v. Wyner,* 551 U.S. 74, 86 (2007)).

*Id.* at *3.

The *McQueary* district court's holding that the plaintiff was not entitled to prevailing party attorney's fees was affirmed by the Sixth Circuit in *McQueary v. Conway*, 508 Fed. App'x 522, 523 (6th Cir. 2012) ("As we explained in *McQueary I*, Supreme Court precedent counsels that, 'when a claimant wins a preliminary injunction and nothing more, that usually will not suffice to obtain fees under § 1988.'").

### 2. Plaintiffs cannot attain prevailing party status under the *McQueary* standard.

The Plaintiffs in the instant case are not prevailing parties under the *McQueary* standard. First, Plaintiffs only obtained a preliminary injunction, and no final relief, which places Plaintiffs squarely within the general rule that, "when a claimant wins a preliminary injunction and nothing more, that usually will not suffice to obtain fees under § 1988." *McQueary I¸*614 F.3d at 604. Second, none of the limited, "occasional" exceptions contemplated by *McQueary* apply.

Like the plaintiff in *McQueary*, Plaintiffs' sued Davis to permanently enjoin enforcement of Davis' "no marriage licenses" policy. (Doc. 1, Compl., at PgID 1-2.) Also like *McQueary*, Plaintiffs in this case sought a preliminary injunction against enforcement of the "no marriage licenses" policy, as to "any future marriage license applications submitted by the Named Plaintiffs" (Doc. 2-2, Proposed Prelim. Inj. Order, at PgID 48), not a preliminary injunction against enforcement at a particular time and place. And, the Preliminary Injunction gave Plaintiffs the preliminary relief they asked for, enjoining Davis in her official capacity "from applying her 'no marriage licenses' policy to future marriage license requests submitted by Plaintiffs."[8] (Doc. 43, Prelim. Inj., at PgID 1173.)

Thus, as in *McQueary*, Plaintiffs' claim for permanent injunctive relief did not become moot when any particular event occurred after entry of the Preliminary Injunction, or because Plaintiffs received "all the relief [they] sought and there was nothing more this Court could do for [them]." *McQueary Remand*, 2012 WL 3149344 at *2. Plaintiffs never received a permanent

---

[8] As expanded by the Court's September 3, 2015 Order, the Preliminary Injunction enjoined Davis "from applying her 'no marriage licenses' policy to future marriage license requests submitted by Plaintiffs or by other individuals who are legally eligible to marry in Kentucky." (Doc. 74 at PgID 1557.)

injunction against Davis' "no marriage license" policy from the Court; their claim was mooted by Kentucky's changing its laws, effectively abrogating the policy.

The fact that two of four Plaintiff couples legally married under the Preliminary Injunction does not help their prevailing party status. First, the other two Plaintiff couples—fully half of the named Plaintiffs—did not legally marry on a Rowan County license under the Preliminary Injunction. Those Plaintiffs received nothing meaningful through the Preliminary Injunction, let alone relief that can be called "enduring and irrevocable;" no event occurred giving them everything they asked for from the Court.[9] Second, even the other half of Plaintiffs who did legally marry did not acquire any legally permanent relief by virtue of the Preliminary Injunction. Reality counsels that a substantial number of marriages end, whether by death or divorce, despite the best of intentions.[10] However committed to their respective partners this half of Plaintiffs may be, they cannot assert, as a matter of law, that their married status is permanent. Thus, their quarrel with the "no marriage licenses" policy was not, as a matter of law, finally ended by the Preliminary Injunction. But for the mooting change in law, Plaintiffs only could have obtained enduring and irrevocable (*i.e.*, permanent) relief by obtaining a permanent injunction against Davis' policy. As in *McQuery*, "the court never granted [them] that relief." *McQueary Remand*, 2012 WL 3149344 at *2.

---

[9] To be sure, the seeming indifference of Plaintiffs Burke, Napier, Fernandez, and Holloway is remarkable. This half of the Plaintiffs never married on a Rowan County license—Plaintiffs Burke and Napier never even sought a license—despite representing to the Court their irreparable injury without immediate injunctive relief. These Plaintiffs likewise represented to the Court their competence to represent a class of persons in Rowan county allegedly wanting marriage licenses, though marrying on a Rowan County license appears to be of little importance to them.

[10] According to the American Psychological Association: "[A]bout 40 to 50 percent of married couples in the United States divorce. The divorce rate for subsequent marriages is even higher." *Marriage & Divorce*, Am. Psychological Ass'n, http://www.apa.org/topics/divorce/ (last visited Oct. 27, 2016).

18

Plaintiffs, through their words and conduct, proved that the Preliminary Injunction did not give them everything they wanted. First, as already shown above, half of the Plaintiffs either did not care about getting married under the Preliminary Injunction, or were waiting for some other relief. In any event, their abstention from getting legally married shows the Preliminary Injunction is not everything they wanted. Second, following Davis' release from incarceration, Plaintiffs insisted they were entitled to more than the Preliminary Injunction conferred. Upon Davis' return to her office following her release, she took affirmative steps to clarify that licenses being issued from her office by her deputy clerks were not issued under her name or authorization. Although this form of license was immediately declared valid by both the Governor and Attorney General, Plaintiffs nonetheless filed a motion to "enforce" the Preliminary Injunction, demanding a different form of license, and reissuance *nunc pro tunc* of all licenses issued under Davis' clarified policy. (Doc. 120, Pls.' Mot. to Enforce, PgID 2312-2328.) If Davis would not comply with the order demanded by Plaintiffs, then Plaintiffs further demanded drastic "civil sanctions, including but not limited to (a) the placement of the Rowan County Clerk's Office into a receivership for the limited purposes of issuing marriage licenses, and (b) the imposition of civil monetary fines as appropriate and necessary to coerce Davis' compliance with this Court's Order." (*Id.* at PgID 2313; *see also id.* at PgID 2321.). Thus, while Plaintiffs achieved the issuance of legally valid licenses from Davis' office by means of the Preliminary Injunction, Plaintiffs wanted more. Davis' affirmative steps to remove her name and authority from the licenses was offensive to Plaintiffs, and Plaintiffs wanted the Preliminary Injunction to provide a means to coerce Davis to give them something different. This Court, however, deemed Davis' clarified license policy sufficiently compliant with the Preliminary Injunction to render the Plaintiffs' motion to "enforce" moot. (Doc. 161, Order

(Feb. 9, 2016), at PgID 2657-59.) Therefore, Plaintiffs cannot now claim they received everything they wanted from the Preliminary Injunction in order to lift them to prevailing party status.

> **3.   Cases decided in other circuits under different standards cannot confer prevailing party status on Plaintiffs.**

The Tenth Circuit case *Kansas Judicial Watch v. Stout*, 653 F.3d 1230 (10th Cir. 2011), does not help Plaintiffs. (*See* Doc. 183-1, Fee Mem., at PgID 2724-26.) Although the Supreme Court left open the specific prevailing party question before this Court in *Sole*, the rigor and recency of the Sixth Circuit's *McQueary* decisions obviate the need to search for or borrow standards from other circuits. To be sure, *Kansas Judicial Watch* departs entirely from the *McQueary* standard, and applies something different.

According to Plaintiffs, they are prevailing parties under *Kansas Judicial Watch* because Plaintiffs "attained a merits-based preliminary injunction barring Davis, in her official capacity, from enforcing the 'no marriage licenses' policy." (Doc. 183-1, Fee Mem., at PgID 2726.) Additionally, Plaintiffs claim, *Kansas Judicial Watch* instructs that where challenged policies are repealed "after the entry of the merits-based preliminary injunction barring their enforcement" such repeal supports prevailing party status. (*Id.*) Unfortunately for Plaintiffs the Sixth Circuit requires more.

Importantly, the *McQueary I* court expressly recognized that the preliminary relief obtained by the plaintiff both "materially changed the relationship between the parties" and "**turned at least in part on the district court's assessment of the merits**." 614 F.3d at 598-99 (emphasis added). Nonetheless, these facts were not sufficient to overcome the general rule that "when a claimant wins a preliminary injunction and nothing more, that usually will not suffice to obtain fees under § 1988." *Id.* at 604. On remand, the *McQueary* district court—a year after *Kansas Judicial Watch*—rejected that a repeal of challenged policies, even coupled with preliminary relief

20

on the merits, was sufficient to confer prevailing party status. *McQueary Remand*, 2012 WL 3149344 at \*2. In affirming the *McQueary* district court denial of fees, *McQueary II*, 508 Fed. App'x at 523-24, the Sixth Circuit was apparently unpersuaded by any contribution of the Tenth Circuit. Thus, *Kansas Judicial Watch* simply does not involve an application of the *McQueary* standard, rendering the case inapposite here.

### B. Conferring prevailing party status on Plaintiffs would contradict and frustrate the vacatur remedy awarded by the Sixth Circuit.

The Sixth Circuit's vacatur of the Preliminary Injunction was expressly grounded on *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), which provides, "The established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss." 340 U.S. at 39. (*See* Doc. 179, Order (6th Cir. July 13, 2016), at PgID 2698.) Courts usually vacate lower court judgments, orders, and injunctions in these situations "because doing so 'clears the path for future relitigation of the issues between the parties,' preserving 'the rights of all parties,' while prejudicing none 'by a decision which . . . was only preliminary.'" *Alvarez v. Smith*, 558 U.S. 87, 94 (2009) (citing *Munsingwear*, 340 U.S. at 40). Vacatur is appropriate "when mootness occurs through happenstance—circumstances not attributable to the parties—or . . . the 'unilateral action of the party who prevailed in the lower court.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71-72 (1997) (quoting *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994)). This is necessary because appellate courts must review lower court decisions "in light of [the] law as it now stands, not as it stood when the judgment below was entered." *Diffenderfer v. Central Baptist Church*, 404 U.S. 412, 414 (1972).

The equitable remedy of vacatur "ensures that 'those who have been prevented from obtaining the review to which they are entitled [are] not . . . treated as if there had been a review.'" *Camreta v. Greene*, 563 U.S. 692, 712 (2011). "A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." *Bancorp*, 513 U.S. at 25. Thus, "[w]hen happenstance prevents that review from occurring, the normal rule should apply: Vacatur then rightly 'strips the decision below of its binding effect,' and 'clears the path for future relitigation.'" *Camreta*, 563 U.S. at 713 (internal citations omitted); *see also Stewart v. Blackwell*, 473 F.3d 692, 693 (6th Cir. 2007) ("[V]acatur is generally appropriate to avoid entrenching a decision rendered unreviewable through no fault of the losing party.").

In considering requests for vacatur, the "principal condition" for awarding this relief is "whether the party seeking relief from the judgment below caused the mootness by voluntary action." *Bancorp*, 513 U.S. at 24; *see also Ford v. Wilder*, 469 F.3d 500, 505 (6th Cir. 2006) (holding "[t]he question of fault is central to our determination regarding vacatur"). Critically, the mootness of Davis' appeals of this Court's Preliminary Injunction orders was not the result of actions and events within her own control, but rather the exclusive control of others—namely, the Kentucky General Assembly, which passed SB 216, and Gov. Bevin, who signed it into law.[11] In this way, the ensuing mootness is not Davis' "fault," but the result of "happenstance," as that term is understood in *Munsingwear* and its progeny. Davis' appeals were rendered moot by the intervening and independent actions of the General Assembly, not the voluntary action of Davis

---

[11]  While the Executive Order reversed former Gov. Beshear's SSM Mandate, it did not change, nor could it, the underlying statutory scheme regarding the issuance of marriage licenses. SB 216 completely altered the legislative scheme at the heart of this litigation.

who filed the appeals. As a result, it would have been inequitable for the Sixth Circuit not to vacate this Court's Preliminary Injunction orders because Davis was prevented from arguing the merits issues raised by her appeals.

Awarding prevailing party attorney's fees to Plaintiffs would contradict and entirely frustrate the purpose of the Sixth Circuit's decision to apply the equitable doctrine of vacatur to this Court's Preliminary Injunction orders. Whereas vacatur "ensures that 'those who have been prevented from obtaining the review to which they are entitled [are] not . . . treated as if there had been a review,'" *Camreta*, 563 U.S. at 712, conferring prevailing party status on Plaintiffs at this point would treat the Preliminary Injunction as if it had been affirmed on appeal, depriving Davis of any meaningful review of the Preliminary Injunction and utterly defeating the purpose of the Sixth Circuit's vacatur decision. Thus, while the Sixth Circuit sought "to avoid entrenching a decision rendered unreviewable through no fault of [Davis]," awarding Plaintiffs prevailing party fees in this instance would do exactly that.

As shown above, Plaintiffs do not come close to satisfying the *McQueary* standard for attaining prevailing party status. The Sixth Circuit's vacatur decision further militates against any opening for Plaintiffs under *McQueary*.[12]

---

[12] To be sure, in defining the appropriate prevailing party standard, the *McQueary I* court observed *Munsingwear* vacatur doctrine cases to counsel against awarding fees for preliminary relief not accompanied by a final judgment: "The *Munsingwear* doctrine suggests a potentially straightforward approach to the fees question: *Sole* says that 'dissolved' or 'otherwise undone' preliminary injunctions do not warrant fees; mootness generally requires a court to vacate its earlier rulings, including any preliminary injunction granted in the case; fees for preliminary injunctions therefore are not permitted under *Sole*." *McQueary I*, 614 F.3d at 600.

## II.   EVEN IF PLAINTIFFS COULD ATTAIN PREVAILING PARTY STATUS, THE FEE MOTION SHOULD BE DENIED TO THE EXTENT PLAINTIFFS SEEK EXCESSIVE FEES.

### A.   <u>Awarding Plaintiffs the lodestar fee would be excessive.</u>

Even if Plaintiffs could attain prevailing party status, the fees claimed by Plaintiffs are excessive.[13] Plaintiffs brought this action seeking, on behalf of themselves, preliminary and permanent injunctive relief compelling Davis to issue them marriage licenses, compensatory and punitive damages from Davis, and damages from Rowan County. (Doc. 1, Compl., at PgID 1-2.) Plaintiffs additionally sought, on behalf of "a putative class of individuals who are qualified to marry and who intend to seek a marriage license from the Rowan County Clerk," a declaration that Davis' discontinuance of marriage licenses violated their constitutional rights, and preliminary and permanent injunctive relief barring Davis' actions. (*Id.*) Plaintiffs received, however, almost none of the relief they sought.

Plaintiffs obtained a preliminary injunction, which was vacated; pursuant to that preliminary injunction, only half of the named Plaintiffs were married on a Rowan County marriage license. All of plaintiffs other individual claims, and all of Plaintiffs' class claims, were dismissed. Under the circumstances, awarding prevailing party fees based on a straight lodestar calculation would be excessive:

> If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring

---

[13]   Although Plaintiffs do not specify against whom they seek a fee award, Plaintiffs base their fee claim solely on the Preliminary Injunction, which was relief obtained against Davis only in her official capacity. If Plaintiffs reveal in their reply or otherwise any intention to seek fees from Davis in her individual capacity, Davis requests the opportunity to submit additional briefing to oppose such an attempt, which would be improper.

a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, **the most critical factor is the degree of success obtained**.

Application of this principle is particularly important in complex civil rights litigation involving numerous challenges to institutional practices or conditions. This type of litigation is lengthy and demands many hours of lawyers' services. Although the plaintiff often may succeed in identifying some unlawful practices or conditions, the range of possible success is vast. That the plaintiff is a "prevailing party" therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved. . . .

**There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.** This discretion, however, must be exercised in light of the considerations we have identified.

*Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983) (emphasis added). "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute. Where such a change has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award under *Hensley,* not to the availability of a fee award *vel non.*" *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989).

In light of *Hensley*, if Plaintiffs could attain prevailing party status, the Court should substantially reduce the fee amount requested by Plaintiffs to account for Plaintiffs' limited success. Given that "[T]here is no precise rule or formula for making these determinations," Davis suggests that the Court should reduce Plaintiffs' requested fee by at least half to account for the numerous claims on which Plaintiff did not recover, and half again to account for the half of Plaintiffs who abstained from participating in the limited relief Plaintiffs did obtain.

**B.      Certain specific time entries should be excluded from any fee award as excessive.**

Given Plaintiffs' failure to obtain class certification, all of Plaintiffs' time entries for work

associated with seeking class certification should be excluded from any fee award as excessive.

Those entries are as follows:

Canon
| | | |
|---|---|---|
| 7/30/2015 | 0.30 | Joe - Continue review of draft class cert. docs, email exchanges |
| 10/22/2015 | 0.10 | Joe - review of draft of motion to reopen class cert |

Esseks
| | | |
|---|---|---|
| 9/18/2015 | 0.70 | Review multiple drafts of motion to expedite class certification |
| 10/23/2015 | 0.30 | Edit motion to reopen class cert briefing |
| 9/17/2016 | 0.60 | Correspondence with legal team re class certification motion |

Mar
| | | |
|---|---|---|
| 10/23/2015 | 0.30 | Review reply in support of motion to reopen class certification briefing |

Sharp
| | | |
|---|---|---|
| 7/2/2015 | 0.50 | Draft/edit class cert. papers |
| 7/2/2015 | 1.00 | Draft/edit class cert. papers |
| 7/29/2015 | 0.10 | Emailed co-counsel re: class cert./ case status |
| 8/2/2015 | 1.50 | Review/draft/edit class cert. papers; file class cert. papers |
| 10/21/2015 | 0.70 | draft/edit reply in support of motion reopen class cert.; research |
| 10/21/2015 | 0.50 | draft/edit reply in support of motion reopen class cert.; research |
| 10/21/2015 | 4.20 | draft/edit reply in support of motion reopen class cert.; research |
| 10/21/2015 | 1.00 | draft/edit reply in support of motion reopen class cert.; research |
| 10/21/2015 | 1.50 | draft/edit reply in support of motion reopen class cert.; research |

Weaver
| | | |
|---|---|---|
| 9/14/2015 | 2.60 | Legal research regarding class certification & Preliminary injunctions |
| 9/15/2015 | 2.00 | Legal research re class certification and preliminary injunction and email corr. Regarding [sic] |
| 9/16/2015 | 3.70 | Legal research re class certification and preliminary injunction and email corr. Regarding [sic] |
| 9/17/2015 | 2.10 | Legal research re class certification; email correspondence re motion |
| 9/18/2015 | 2.50 | Draft motion to expedite class certification and circulate to team via email |
| 10/23/2015 | 1.00 | Review and edit motion to reopen class certification; email correspondence regardind [sic] |

26

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs' Fee Motion should be denied.



DATED: October 31, 2016                    Respectfully submitted:

A.C. Donahue                               /s/ Roger K. Gannam
Donahue Law Group, P.S.C.                  Horatio G. Mihet
P.O. Box 659                               Roger K. Gannam
Somerset, Kentucky 42502                   LIBERTY COUNSEL
Tel: (606) 677-2741                        P.O. Box 540774
Fax: (606) 678-2977                        Orlando, Florida 32854
ACDonahue@DonahueLawGroup.com              Tel: (407) 875-1776
                                           Fax: (407) 875-0770
                                           hmihet@LC.org
                                           rgannam@LC.org

                                           *Attorneys for Defendant/Third-Party Plaintiff*
                                           *Kim Davis*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed via the Court's ECF

filing system and therefore service will be effectuated by the Court's electronic notification system

upon all counsel or parties of record:

| | |
|---|---|
| Daniel J. Canon<br>L. Joe Dunman<br>Laura E. Landenwich<br>CLAY DANIEL WALTON ADAMS, PLC<br>462 S. Fourth Street, Suite 101<br>Louisville, KY 40202<br>dan@justiceky.com<br>joe@justiceky.com<br>laura@justiceky.com | Jeffrey C. Mando<br>Claire Parsons<br>ADAMS, STEPNER, WOLTERMANN &<br>DUSING, PLLC<br>40 West Pike Street<br>Covington, KY 41011<br>jmando@aswdlaw.com<br>cparsons@aswdlaw.com<br><br>*Attorneys for Rowan County* |
| William Ellis Sharp<br>ACLU OF KENTUCKY<br>315 Guthrie Street, Suite 300<br>Louisville, KY 40202<br>sharp@aclu-ky.org<br><br>*Attorneys for Plaintiffs* | William M. Lear, Jr.<br>Palmer G. Vance II<br>STOLL KEENON OGDEN PLLC<br>300 West Vine Street, Suite 2100<br>Lexington, Kentucky 40507-1380<br>william.lear@skofirm.com<br>gene.vance@skofirm.com<br><br>*Attorneys for Third-Party Defendants*<br>*Matthew G. Bevin and Terry Manuel* |

DATED: October 31, 2016

/s/ Roger K. Gannam
Roger K. Gannam
*Attorney for Defendant/Third-Party Plaintiff*
*Kim Davis*