UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 15-44-DLB-EBA

APRIL MILLER, et al.                                                    PLAINTIFFS

vs.                    **MEMORANDUM OPINION AND ORDER**

KIM DAVIS, individually and
in her official capacity, et al.                                        DEFENDANTS

\* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*

This matter is before the Court upon Third-Party Defendants Governor Matthew G. Bevin and Commissioner of the Kentucky Department for Libraries and Archives Terry Manuel's Motion to Amend. (Doc. # 208). Specifically, the Third-Party Defendants ask the Court to amend its July 21, 2017 Memorandum Opinion and Order (Doc. # 206)—which ordered the Commonwealth of Kentucky to pay Plaintiffs' attorneys' fees and costs—and instead, assess the award against Defendant Kim Davis in her official capacity and the entity she represents, the Office of the Rowan County Clerk.

Plaintiffs April Miller, Karen Roberts, Shantel Burke, Stephen Napier, Jody Fernandez, Kevin Holloway, Aaron Skaggs, and Barry Spartman (collectively "Plaintiffs"), Defendant Rowan County, Kentucky, and Defendant Kim Davis each having filed their Responses in opposition to the Motion (Docs. # 213, 214, and 217), and Third-Party Defendants having filed their Reply (Doc. # 220), the matter is ripe for the Court's review.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

On July 21, 2017, the Court granted Plaintiffs' Motion for Attorneys' Fees and

1

Costs, which brought this § 1983 litigation to a close.[1] (Doc. # 206). In that Memorandum Opinion and Order, the Court answered three questions. First, did Plaintiffs "prevail" within the meaning of § 1988? Second, who pays? And third, how much? The answers were: yes, the Commonwealth of Kentucky, and, $224,703.08, respectively. In the instant Motion, Governor Bevin and Commissioner Manuel challenge the answer to the second question: that Defendant Kim Davis, in her official capacity as Rowan County Clerk, represented the Commonwealth of Kentucky with respect to issuing—or refusing to issue—marriage licenses and therefore, the Commonwealth was liable for Plaintiffs' attorneys' fees and costs. For the reasons stated herein, Third-Party Defendants' Motion to Amend (Doc. # 208) is denied.

## II.     ANALYSIS

### A.     Standard of Review

Third-Party Defendants styled their Motion as one pursuant to Rule 59(e); however, "by its own terms," Rule 59(e) "applies only to judgments." *Dierig v. Lees Leisure Indus., Ltd.*, No. 2:11-cv-125-DLB, 2012 WL 669968, *2 (E.D. Ky. Feb. 28, 2012). Rule 60, by contrast, applies to both judgments and final orders. Fed. R. Civ. P. 60. Because Rule 60 provides the appropriate means for considering the relief requested, the Court will review Third-Party Defendants' Motion to Amend under Rule 60.

Rule 60(b) allows the Court to grant relief from a final judgment or order due to: (1) mistake; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied judgment; or (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b). Although

---

[1]     The facts of this case are fully outlined in the Memorandum Opinion and Order filed July 21, 2017. (Doc. # 206 at 2-7). Therefore, the Court will refrain from duplicating its detailed factual account here.

2

courts have considerable discretion in granting relief from a final judgment or order pursuant to Rule 60(b), that power is "circumscribed by public policy favoring finality of judgments and termination of litigation." *Blue Diamond Coal Co. v. Trustees of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001). Therefore, "relief under Rule 60(b) is … extraordinary." *Zucker v. City of Farmington Hills*, 643 F. App'x 555, 562 (6th Cir. 2016).

Here, Third-Party Defendants do not predicate their motion on grounds of newly discovered evidence, fraud, or a void or satisfied judgment. Instead, they claim that the Court's July 21, 2017 Memorandum Opinion and Order constitutes a clear error of law and is manifestly unjust.[2] (Doc. # 208-1 at 4).

### B. Relief under Rule 60(b) is not warranted.

As a threshold matter, the Court notes that a Rule 60(b) motion is not the proper vehicle to raise arguments that should have been raised before. "Rule 60(b) does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof." *Tyler v. Anderson*, 749 F.3d 499, 509 (6th Cir. 2014). Nor does Rule 60(b) "provide relief from the consequences of a deliberate choice, even if subsequent events reveal the choice to have been unwise." *Park W. Galleries, Inc. v. Hochman*, 692 F.3d 539, 545 (6th Cir. 2012). The Third-Party Defendants not only failed to raise these specific arguments in response to Plaintiffs' Motion for Attorneys' Fees and Costs, but elected not to participate in the briefing of Plaintiffs' Motion for Attorneys' Fees and Costs at all. (Doc. # 206 at 24).

---

[2] Construed to conform to the appropriate rule, these arguments are premised on Rule 60(b)(1) and 60(b)(6).

3

Third-Party Defendants' claims that they had been "dismissed" from this action and that "no relief was sought against them in the Petition for Attorneys' Fees" are belied by the record.³ (Doc. # 220 at 3). Third-Party Defendants were not dismissed from this action by way of a dispositive motion. Rather, the entire case was dismissed and stricken from the Court's active docket. (Doc. # 182). Upon the filing of Plaintiffs' Motion for Attorneys' Fees and Costs (Doc. # 183), the case was revived for that limited purpose (Doc. # 184), and briefing commenced. Third-Party Defendants were no less a party than Plaintiffs, Defendant Kim Davis, or Defendant Rowan County.

Because of that lack of participation, Defendant Rowan County argues that Third-Party Defendants' Motion to Amend is procedurally improper and should be denied because they had the opportunity to raise their arguments earlier and failed to do so. (Doc. # 214 at 1-2). The Court agrees that Third-Party Defendants could have—and

---

³ Nor is it true that "there was no reason for the Third-Party Defendants to believe that any party other than Davis was implicated as to the award of attorneys' fees or that the Court would order the fees paid by the generic entity 'Commonwealth of Kentucky' rather than by Davis in her official capacity as Rowan County Clerk," as Third-Party Defendants argue. (Doc. # 220 at 3). In its July 21, 2017 Memorandum Opinion and Order, the Court explained:

> "As long as the governmental entity receives notice and an opportunity to respond, an official-capacity suit imposes liability on the entity that he represents." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003). The Commonwealth of Kentucky certainly had notice and an opportunity to respond. The Commonwealth, via the fiction of *Ex Parte Young*, was made a party to this action because of Davis's third-party pleading. (Docs. # 34 and 39). Moreover, the Court's Preliminary Injunction Order further put the Commonwealth on notice of its potential liability for the actions Davis took in her official capacity as Rowan County Clerk. (Doc. # 43 at 8) ("Thus, Davis likely acts for the State of Kentucky, and not as a final policymaker for Rowan County, when issuing marriage licenses.").

And finally, a review of the briefing on Plaintiffs' Motion for Attorneys' Fees and Costs left no room for doubt as to whether that issue was before the Court. Defendant Rowan County argued repeatedly that Defendant Kim Davis represented the Commonwealth, not the County, with respect to her marriage-license duties (Docs. # 192, 196, and 203), and the Plaintiffs contested that conclusion. (Doc. # 194 at 4-11). Thus, any argument that Third-Party Defendants did not receive notice or an opportunity to respond is meritless.

4

should have—raised these arguments earlier.  However, because the purpose of Rule 60(b) is to provide courts an opportunity to "reconsider its judgment when that judgment rests on a defective foundation," the Court will exercise an abundance of caution and consider Third-Party Defendants' arguments.  *In re Abdur'Rahman*, 392 F.3d 174, 179 (6th Cir. 2004), *vacated on other grounds*, 545 U.S. 1151 (2005); *see also Charter Twp. of Muskegon v. City of Muskegon*, 303 F.3d 755, 760 (6th Cir. 2002) ("The general purpose of Rule 60(b) … is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done.").

### 1. *No legal error was committed.*

Under Rule 60(b)(1), a court can vacate a final judgment or order because of "mistake, inadvertence, surprise, or excusable neglect."  The Sixth Circuit has explained that "a Rule 60(b)(1) motion is intended to provide relief in only two situations: (1) when a party has made an excusable mistake or an attorney has acted without authority, or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order."  *United States v. Reyes*, 307 F.3d 451, 455 (6th Cir. 2002) (citing *Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000)); *see also Pierce v. UMWA Welfare & Ret. Fund for 1950 & 1974*, 770 F.2d 449, 451 (6th Cir. 1985) ("a claim of legal error" is "subsumed in the category of mistake under Rule 60(b)(1)").

Third-Party Defendants claim that the "Court's determination that the Commonwealth of Kentucky is responsible for Plaintiffs' fees and costs is clear error" because the Plaintiffs prevailed against Defendant Kim Davis in her official capacity as the Rowan County Clerk, not against the Commonwealth of Kentucky.  (Doc. # 208-1 at 4).  Specifically, Third-Party Defendants argue that the Court "set up an incorrect

5

dichotomy" between the Commonwealth and Rowan County, when it should have assessed attorneys' fees and costs "against the Office of the Rowan County Clerk." *Id.* at 2; 5-6. In support of this argument, Third-Party Defendants cite to a single and incomplete line from *Hutto v. Finney*, 437 U.S. 678 (1979), and to a non-binding and factually distinguishable case from the United States District Court for the District of South Carolina. *Id.* at 5-6.

Third-Party Defendants have failed to establish any legal error. First and foremost, Third-Party Defendants' arguments suffer from a fatal flaw: they misunderstand—or ignore—the nature of official-capacity actions.[4] "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal citations omitted). "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).

Plaintiffs prevailed against Defendant Kim Davis in her official capacity as Rowan County Clerk when they obtained an injunction forcing her to issue marriage licenses. (Docs. # 42 and 74) (enjoining Defendant Kim Davis in her official capacity). Therefore, Plaintiffs' suit—and merits' success—was "in all respects other than name, to be treated as a suit against the" government entity she represented. *Graham*, 473 U.S. at 166; *see also Brandon v. Holt*, 469 U.S. 464, 471 (1985) ("a judgment against a public servant 'in

---

[4] In 1985, the Supreme Court noted that the distinction between official-capacity and personal-capacity suits "apparently continues to confuse lawyers," and endeavored "to define it more clearly through concrete examples of the practical and doctrinal differences between personal and official capacity actions." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Apparently, thirty-two years later, the confusion continues. Therefore, this Court will "unravel once again the distinctions between personal- and official-capacity suits." *Id.* at 163.

his official capacity' imposes liability on the entity that he represents"). And in an official-capacity action, a plaintiff who prevails is "entitled to look for relief, both on the merits and for fees, to the governmental entity." *Id.* at 171. Therefore, the Court's determination that Plaintiffs had "prevailed" within the meaning of § 1988 gave rise to another question: Who pays? Accordingly, it was incumbent upon the Court to determine which government entity Davis represented when issuing—or refusing to issue—marriage licenses: the Commonwealth of Kentucky or Rowan County?[5]

Despite Third-Party Defendants arguments to the contrary, this dichotomy was neither false nor unnecessary because there were only two potential sources of governmental authority. Rather, the dichotomy exists because the Office of the Rowan County Clerk has "no greater separate identity" apart from the government entities which the Rowan County Clerk acts for in her official capacity. *Brandon*, 469 U.S. at 472. Therefore, an official-capacity claim against the Rowan County Clerk is a claim against the government entity itself—either Rowan County or the Commonwealth of Kentucky. The choice is binary; there is no nebulous place in between for recalcitrant county clerks.

As this Court held, and the Sixth Circuit has recognized, county officials "sometimes wear multiple hats, acting on behalf of the county *and* the State." *Crabbs v. Scott*, 786 F.3d 426, 429 (6th Cir. 2015); *see also Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). Thus, the Court undertook a particularized inquiry, focusing on

---

[5] Adopting Third-Party Defendants' suggested approach—assessing attorneys' fees and costs against Defendant Kim Davis in her official capacity as Rowan County Clerk—would have been to dodge a crucial question and create confusion for the parties. Undoubtedly, an Order awarding Plaintiffs attorneys' fees that failed to determine which government entity was liable for those fees would have resulted in a game of "keep away" between the parties, where the Commonwealth of Kentucky and Rowan County passed the attorney's-fee buck back and forth over prevailing Plaintiffs' heads while both disclaimed responsibility for the fees.

whether county clerks represent the Commonwealth or their respective counties in the marriage-license context. (Doc. # 206 at 24-38). Six relevant factors controlled the analysis: "(1) the State's potential liability for a judgment; (2) how state statutes and courts refer to the officer; (3) who appoints the officer; (4) who pays the officer; (5) the degree of state control over the officer; and (6) whether the functions involved fall within the traditional purview of state or local government." *Crabbs*, 786 F.3d at 429 (citing *Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005) (en banc); *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 44-45 (1994)). "Although some of the factors support[ed] a finding that Davis represented Rowan County," this Court concluded that the "bulk of the evidence weigh[ed] heavily in favor of finding that county clerks, when issuing—or refusing to issue—marriage licenses, represent the Commonwealth of Kentucky, not their counties." (Doc. # 206 at 37). Accordingly, the Court assessed Plaintiffs' attorneys' fees and costs against the Commonwealth—the government entity that the Rowan County Clerk represents in the marriage-license context.

The authority that Third-Party Defendants cite in their Motion to Amend fails to convince the Court that it erred in engaging in such an analysis. Relying on *Hutto v. Finney*, 437 U.S. 678 (1978), Third-Party Defendants claim that the Supreme Court "analyzed the legislative history of the Civil Rights Attorney's Fees Awards Act of 1976" and "observed that 'the legislative history is equally plain: it is intended that the attorneys' fees like other items or costs, will be collected either directly from the official, in his official capacity, from funds of his agency or under his control …" (Doc. # 208-1 at 5 (citing *Hutto*, 437 U.S. at 694)). Therefore, Third-Party Defendants claim, the attorneys' fees and costs "should have been assessed directly against the Office of the Rowan County Clerk." *Id.*

8

at 5-6.

The error in Third-Party Defendants' reasoning is exposed by context and a complete reading of *Hutto*:

> The legislative history is equally plain: "[I]t is intended that the attorneys' fees, like other items of costs, will be collected either directly from the official, in his official capacity, from funds of his agency or under his control, **or from the State or local government (whether or not the agency or government is a named party.)**" S. Rep. No. 94-1011, p. 5 (1976), U.S. Code Cong. & Admin. News 1976, pp. 5908, 5913. The House Report is in accord: "The greater resources available to governments provide an ample base from which fees can be awarded to the prevailing plaintiff in suits against governmental officials or entities." H.R. Rep. No. 94-1558, p. 7 (1976). The Report adds in a footnote that: "Of Course, the 11th Amendment is not a bar to the awarding of counsel fees against state governments. *Fitzpatrick v. Bitzer*." *Id*. at 7 n.14. Congress' intent was expressed in deed as well as words. It rejected at least two attempts to amend the Act and immunize state and local governments from awards.

*Hutto*, 437 U.S. at 694 (emphasis added).

Put simply, the portion of the quotation from *Hutto* that the Third-Party Defendants eliminated and replaced with an ellipsis undermines their argument. *Hutto* does not compel the Court to assess attorneys' fees directly against the government "official, in his official capacity" or "from funds of his agency or under his control."[6] *Id*. Instead, Congress clearly contemplated—and *Hutto* permits—prevailing parties to collect attorneys' fees and costs from the government entity that the official represented in his or her official capacity. *Id*. That is exactly what this Court did—it assessed Plaintiffs' attorneys' fees and costs against the government entity that Defendant Kim Davis represented when she refused to issue marriage licenses—the Commonwealth of Kentucky.

---

[6] And even if it did, such language creates a distinction without a difference. An attorney's-fee award against a government official in his or her official capacity is an attorney's-fee award against the government entity that the official represents. So too is an attorney's-fee award against a government agency or its funds.

9

Moreover, Third-Party Defendants fail to cite to any controlling case where a court assessed attorneys' fees and costs directly against a government official in their official capacity or an arm or department of a government entity; let alone a case where it was unclear which government entity the government official or department represented. In fact, the case Third-Party Defendants cite and urge this Court to follow—*Summers v. Adams*, No. 3:06-cv-2265, 2010 WL 2179571 (D.S.C. May 26, 2010)—does not support such an approach.[7]

In *Summers*, the federal district court permanently enjoined Defendants Maria S. Adams, in her official capacity as the Director of the South Carolina Department of Motor Vehicles, and Jon Ozmint, in his official capacity as the Director of the Department of Corrections of South Carolina, from implementing the "I Believe" Act, which authorized the South Carolina Department of Motor Vehicles to issue a license plate containing the words "I Believe" and a cross superimposed on a stained-glass window. *Summers*, 2010 WL 2179571, at *1. When presented with a Motion for Attorneys' Fees pursuant to 42 U.S.C. § 1988, both defendant-departments urged the district court to "shift responsibility for fees and expenses from the state agencies charged with implementing the 'I Believe'

---

[7] There is, however, case law from the Seventh Circuit, which supports the Court's approach. *See Herbst v. Ryan*, 90 F.3d 1300 (7th Cir. 1996). In *Herbst*, the Seventh Circuit affirmed the district court's assessment of attorneys' fees under 42 U.S.C. § 1988 after the parties entered into a consent decree enjoining enforcement of various amendments to Illinois's abortion law. *Id.* at 1302. Specifically, the plaintiffs sought declaratory and injunctive relief against: "(1) the State's Attorney of Cook County, in his official capacity and as the representative of a class of the State's Attorneys from 102 Illinois counties; (2) the Attorney General of Illinois, in his official capacity; and (3) the Director of the Illinois Department of Public Health, in his official capacity." *Id.* In addition to finding that "the Attorney General of the State and the State Director of Public Health clearly undertook the defense of the challenged amendments on behalf of the state," the district court found that the State's Attorneys, who technically represented their respective counties, "also undertook the defense of the constitutionality of this *state* statute and the *state* policy that it embodied," and were "operating as officers of the state." *Id.* at 1306. Therefore, the district court concluded—and the Seventh Circuit agreed—"that the State of Illinois ought to bear the responsibility for the fee award." *Id.*

Act to the State of South Carolina as an entity." *Id*. Having determined that "an award against Defendants in their official capacity could be an award against the State itself" and "leaving it to [Defendants], as directors of state agencies, to work with others in state government to determine how best to allocate the award, the district court "decline[d] the invitation to shift fees to the State and, instead," permitted prevailing plaintiffs to collect directly against the defendant department-heads, "in their official capacity, jointly and severally." *Id.* at *1; *7.

In the simplest terms, *Summers* is inapposite—the facts in that case presented a choice between assessing fees against individual state agencies or the State of South Carolina. In terms of legal consequence, this is a choice of "six of one, half a dozen of the other." Because the state officials were sued in their official capacities as the directors of state departments, an award of attorneys' fees and costs against them was "in all respects other than name," an award against the State of South Carolina. *Graham*, 473 U.S. at 166. *Summers* did not present the difficult question presented in this case—whether county clerks, in their official capacity, represent the Commonwealth of Kentucky or their respective counties with respect to their marriage-licenses duties. Therefore, the Court finds *Summers* to be factually distinguishable and unpersuasive. Accordingly, there was no legal error committed in the Court's July 21, 2017 Memorandum Opinion and Order, and relief under Rule 60(b)(1) is not warranted.

### 2. *The imposition of fee liability is not manifestly unjust.*

Relief under Rule 60(b)(6), although it may read like a "catch-all" provision, is afforded "only in exceptional or extraordinary circumstances." *Blue Diamond Coal Co.*, 249 F.3d at 524 (citing *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)).

11

"[B]ecause 'almost every conceivable ground for relief is covered' under the [five] other subsections of Rule 60(b) … courts must apply Rule 60(b)(6) relief only in 'unusual and extreme situations where principles of equity *mandate* relief.'" *Id.* (quoting *Olle*, 910 F.2d at 365).

Third-Party Defendants claim that "an award of fees and costs against the Commonwealth of Kentucky would be unjust under the circumstances of this case" because Defendant Kim Davis's refusal to issue marriage licenses "was not conduct that was directed or approved by any state official." (Doc. # 208-1 at 7). In support of this argument, Third-Party Defendants rely on the Court's discretion to deny attorneys' fee awards when "special circumstances … render such an award unjust." *Id.*

In certain situations, "[e]ven a prevailing party may not be entitled to attorneys' fees if 'special circumstances would render such an award unjust.'" *Déjà Vu v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 421 F.3d 417, 422 (6th Cir. 2005) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)). In its July 21, 2017 Memorandum Opinion and Order, the Court considered whether special circumstances existed to justify the denial of attorneys' fees and found that they did not:

> "[S]pecial circumstances" do not exist to justify the denial of attorneys' fees. *Hensley*, 461 U.S. at 446. Although the Sixth Circuit has acknowledged that the "special circumstances" doctrine exists, a non-prevailing party must make a "strong showing" to establish such special circumstances. *Déjà Vu*, 421 F.3d at 422. In fact, the Sixth Circuit "has never … found a 'special circumstance' justifying the denial of fees." *McQueary v. Conway*, 614 F.3d 591, 604 (6th Cir. 2010). A prevailing party's "bad acts" during the course of litigation are not a special circumstance. *Wikol v. Birmingham Pub. Schs. Bd. of Educ.*, 360 F.3d 604, 611 (6th Cir. 2004). Nor is a defendant's good faith. *Morscott, Inc. v. City of Cleveland*, 936 F.2d 271, 273 (6th Cir. 1991). Thus, there are no special circumstances that would render an attorneys' fee award unjust.

(Doc. # 206 at 22 n.20).

Nothing in Third-Party Defendants' Motion alters the Court's conclusion.[8] Third-Party Defendants' argument that neither the Governor nor the Commissioner of the Kentucky Department for Libraries and Archives "direct[ed], ratif[ied], or approve[d]" Defendant Kim Davis's decision to withhold marriage licenses is irrelevant. The Commonwealth of Kentucky is liable for Plaintiffs' attorneys' fees and costs because Defendant Kim Davis acted on behalf of the Commonwealth when she refused to issue marriage licenses. Accordingly, Plaintiffs were "entitled to look for relief, both on the merits and for fees, to the governmental entity" that Davis represented in her official capacity—the Commonwealth of Kentucky.[9] *Graham*, 473 U.S. at 171.

---

[8] Because the Court already considered and decided this issue, Third-Party Defendants' claim that "special circumstances" exist could also be characterized as an argument that the Court committed legal error under Rule 60(b)(1). Whether a challenge under Rule 60(b)(1) or (b)(6), the argument fails.

[9] Third-Party Defendants' citation to *May v. Cooperman*, 578 F. Supp. 1308 (1984), a non-binding case from the United States District Court for the District of New Jersey, fails to convince the Court otherwise. The *May* Court found that the "position of the State defendants present[ed] a special circumstance in which the award of fees would be unjust" because the "State defendants, and the executive branch of the State" had "consistently … refus[ed] to defend" the challenged, unconstitutional statute. *May*, 578 F. Supp. At 1315-16. Instead, the Court assessed fees against the "intervenor-defendants representing the New Jersey Legislature," who "actively litigated this case from the day plaintiffs filed suit." *Id.* at 1316.

First, this case is factually distinguishable and thus unpersuasive. Here, the Court imposed attorney's-fee liability on the Commonwealth because that is the government entity that Defendant Kim Davis represented in her official capacity. Second, the willingness of the *May* Court to find "special circumstances" is inconsistent with Sixth Circuit precedent that has not yet found "special circumstances" in *any* case. See *McQueary*, 614 F.3d at 604. And lastly, if the Court were inclined to find "special circumstances" in such a situation, it would require much more than the refusal to direct, endorse, approve, or ratify the unconstitutional conduct of a state official. *See e.g.*, *Dickinson v. Ind. State Election Bd.*, 817 F. Supp. 737 (S.D. Ind. 1992) (requiring a defendant to "support" the plaintiff to be relieved from attorneys' fees and costs). Therefore, even assuming *arguendo* that the Governor and the Commissioner of the Kentucky Department for Library and Archives did not direct, ratify, or approve Defendant Kim Davis's conduct—a fact that, as Defendants Rowan County and Kim Davis argue, is up for debate—the Court declines to find that such "neutrality" constitutes "special circumstances" that would render an attorneys' fee award unjust.

Moreover, Third-Party Defendants have fallen woefully short of establishing the "exceptional or extraordinary circumstances" required to warrant relief under Rule 60(b)(6). *Blue Diamond Coal Co.*, 249 F.3d at 524. At most, Third-Party Defendants have simply—and improperly—re-argued matters that have previously been decided. That Third-Party Defendants wish to avoid liability for Plaintiffs' attorneys' fees and costs hardly renders the circumstances extraordinary. Nor is the Court persuaded by the argument that there is a manifest injustice that must be corrected. Therefore, Third-Party Defendants' Motion to Amend is denied.

## III. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** that Third-Party Defendants Governor Matthew G. Bevin and Commissioner of the Kentucky Department for Libraries and Archives Terry Manuel's Motion to Amend (Doc. # 208) be, and is hereby, **DENIED**.

This 22nd day of October, 2017.

Signed By:
*David L. Bunning* DB
United States District Judge

K:\DATA\Opinions\Ashland\15-44 MOO re Mtn to Amend.docx